IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

RYAN, LLC,

                  Plaintiff,

    v.

FEDERAL TRADE COMMISSION,

                  Defendant.

Civil Action No. 3:24-cv-986-E

# **DECLARATION OF AMY TICE**

Pursuant to 28 U.S.C. § 1746, I, Amy Tice, hereby declare as follows.

1.    I am over the age of 18 and competent to make this declaration. The statements in this declaration are true and within my personal knowledge.

2.    I am a Senior Vice President and the Chief People Officer at Ryan, LLC ("Ryan"). My business address is 13155 Noel Road Suite 100, Dallas, TX 75240-5090.

3.    I have worked as a human resources professional for 18 years, and have served as Ryan's Chief People Officer for 15 months. As Chief People Officer, I am responsible for overseeing all of Ryan's human-resources work, including hiring, selection and promotion of shareholders and other workers. As a result of my position, I am familiar with Ryan's different lines of business, the importance of safeguarding Ryan's goodwill in the market, customer relationships, and confidential business information, as well as the contractual covenants Ryan uses to protect those intangible assets.

4.    Ryan is an award-winning global tax services and software provider. It is the largest firm in the world dedicated exclusively to business taxes. With global headquarters in Dallas, Texas, Ryan provides an integrated suite of federal, state, local, and international tax services on a multijurisdictional basis, including tax recovery, consulting, advocacy, compliance, and technology services.

1

5.    Ryan's multidisciplinary team of more than 4,800 professionals and team members serves over 30,000 clients in more than 80 countries, including many of the world's most prominent Global 5000 companies.

6.    Ryan represents leading corporate clients in established and emerging industries ranging from food services and retail to cryptocurrency and telecommunication.  Ryan's tax-consulting services include audit representation, strategic-advisory services and public-affairs services, advanced tax software, and compliance assistance.

7.    Like other leading consulting firms, Ryan relies on a traditional, principal-driven business model.  Ryan's 200-plus principals are sought-after tax experts who frequently join Ryan after years of experience in the tax industry.  They include former administrative law judges, legislators, policy officials, auditors, attorneys, and statisticians.  Each principal is required to become a Ryan shareholder through ownership of Ryan equity, and to join a shareholders' agreement.  Certain other team members are also shareholders.

8.    Ryan's methods, approaches, and playbooks for advising clients and solving their problems are often developed through a collaborative process that can take years of research and trial and error to perfect.  Ryan's principals and other team members constantly reevaluate and modify those methods, approaches, and playbooks in light of changing laws and regulations, market trends, and even the

identities of the relevant regulators.  That know-how is an extraordinarily critical corporate asset.

9.     All U.S.-based Ryan shareholders are subject to post-separation non-competes pursuant to the terms of their shareholder agreements.

10.     Other Ryan team members have entered into non-competes directly with Ryan.

11.     Ryan's non-compete agreements are important for preventing Ryan's principals and other team members, who by necessity form close personal and professional relationships with Ryan's clients, from poaching these clients for their new firms.  Non-competes also prevent principals and key team members from departing for new firms and taking Ryan team members not subject to non-competes with them.

12.     Moreover, Ryan team members who are not subject to non-competes have in the past absconded from the firm with confidential business information, which they have used to attempt to poach Ryan's clients.  Ryan vigorously enforces its non-disclosure agreements and invokes its rights under trade secrets laws and other legal causes of action.  However, in my experience, businesses usually are able to use those tools only after discovering that their confidential business information has been or likely imminently will be disclosed.

13.    Non-competes, on the other hand, allow Ryan and other businesses to prevent disclosures of confidential business information before it occurs.  In the absence of non-competes, there is a serious risk that principals and other team members who possess detailed knowledge of Ryan's confidential information and proprietary methods, created over many years and at great expense, will accept positions with Ryan's competitors, bringing Ryan's intellectual property and proprietary methods with them.

