# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

RYAN, LLC,

*Plaintiff,*

v.

FEDERAL TRADE COMMISSION,

*Defendant.*

**Case No. 3:24-cv-986-E**

## DECLARATION OF GLENN HAMER, PRESIDENT AND CHIEF EXECUTIVE OFFICER OF PLAINTIFF-INTERVENOR TEXAS ASSOCIATION OF BUSINESS

Pursuant to 28 U.S.C. § 1746, I, Glenn Hamer, hereby declare as follows:

1.    I am the President and Chief Executive Officer of the Texas Association of Business ("TAB"). TAB's principal place of business is 316 West 12th Street #200, Austin TX 78701.

2.    I am offering this declaration in support of TAB in the above-captioned case.

3.    TAB is a general business association and state chamber of commerce. TAB represents member companies, large and small, to advocate for a policy, legal, and regulatory environment that allows them to thrive in business. TAB has worked alongside business and its chamber partners to represent companies of all sizes and sectors, advocating for policies, including in matters of federal competition and labor law, that help businesses grow and create jobs.

4.    TAB works in a bipartisan manner to deliver solutions to the challenges affecting Texas employers. TAB's purpose is to champion the best business climate in the world, unleashing the power of free enterprise to enhance lives for generations. In advancing this purpose, TAB seeks to preserve the ability of employers to enter into noncompete agreements that foster innovation and preserve competition.

2

5.    I am aware that the Federal Trade Commission has now finalized the  "Non-compete Clause Rule," Fed. Trade Comm'n, *Non-Compete Clause Rule*, RIN2084-AB74 (Apr. 23, 2024) (the "Rule"), which is the subject of the above-referenced case.  The Rule voids nearly all noncompete agreements and requires employers with existing noncompete agreements to issue notices that noncompete agreements cannot be enforced.

6.    Many Texas employers, including TAB members, have noncompete agreements with their employees and are affected by the Rule.

7.    Employers enter into noncompete agreements for a variety of purposes.  To give a few examples, an employer may enter into noncompete agreements in order to protect (1) sensitive, confidential and propriety information such as intellectual property, technologies or customer lists, (2) investments in employee training and development, or (3) acquired assets against competition from the seller.

8.    By rendering those agreements unlawful, the Rule threatens to have immediate and severe effects on Texas businesses.  Agreements will be rendered unenforceable, even if the member has already given valuable consideration for the agreement.  Employers with similar agreements, such as non-disclosure and non-solicitation agreements, will need to obtain the advice

3

of counsel about whether those agreements remain enforceable and how they can maintain or modify them to fully protect their confidential and proprietary information. Employers will also have to begin the expensive and time-consuming process of notifying employees that their noncompete agreements cannot be enforced.

9.     If the Rule is not prevented from going into effect, businesses will incur unrecoverable costs to comply with the Rule, including attorney's fees, administrative and labor costs, and litigation expenses from defending against civil enforcement actions. In particular, businesses will need to make changes to their contracting practices in an effort to comply with the Rule, seek the advice of counsel about alternatives to protect their confidential information and workforce investments, and incur administrative and labor costs associated with issuing notices that noncompete agreements cannot be enforced and changing company policies. Other employers may be unwilling to purchase businesses and other assets without a guarantee that the seller will not immediately begin competing against them. And for businesses that opt to continue their current contracting practices, the Rule threatens to subject them to civil enforcement actions.

4

10.    The Rule also creates uncertainties in industries that depend on noncompete agreements with highly-skilled and knowledgeable employees. As one example, many businesses use noncompete agreements when hiring senior executives.    Senior executives have access to confidential and competitively sensitive information and strategies, which could cause serious harm to businesses if disclosed to a competitor.    The Rule eliminates an important tool that many businesses use to protect their interests when hiring senior executives.

11.    Many employers use noncompete agreements to protect competitively sensitive information, such as trade secrets, customer lists, and pricing strategy and data.    Preventing competitors from unfairly accessing this confidential information by hiring away employees preserves healthy and vibrant competition.    Noncompete agreements provide clearer rules and are easier to enforce than alternatives, such as trade secret lawsuits or non-disclosure and non-solicitation clauses.

12.    If the effective date of the Rule is delayed or the Rule does not go into effect, many businesses would spend less money complying with the Rule. They would also be free to continue using noncompete agreements to protect their confidential proprietary information, invest in employee training and

development without fear that competitors could freeride on their investments, and purchase business assets without concerns about competition from the seller.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 9, 2024 at Austin, Texas.

Glenn Hamer