# EXHIBIT D

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| RYAN, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>*Defendant*. | **Case No. 3:24-cv-986-E** |

**DECLARATION OF GLENN SPENCER, SENIOR VICE PRESIDENT
OF PLAINTIFF-INTERVENOR CHAMBER OF COMMERCE OF
THE UNITED STATES OF AMERICA**

1

Pursuant to 28 U.S.C. § 1746, I, Glenn Spencer, hereby declare as follows:

1. I am the Senior Vice President of the Employment Policy Division at the Chamber of Commerce of the United States of America (the "Chamber"). In that capacity, I lead the Chamber's work on labor and employment law. My business address is 1615 H Street, N.W. Washington, D.C. 20062-2000.

2. I am offering this declaration in support of the Chamber in the above-captioned case.

3. The Chamber is the world's largest business federation, directly representing approximately 300,000 members and indirectly representing an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the United States. The Chamber routinely advocates in federal courts on matters of federal competition and employment law, including filing lawsuits challenging anti-business laws and regulatory actions.

4. The Chamber's mission is to advocate for policies that help businesses grow and create jobs in their communities. In advancing its

mission, the Chamber seeks to preserve the ability of its members to freely negotiate agreements that foster innovation and preserve competition.

5. As part of that purpose, the Chamber engages in public advocacy on legal and policy issues relating to employment and competition. One issue on which the Chamber has frequently engaged in public advocacy is the Federal Trade Commission's proposed rule broadly prohibiting noncompete agreements. *See, e.g.*, U.S. Chamber of Commerce, "The FTC's Noncompete Rulemaking is Blatantly Unlawful," https://www.uschamber.com/finance/antitrust/the-ftcs-noncompete-rulemaking-is-blatantly-unlawful (January 5, 2023); Suzanne P. Clark, "The Chamber of Commerce Will Fight the FTC," Wall St. J., https://www.wsj.com/articles/chamber-of-commerce-will-fight-ftc-lina-khan-noncompete-agreements-free-marketsoverregulation-authority-11674410656 (Jan. 22, 2023); Chamber of Commerce, "Coalition Letter to Congress on the FTC's Proposed Rule on Noncompete Agreements," https://www.uschamber.com/finance/antitrust/coalition-comments-on-ftc-proposed-rule-to-ban-noncompetes (Feb. 28, 2023).

6. I am aware that the Federal Trade Commission has now finalized its "Non-compete Clause Rule," Fed. Trade Comm'n, *Non-Compete Clause*

*Rule*, RIN2084-AB74 (Apr. 23, 2024) (the "Rule"), which is the subject of the above-referenced case. The Rule voids nearly all noncompete agreements and requires employers with existing noncompete agreements to issue notices that noncompete agreements cannot be enforced. The Chamber filed a comment letter opposing the proposed rule during the notice-and-comment period. *See* Comment from United States Chamber of Commerce, Comment ID FTC-2023-0007-19345 (Apr. 23, 2023). The Chamber also organized a coalition of trade associations to oppose the proposed rule. *See* Coalition Comments on FTC's Proposed Rule to Ban Noncompetes, https://www.uschamber.com/finance/antitrust/coalition-comments-on-ftc-proposed-rule-to-ban-noncompetes (Apr. 17, 2023).

7. The Chamber has thousands of members that have noncompete agreements with their employees and are affected by the Rule.

8. Many Chamber members routinely enter into noncompete agreements for a variety of purposes. To name a few examples, Chamber members may enter into noncompete agreements in order to protect (1) sensitive, confidential and propriety information such as intellectual property, technologies or customer lists; (2) investments in employee training and development; or (3) acquired assets against competition from the seller.

4

9. By rendering those agreements unlawful, the Rule threatens to have immediate and severe effects on many of the Chamber's members. Millions of members' agreements will be rendered unenforceable, even if the member has already given valuable consideration for the agreement. Members with similar agreements, such as non-disclosure and non-solicitation agreements, will need to obtain the advice of counsel about whether those agreements remain enforceable and how they can maintain or modify them to fully protect their confidential and proprietary information. And members will also have to begin the expensive and time-consuming process of issuing notices to employees that their noncompete agreements cannot be enforced.

10. If the Rule is not stopped from going into effect, many of the Chamber's members will incur unrecoverable costs to comply with the Rule, including attorney's fees, administrative and labor costs, and litigation expenses from defending against civil enforcement actions. In particular, many of the Chamber's members will need to make changes to their contracting practices in an effort to comply with the Rule, seek the advice of counsel about alternatives to protect their confidential information and workforce investments, and incur administrative and labor costs associated with issuing notices that noncompete agreements cannot be enforced and

5

changing company policies. Other Chamber members will be unwilling to purchase businesses and other assets without a guarantee that the seller will not immediately begin competing against them. And for the Chamber's members that opt to continue their current contracting practices, the Rule threatens to subject them to civil enforcement actions.

11. The Rule also creates uncertainties in industries that depend on noncompete agreements with highly skilled and knowledgeable employees. As one example, many of the Chamber's members use noncompete agreements when hiring senior executives. Senior executives have access to confidential and competitively sensitive information and strategies, which could cause serious harm to businesses if disclosed to a competitor. The Rule thus eliminates an important tool that many Chamber members use to protect their interests when hiring senior executives. In addition, many of the Chamber's healthcare members have noncompete agreements with physicians and other skilled healthcare providers, which enables them to make substantial investments in recruiting and training quality healthcare providers. The Rule undermines these healthcare members' ability to ensure adequate care for patients in their communities. Similarly, many technology companies have noncompete agreements with their software engineers and computer

scientists. These highly skilled and highly compensated employees have access to—and may even play a role in developing—crucial confidential and proprietary information, intellectual property, and technologies. The Rule accordingly impairs technology companies' ability to disclose confidential information to these employees without fear that a competitor could access it by hiring away the employee.

12. Many other members use noncompete agreements to protect competitively sensitive information, such as trade secrets, customer lists, and pricing strategy and data. Preventing competitors from unfairly accessing this confidential information by hiring away employees preserves healthy and vibrant competition. Noncompete agreements provide clearer rules and are easier to enforce than alternatives such as trade secret lawsuits or non-disclosure and non-solicitation clauses.

13. If the effective date of the Rule is delayed or the Rule does not go into effect, many of the Chamber's members would spend less money complying with the Rule. They would also be free to continue using noncompete agreements to protect their confidential proprietary information, invest in employee training and development without fear that competitors

could free-ride on their investments, and purchase business assets without concerns about competition from the seller.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 9, 2024 at U.S. Chamber of Commerce, 1615 H Street, NW, Washington, DC 20062.

*Glenn Spencer*

Glenn Spencer