# EXHIBIT G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RYAN, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>*Defendant*. | **Case No. 3:24-cv-986-E** |

**DECLARATION OF ELIZABETH DOUGHERTY, GENERAL COUNSEL AND CORPORATE SECRETARY OF PLAINTIFF-INTERVENOR BUSINESS ROUNDTABLE**

1

Pursuant to 28 U.S.C. § 1746, I, Elizabeth Dougherty, hereby declare as follows:

1. I am the General Counsel and Corporate Secretary at Business Roundtable. Business Roundtable is a non-profit association comprised of more than 200 chief executive officers (CEOs) of America's leading companies, representing every sector of the U.S. economy. Business Roundtable is headquartered in Washington D.C.

2. I am offering this declaration in support of Business Roundtable in the above-captioned case.

3. Since 1972, Business Roundtable has worked to promote a thriving U.S. economy that creates economic opportunity for all Americans. Business Roundtable's members work closely with policymakers to advance sound economic policies, including policies related to federal competition and labor law.

4. To support that work, Business Roundtable engages in public advocacy on legal and policy issues relating to employment and competition. One area of Business Roundtable's advocacy focus has been the Federal Trade Commission's proposed rule broadly prohibiting noncompete agreements. *See, e.g.*, Business Roundtable, Comment Letter on Non-Compete Clause

2

Rule (April 17, 2023), https://www.regulations.gov/comment/FTC-2023-0007-19341.

5. I am aware that the Federal Trade Commission has now finalized its "Non-compete Clause Rule," Fed. Trade Comm'n, *Non-Compete Clause Rule*, RIN2084-AB74 (Apr. 23, 2024) (the "Rule"), which is the subject of the above-referenced case. The Rule voids nearly all noncompete agreements and requires employers with existing noncompete agreements to issue notices that noncompete agreements cannot be enforced.

6. Business Roundtable's members and their companies have many noncompete agreements with employees which are affected by the Rule.

7. Business Roundtable's members and their companies routinely enter into noncompete agreements for a variety of purposes. To name a few examples, members' companies may enter into noncompete agreements in order to protect (1) sensitive, confidential and propriety information such as intellectual property, technologies or customer lists, (2) substantial investments in specialized employee training and development, or (3) acquired assets against competition from the seller.

8. By rendering those agreements unlawful, the Rule threatens to have immediate and severe effects on many Business Roundtable members

3

and their companies. Nearly all noncompete agreements will be rendered unenforceable, even if valuable consideration has already been given for the agreement. Other provisions of the rule limit employers ability to use other types of agreements, such as non-disclosure and non-solicitation agreements. Many Business Roundtable members and their companies use these agreements to protect important confidential and proprietary information and, because of the Rule, will need to obtain the advice of counsel about whether those agreements remain enforceable and how they can maintain or modify them to fully protect their confidential and proprietary information. And members and their companies will also have to begin the expensive and time-consuming process of notifying employees that their noncompete agreements cannot be enforced.

9. If the Rule is not prevented from going into effect, then many of Business Roundtable's members and their companies will incur unrecoverable costs to comply with the Rule, including attorney's fees, administrative and labor costs, and litigation expenses from defending against civil enforcement actions. In particular, many of Business Roundtable's members and their companies will need to make changes to their contracting practices in an effort to comply with the Rule, seek the advice of counsel about alternatives to

4

protect their confidential information and workforce investments, and incur administrative and labor costs associated with issuing notices that noncompete agreements cannot be enforced and changing company policies. Other Business Roundtable members and their companies will be unwilling to purchase businesses and other assets without a guarantee that the seller will not immediately begin competing against them. And for Business Roundtable members and their companies that opt to continue their current contracting practices, the Rule threatens to subject them to civil enforcement actions.

10. The Rule also creates uncertainties in industries that depend on noncompete agreements with highly skilled and knowledgeable employees. As one example, many of Business Roundtable's members use noncompete agreements when hiring senior executives. Senior executives have access to confidential and competitively sensitive information and strategies, which could cause serious harm to businesses if disclosed to a competitor. The Rule eliminates an important tool that many Business Roundtable members and their companies use to protect their interests when hiring senior executives. In addition, many of Business Roundtable's members have noncompete agreements with employees whose positions require specialized or substantial on-the-job training, such as sales agents. Business Roundtable members and

5

their companies use noncompete agreements to safeguard their substantial investment in providing specialized training. The Rule removes that safeguard and undermines the incentive for Business Roundtable and its members to invest in specialized or substantial on-the-job training.

11. Many other Business Roundtable member companies use noncompete agreements to protect competitively sensitive information, such as trade secrets, customer lists, and pricing strategy and data. Preventing competitors from unfairly accessing this confidential information by hiring away employees preserves healthy and vibrant competition. Noncompete agreements provide clearer rules and are easier to enforce than alternatives such as trade secret lawsuits or non-disclosure and non-solicitation clauses.

13. If the effective date of the Rule is delayed or the Rule does not go into effect, many of Business Roundtable's members and their companies would spend less money complying with the Rule. They would also be free to continue using noncompete agreements to protect their confidential proprietary information, invest in employee training and development without fear that competitors could freeride on their investments, and purchase business assets without concerns about competition from the seller.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 9, 2024 at Washington, D.C.

*Liz Dougherty*

_____

Elizabeth Dougherty