14.    I am familiar with the new rule adopted by the Federal Trade Commission regarding non-competes ("Non-Compete Rule").  Specifically, I understand that the Commission's Non-Compete Rule, when it goes into effect, will render existing non-competes unenforceable except for very high-ranking executives, and will prohibit Ryan from entering into any new non-competes with its principals and other team members.  I understand that the Non-Compete Rule requires Ryan, by the Rule's effective date, to send notices to all current and former team members who are subject to a non-compete, other than very high-ranking executives.  I further understand that the effective date will be 120 days after the Commission's Rule is published in the Federal Register.  Finally, I understand that the Non-Compete Rule defines a non-compete as any "term or condition of employment that prohibits a worker from, penalizes a worker for, or functions to prevent a worker from: (i) seeking or accepting work in the United States with a

different person where such work would begin after the conclusion of the employment that includes the term or condition; or (ii) operating a business in the United States after the conclusion of the employment that includes the term or condition."

15.    The non-compete in Ryan's shareholder agreement and the non-competes Ryan enters with many other team members qualify as "non-competes" under the Non-Compete Rule.  In addition, there is significant uncertainty whether other restrictive covenants Ryan includes in contracts with shareholders and other team members, such as non-disclosure agreements and non-solicitation clauses, also qualify as "non-competes" under the Non-Compete Rule.

16.    Well in advance of its effective date, the Non-Compete Rule will inflict substantial direct financial costs on Ryan.  Prior to the effective date, Ryan will need to identify each and every person, including both current and former employees, who is subject to a non-compete, prepare notices addressed to those individuals, and send those notices.  Completing that work will require a significant amount of time.  In fact, Ryan is already beginning to review its many contracts to identify the non-compete agreements to which it is a party.

17.    Ryan also must review contracts and employment documentation for other covenants to evaluate whether they might somehow function to prevent a worker from seeking employment with a different employer, and thus might qualify

as "non-competes" under the Non-Compete Rule.  I expect that Ryan will need to consult with outside counsel to advise in this area.

18.    Ryan will need to evaluate what revisions need to be made to its template contracts, and what amendments could be made to existing contracts, to attempt to protect Ryan's business interests in the absence of non-competes.  I expect that Ryan will need to consult with outside counsel to advise in this area.

19.    As noted above, preparations for the Non-Compete Rule's effective date have already begun.  Those preparations will by necessity accelerate as the effective date approaches.  All those preparations require the time and attention of Ryan's team members, which therefore cannot be spent on other necessary work.

20.    In the event the Non-Compete Rule is allowed to take effect and subsequently is vacated by this Court, the costs described above will already have been incurred and will be unrecoverable.  Further, if the Rule takes effect and then is vacated, Ryan will incur the additional cost of sending a second round of notices to team members, retracting the earlier notification that their non-competes are invalid, and advising that the agreements are in fact valid and enforceable.

21.    Ryan and its team members will face other non-recoverable costs and irreparable injuries if the Rule is permitted to take effect and subsequently vacated. The Rule's purpose is to facilitate the departure of workers from firms with which they have non-compete agreements, eliminating the prophylaxis a non-compete

6

provides against a departing employee's incentive to disclose or misuse sensitive and confidential information. If the Rule has this effect—as the Commission maintains it will—then Ryan risks the loss of team members, client relationships, and confidential information that it may be unable to regain even if the Rule ultimately is vacated. Further, if Ryan's non-competes are permitted to be invalidated by the Rule but then become valid again when the Rule is vacated, Ryan will have to decide whether to enforce the non-competes against team members who left the firm for competitors in the belief that the non-competes were invalid. If Ryan brings and succeeds in such claims, then the former Ryan team members will be forced to leave jobs that they accepted in reliance on the Commission's Rule.

22.    Moreover, if the Non-Compete Rule takes effect, it will directly affect the foundations of how Ryan operates its business by eliminating an important tool for preventing poaching of Ryan's clients, principals, and other team members. Ryan will also have to take prophylactic measures to protect against the increased risk of loss of confidential business information. Those inefficiencies would increase Ryan's costs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 30, 2024 in Dallas, Texas.

Amy Tice

8