# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

RYAN LLC,

     Plaintiff,

CHAMBER OF COMMERCE OF
THE UNITED STATES OF
AMERICA, *et al.,*

     Plaintiff-Intervenors,

     v.

FEDERAL TRADE COMMISSION,

     Defendant.

CASE NO.: 3:24-CV-986-E

Hon. Ada Brown

# BRIEF OF AMICUS CURIAE TEXAS AFL-CIO
# IN SUPPORT OF DEFENDANT'S RESPONSE
# TO PLAINTIFFS' MOTIONS FOR
# STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION

*Respectfully Submitted,*

**TOWARDS JUSTICE**

By:  */s/  David H. Seligman   .*
David H. Seligman
Nina DiSalvo
Rachel W. Dempsey
(*pro hac vice* forthcoming)

P.O. Box 371689, PMB 44465
Denver, CO 80237-5680
(720) 441-2236

david@towardsjustice.org
nina@towardsjustice.org
rachel@towardsjustice.org

~and~

**TREMAIN ARTAZA PLLC**

By: */s/ Ashley E. Tremain   .*
    Ashley E. Tremain
    Texas Bar No. 24066209

4925 Greenville Ave, Ste. 200
Dallas, TX 75206
(469) 573-0229
ashley@tremainartaza.com

***Attorneys for Amicus Curiae***

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES.........................................................................ii

INTEREST OF AMICUS CURIAE.............................................................1

INTRODUCTION.......................................................................................1

ARGUMENT..............................................................................................3

I.   Non-Compete Clauses Contravene Fundamental Principles of Economic
     Freedom and Fair Competition.                                            3

     a.   Non-Compete Clauses Strip Texans of Economic Freedom.................4

     b.   Texans See How Non-Compete Provisions Undermine Free and Fair
          Competition to the Detriment of the Public.........................................8

     c.   The Purported "Freedom of Contract" Does Not Justify Constraints on
          Individual Economic Freedom...........................................................10

II.  The Experiences of Texans and the Principles of Economic Freedom
     Support a Bright-Line Prohibition of Non-Compete Provisions.          12

     a.   Legal Ambiguity Incentivizes Drafter Overreach and Causes
          Individuals to Abide by Unenforceable Non-Compete Provisions.....12

     b.   People Who Do Challenge Non-Compete Provisions Face Legal
          Threats and Protracted and Costly Litigation.....................................15

     CONCLUSION.....................................................................................18

# **TABLE OF AUTHORITIES**

## **Cases**

*Marsh USA, Inc. v. Cook,*
    354 S.W.3d 764 (Tex. 2011)                                            4, 13, 14

*Rest. L. Ctr. v. U.S. Dep't of Lab.,*
    66 F.4th 593 (5th Cir. 2023)                                                 2

*Rieves v. Buc-ee's Ltd.,*
    532 S.W.3d 845 (Tex. App. 2017)                                              3

## **Statutes**

5 U.S.C. § 706(2)(A)                                                             2

## **Other Authorities**

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Jan. 12, 2023)        17

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Feb. 22, 2023)         7

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023)          5

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 3, 2023)          7

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 21, 2023)        10

Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Apr. 20, 2023)        10

Bemana LLC, *Comment on Proposed Non-Compete Clause Rule* (Jan. 12, 2023)        6

Harlan M. Blake*, Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 682-83
    (1960)                                                                      16

Alexander J.S. Colvin and Heidi Shierholz, *Noncompete Agreements,* Economic Policy
    Institute (2019)                                                           14

Michael DiLeo, *Comment on Proposed Non-Compete Clause Rule* (Feb. 27, 2023)    11

Epstein Becker & Green, P.C., *50-State Noncompete Survey* (2023)            11, 14

Marvin Gasper, *Comment on Proposed Non-Compete Clause Rule* (Apr. 18, 2023)  5, 16

Ronald J. Gilson, *The Legal Infrastructure of High Technology Industrial Districts: Silicon
    Valley, Route 128, and Covenants Not to Compete*, Stanford Law School, John M. Olin
    Program in Law and Economics, Working Paper No. 163 (1998).                14

Mary Green, *Comment on Proposed Non-Compete Clause Rule* (Jan. 23, 2023)        5

Alan Hyde, *Should Noncompetes Be Enforced?,* Regulation, Cato Inst. (2010–11)   9

JC, *Comment on Proposed Non-Compete Clause Rule* (Apr. 12, 2023)               17

Matt Marx, *Comment on Proposed Non-Compete Clause Rule* (Apr. 19, 2023).       18

Robert McAvoy, *How Can Federal Actors Compete on Noncompetes? Examining the Need for and Possibility of Federal Action on Noncompetition Agreements*, 126 Dick. L. Rev. 651 (2022) ............................................................... 13

Jessica McCright, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023) ...... 16

J.J. Prescott and Evan Starr, *Subjective Beliefs about Contract Enforceability,* Law & Economics Working Papers (2022) ............................................................. 14

John Roffino, *Comment on Proposed Non-Compete Clause Rule* (Mar. 3, 2023) ........ 5, 9

Homero Ruiz, *Comment on Proposed Non-Compete Clause Rule* (Mar. 13, 2023) ... 6, 12, 17

Evan Savage, *Comment on Proposed Non-Compete Clause Rule* (Jan. 10, 2023) ....... 8, 17

Evan Starr, *Consider This: Training, Wages, and the Enforceability of Covenants Not to Compete*, ILR Review, 72(4), 783-817 (2019) .................................................. 8

Evan Starr, J.J. Prescott and Norman D. Bishara, *Noncompete Agreements in the U.S. Labor Force,* Journal of Law and Econ. (Oct. 2020) ........................................ 11

Evan Starr, J.J. Prescott and Norman D. Bishara, *The Behavioral Effects of (Unenforceable) Contracts*, Journal of Law, Economics, and Organization (2020) ................... 15

Thomson Reuters, *Non-Compete Agreements*, 50 State Statutory Surveys: Employment: Private Employment, Westlaw, 0060 Surveys 23 (Nov. 2022) ........................... 13

Laura Torres, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023) ...... 9, 10

## Rules

Non-Compete Clause Rule, 89 Fed. Reg. 38342 .............................................. 1, 15

## Pleadings

Amended Complaint, *Ryan LLC et al., v. FTC,* 3:24-cv-986 (N.D.Tex. May 1, 2024), ECF No. 22 ............................................................................................. 13

Plaintiff-Intervenor's Complaint, *Ryan LLC et al., v. FTC,* 3:24-cv-986 (N.D.Tex. May 9, 2024), ECF No. 37 ................................................................................. 8

Brief of Amici Curiae Nat'l Retail Fed., et al., *Ryan LLC et al., v. FTC,* 3:24-cv-986 (N.D. Tex. May 14, 2024), ECF No. 49……………………………………………………….7

## INTEREST OF AMICUS CURIAE

The Texas AFL-CIO is a state labor federation consisting of more than 240,000 affiliated union members who stand together in support of working families in Texas. We are teachers, firefighters and farm workers, actors and engineers, pilots and public employees, painters and plumbers, steelworkers and screenwriters, doctors and nurses, stagehands, electricians and more. We work the early shift and the late shift.

We seek a fair shot for all working people in Texas—union and non-union alike. We submit this *amicus* brief in support of speedy implementation of the FTC Non-Compete Clause Rule ("Final Rule")[1] because of the damaging effects that non-compete provisions have on the working people of Texas and the ways those provisions undermine the fundamental right to pursue a vocation of one's choosing.

## INTRODUCTION

The Final Rule is rooted in bedrock principles of economic freedom and American and Texas law. It is also consistent with an extensive administrative record full of comments from ordinary Texans and individuals from across the country describing how non-compete agreements constrain their economic freedom. Working people rarely, if ever, have an opportunity to negotiate over the non-compete provisions in their employment contracts. But these provisions

---

[1] Non-Compete Clause Rule, 89 Fed. Reg. 38342 (May 7, 2024) (to be codified at 16 C.F.R. pts. 910, 12)
https://www.federalregister.gov/documents/2024/05/07/2024-09171/non-compete-clause-rule.

1

strip them of the right to seek work where they would receive higher pay and better treatment and impede their professional growth and ability to channel their entrepreneurial spirit for the benefit of all of us. By limiting economic freedom, non-competes leave hard-working Americans at the mercy of abusive employers, low wages, and poor working conditions. Often, the non-compete provisions that impede economic freedom are not enforceable in court, but that makes little difference when the costs of challenging a non-compete are beyond the reach of ordinary people in this country.

We write to tell the stories of working people. The substantial record evidence directly from individuals who have experienced the harms of non-compete agreements refutes the merits of Plaintiffs' arguments. It reinforces, for example, that Plaintiffs are unlikely to prevail on the merits of their claim that the Final Rule is "arbitrary and capricious." 5 U.S.C. § 706(2)(A). It also demonstrates the extraordinary harm that working people, including low-wage workers, suffer each day that their freedom to work is restrained by a non-compete provision. In this context, the harm of delaying implementation of the Final Rule far outweighs any harm to Plaintiffs.[2]

Even more fundamentally, however, these stories counter the narrative put forward by the corporate special interests seeking to stop the Final Rule

---

[2] *See generally, Rest. L. Ctr. v. U.S. Dep't of Lab.,* 66 F.4th 593, 597 (5th Cir. 2023) ("[T]he movant must show he is likely to prevail on the merits and also demonstrate a substantial threat of irreparable injury if the injunction is not granted; the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and the injunction will not disserve the public interest." (internal citations omitted)).

from taking effect. First, nothing about this rule is revolutionary. It finds clear support in the experiences of hard-working Texans. Those experiences reveal how in practice, non-compete provisions undermine core principles of economic freedom. Second, also consistent with comments shared with the FTC by working people, the Final Rule appropriately sets a categorical prohibition of all non-compete agreements. Considering the burdens and costs of modern litigation, it is difficult or impossible for most people to wait to determine non-compete enforceability until after they change jobs or start a new business. Without a categorical prohibition, these individuals are forced either to suffer under unenforceable non-compete provisions or to spend years of their lives and tens of thousands of dollars clarifying their rights in court. The convoluted patchwork of state law enforceability tests undermines economic freedom and leaves working people holding the bag.

## ARGUMENT

### I.    Non-Compete Clauses Contravene Fundamental Principles of Economic Freedom and Fair Competition.

In describing Texas law's treatment of non-compete provisions, courts have explained that the right to "use one's own labor in any lawful employment [is] one of the first and highest of civil rights." *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 850 (Tex. App. 2017) (internal quotation marks omitted). This principle is rooted in Texas' commitment to "economic liberty and vitality."

3

*Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 786 (Tex. 2011) (J. Willett, *concurring*).

The Final Rule is founded upon those same ideals. First, substantial record evidence echoing the voices of ordinary people from across the country—including the thousands of workers we represent—demonstrates how non-compete clauses, even those no court would ever enforce, undermine the core and fundamental "economic liberty" to freely choose one's own job. *Id.* Second, these experiences reveal that non-compete provisions stifle innovation and entrepreneurship and "restrict the right to work for no better reason than to erase the competition a company sought by entering the marketplace." *Id.* Finally, contrary to Plaintiffs' self-serving suggestion, the erosion of economic freedom is not justified by the purported "freedom of contract," especially when most people have no meaningful opportunity to negotiate over the non-compete provisions in their employment contracts.

### a. Non-Compete Clauses Strip Texans of Economic Freedom.

Texans see that non-compete provisions are a fundamental threat to our most hard-fought rights in this country. A veteran of the war in Afghanistan explained to the FTC in a comment during the rulemaking process that, "[a]s it stands now, I am legally forced to work for my company out of fear of a mega

4

million dollar company ruining my life and my famil[y's] livelihood … Pretty sure that's not what I fought for."[3] It's not.

For many Texans, these provisions operate as their own personal economic straightjackets. One person explained to the FTC, for example, that "[i]t feel[s] almost like we have no choice but to keep this job or else we have to move drastically far away from our loved ones just to support ourselves."[4] Another told the agency that after she was laid off, she felt that her non-compete would stop her from working unless she "change[d] careers at 52 years old."[5]

These constraints can have dire financial consequences. Non-compete provisions prevent working people from starting new businesses, seeking out new opportunities for professional growth, or taking a job that will pay them more. That can mean real hardship for working families struggling to make ends meet. One worker explained to the FTC that he gave up "an annual increase in salary of $60K plus $15K per year in car allowance with great bonus opportunities" because of a non-compete provision in his employment contract.[6] Even if the term were unenforceable, as are so many non-compete provisions confronting working people today, he couldn't afford to fight it in in court. According to a national staffing firm that helps to place blue-collar workers in

---

[3] John Roffino, *Comment on Proposed Non-Compete Clause Rule* (Mar. 3, 2023), https://www.regulations.gov/document/FTC-2023-0007-7563.
[4] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023), https://www.regulations.gov/document/FTC-2023-0007-7258.
[5] Mary Green, *Comment on Proposed Non-Compete Clause Rule* (Jan. 23, 2023), https://www.regulations.gov/comment/FTC-2023-0007-4902.
[6] Marvin Gasper, *Comment on Proposed Non-Compete Clause Rule* (Apr. 18, 2023), https://www.regulations.gov/document/FTC-2023-0007-15725.

jobs across the country, including in Texas, "on a near daily basis, employees [are] unable to accept jobs offering significantly higher rates, advancement opportunities, or a better work environment due to signing non-compete agreements."[7] That is, non-competes are used to constrain not only top executives, but also low-wage and hourly workers—including those without specialized training or access to confidential information—from seeking out higher paying jobs where they would have more opportunities for professional advancement.

The freedom to go work elsewhere is essential to the bargaining power of working people. This principle is obvious to many commenters to the FTC, one of whom noted that "[e]ach and every individual in this country has the ability and opportunity to better one's self [sic] and deserves to earn a competitive wage, dictated by the labor market."[8] But for many corporate employers, the only competitive pressure they feel to pay people more or treat them better is the threat that their workers will go work somewhere else. When employers strip people of the right to sell their labor in a competitive market, that threat goes away, and the employer has effectively shielded itself from the free play of economic forces. As one commenter to the FTC explained, "this forces the

---

[7] Bemana LLC, *Comment on Proposed Non-Compete Clause Rule* (Jan. 12, 2023), https://www.regulations.gov/comment/FTC-2023-0007-1136.
[8] Homero Ruiz, *Comment on Proposed Non-Compete Clause Rule* (Mar. 13, 2023), https://www.regulations.gov/document/FTC-2023-0007-8955.

employee to settle for less benefits/compensation and be less productive because their passion is stifled."[9]

And the harm goes beyond wage suppression. Raising concerns about sexual harassment, unpaid wages, or unsafe working conditions is far more challenging when it not only endangers one's job, but also one's livelihood. In some sense it is correct that the "cause of sexual harassment is the sexual harasser," Brief of Amici Curiae Nat'l Retail Fed., et al., at 23, *Ryan LLC et al., v. FTC,* 3:24-cv-986 (N.D. Tex. May 14, 2024), ECF No. 49, but non-compete provisions frequently force people to bear this sort of mistreatment by preventing them from seeking better working conditions elsewhere. To be sure, these individuals could complain about their mistreatment, but if a person subject to a non-compete is fired after complaining about wrongful treatment, they may find themselves contractually barred from any new jobs in their field. The choice between risking one's livelihood or continuing to suffer workplace abuse is, for many people, not much of a choice at all. As one commenter to the FTC put it, "[w]hy should we, the employees, be tied to a company that treats us [as] less than human?"[10]

We see how non-compete provisions undermine the right to earn a decent living as one sees fit.[11] In many cases, that appears to be the point. The United

---

[9] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Feb. 22, 2023), https://www.regulations.gov/comment/FTC-2023-0007-5829.

[10] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 3, 2023), https://www.regulations.gov/document/FTC-2023-0007-7225.

[11] *See generally* Evan Starr, *Consider This: Training, Wages, and the Enforceability of Covenants Not to Compete*, 72(4) ILR Review 783 (2019), https://doi.org/10.1177/0019793919826060.

States Chamber of Commerce opens its federal court complaint seeking an injunction against the Final Rule by observing that the true value of a corporation is its people.[12] The Texas AFL-CIO agrees, but as one commenter to the FTC explained, if a "person is so 'valuable', pay them their worth, [do] not sue them to ruin them."[13] The Final Rule would help to ensure a marketplace where corporations compete fairly for labor through decent wages and fair treatment and where individuals retain their core economic freedom to pursue a vocation of their choosing. That is why we support the Final Rule.

### _b._ _Texans See How Non-Compete Provisions Undermine Free and Fair Competition to the Detriment of the Public._

Whether they are nurses serving patients, construction workers building skyscrapers, entrepreneurs with new ideas, scientists who can help to spur new discoveries, or service workers who take pride in the ways they make their customers' lives better, our members and people across Texas know they are the engine of this state. They dedicate their lives to building careers where they can serve others with specialized skills and expertise. But non-compete provisions frequently force them to give up on those goals to the detriment of all of us.

People across Texas frequently decline to pursue work that would allow them to serve the public because they do not have the resources to challenge a non-compete. For example, a healthcare worker told the FTC that she had been

---

[12] Plaintiff-Intervenor's Complaint at ¶ 1, _Ryan LLC et al., v. FTC,_ 3:24-cv-986 (N.D.Tex. May 9, 2024), ECF No. 37
[13] Evan Savage, _Comment on Proposed Non-Compete Clause Rule_ (Jan. 10, 2023), https://www.regulations.gov/document/FTC-2023-0007-0516.

forced to find a job "in something that is outside of [her] area of expertise because of [a] non-compete."[14] Another commenter described how a non-compete agreement keeps him trapped in a medical device sales job selling an inferior product: "Because of my non-compete I have to fight and attempt to keep my providers from using a better alternative treatment option. The concept of forcing someone to fight for your inferior product at the possible expense of patient care, all because your employee is forced by law to 'serve' you feels extremely un-American and unconstitutional."[15] The first worker wants to use her expertise to serve patients in her chosen field. The second wants to sell better medical technology to providers. We all want these workers to be able to make that choice, but non-compete provisions stand in the way.

Texans also see how non-compete provisions impede their opportunities to build new businesses and to grow new ideas because "old employers interfere with start-ups."[16] One commenter to the FTC described her husband's experience forming a new business in "the same industry [as his previous job], for which he holds a professional license." She explained that her husband's "former employer felt threatened and used the non-compete as their way to bully [her] husband out of business."[17] Another described how her "dream" to

---

[14] Laura Torres, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023), https://www.regulations.gov/document/FTC-2023-0007-7225.

[15] John Roffino, *Comment on Proposed Non-Compete Clause Rule* (Mar. 3, 2023), https://www.regulations.gov/document/FTC-2023-0007-7563.

[16] Alan Hyde, *Should Noncompetes Be Enforced?,* Regulation, Cato Inst. (2010–11), https://www.cato.org/regulation/winter-2010-2011/should-noncompetes-be-enforced.

[17] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Mar. 21, 2023), https://www.regulations.gov/document/FTC-2023-0007-10542.

found her own business "turned into a nightmare" when she was forced to exit her industry because of a non-compete.[18] Others would have loved to "start a new company better than this one" but only "if the non compete I signed wasn't in place."[19] Once the Final Rule goes into effect, these individuals will have the confidence to launch their new projects, start their new businesses, and maybe even hire their own workers. That kind of freedom and autonomy may not serve powerful corporate interests seeking to maintain their unfair competitive advantage, but it is critical to maintaining a free and fair market that works for everyone.

### c.  The Purported "Freedom of Contract" Does Not Justify Constraints on Individual Economic Freedom.

Plaintiffs would suggest that the commenters telling the FTC about how their economic freedom has been stripped from them through the fine print have it wrong. Sure, their economic freedom may be constrained in some way, but only because they have been able to exercise their purported "freedom of contract."

We know firsthand, however, based on the experiences of people across this state and reflected in the ample administrative record before the FTC, that in these contexts, the "freedom of contract" is a fiction. Individuals almost never have any meaningful opportunity to negotiate over fine-print terms in

---

[18] Laura Torres, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023), https://www.regulations.gov/document/FTC-2023-0007-7225.

[19] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Apr. 20, 2023), https://www.regulations.gov/comment/FTC-2023-0007-18001.

employment contracts, especially when those terms include non-compete agreements designed to stifle competition. One recent study suggests that almost 90% of workers subject to non-compete provisions never negotiated over them.[20] We regularly see people signing non-competes just before starting a new job or during their first day or two at a new job along with a rash of other "onboarding" paperwork.[21] This paperwork is almost always presented to them on a take-it-or-leave-it basis.

Comments to the FTC reinforce the point. One person reported to the FTC that during his first day at his new job, he "was handed a packet of papers that included a non-compete. This wasn't mentioned anywhere in the interviews."[22] In the event that someone even notices a non-compete in their fine-print contracts, there is little they can do, having already relied on the offer of new employment, left their previous job, and lost negotiating leverage. One commenter to the FTC explained that "on my first day on the job … I was told that if I intended to work at the company in question, I would have to agree and sign the non-compete agreement. I begrudgingly agreed, as I had quit my previous job in order to secure this job."[23] Quite simply, non-compete provisions

---

[20] *See* Evan Starr, J.J. Prescott and Norman D. Bishara, *Noncompete Agreements in the U.S. Labor Force,* Journal of Law and Econ. (Oct. 2020), https://ssrn.com/abstract=2625714 or http://dx.doi.org/10.2139/ssrn.2625714.

[21] This problem is so marked, that eight states and the District of Columbia have enacted laws requiring advance notice of non-competes. Epstein Becker & Green, P.C., *50-State Noncompete Survey* (2023), https://tinyurl.com/52r2tu65. But forty-two states still allow boilerplate non-competes to be included in onboarding paperwork

[22] Michael DiLeo, *Comment on Proposed Non-Compete Clause Rule* (Feb. 27, 2023), https://www.regulations.gov/document/FTC-2023-0007-5962.

[23] Homero Ruiz, *Comment on Proposed Non-Compete Clause Rule* (Mar. 13, 2023), https://www.regulations.gov/document/FTC-2023-0007-8955.

are rarely freely negotiated contractual terms. They are fine-print constraints on the right to work imposed unilaterally by employers on individuals as a condition of a job. There is no freedom of contract in that.

## II. The Experiences of Texans and the Principles of Economic Freedom Support a Bright-Line Prohibition of Non-Compete Provisions.

The principles of economic freedom that serve as the foundation of Texas law and the FTC's analysis are only protected by a bright-line and categorical prohibition like the Final Rule. That is because for most people, the mere presence of a non-compete provision in an employment contract will have all the harmful consequences we describe above even if no court would ever enforce it. And those working people who dare to challenge their non-compete provisions face threats and legal consequences that often force them to back down. Even if they ultimately prevail in court, they only do so after years of litigation and tens of thousands of dollars in legal costs.

### a. Legal Ambiguity Incentivizes Drafter Overreach and Causes Individuals to Abide by Unenforceable Non-Compete Provisions.

Plaintiffs' laud "the prevailing state-law approach, [in which] courts use a case-by-case analysis to balance the benefits of a non-compete agreement against the potential burden it imposes on the worker—a fact-specific inquiry designed to determine whether a particular non-compete agreement is reasonable and thus enforceable." Amended Complaint at ¶ 3, *Ryan LLC et al., v. FTC,* 3:24-cv-986 (N.D.Tex. May 1, 2024) ECF No. 22. But not only do state law standards for non-compete enforceability vary widely, even popular

reasonableness tests,[24] according to Texas courts, have "a certain eye-of-the-beholder flavor—a vagueness that inexorably produces the case-by-case unpredictability that haunts this area of employment law." *Marsh,* 354 S.W.3d at 782 (J. Willett, concurring). The problem is only exacerbated by the prevalence of corporations that operate across several states, leading to the possibility that, for example, a Texas employee's non-compete provision be subject to *another state's* reasonableness test. In too many cases, "[e]mployers and employees who enter into noncompete agreements likely have little understanding of whether their agreement is enforceable under the chosen law or whether the chosen forum would even apply that state's noncompete law."[25]

In the face of this ambiguity, many corporate employers have little incentive not to overreach and include unenforceable non-compete provisions in employment contracts. As Judge Willet explained when he served on the Texas Supreme Court, it cannot "be doubted that some companies try to tilt the playing field via dubious noncompete covenants, even facially unenforceable ones, knowing that even the specter of enforcement action will chill employees (and their potential employers) into preemptive capitulation." *Marsh*, 354 S.W.3d at 784 (J. Willett, concurring).[26] This is especially true because most

---

[24] Thomson Reuters, *Non-Compete Agreements*, 50 State Statutory Surveys: Employment: Private Employment, Westlaw, 0060 Surveys 23 (Nov. 2022) (showing many states that require a reasonableness test).

[25] Robert McAvoy, *How Can Federal Actors Compete on Noncompetes? Examining the Need for and Possibility of Federal Action on Noncompetition Agreements*, 126 Dick. L. Rev. 651 (2022).

[26] This is evidenced by the fact that in 2019 in California, a state where noncompete agreements had been entirely barred for over a century, approximately 45% of businesses still asked employees to sign non-compete agreements. Alexander J.S. Colvin and Heidi Shierholz, *Noncompete Agreements,* Economic Policy Institute (Dec. 10, 2019),

state law doctrines allow courts to modify non-compete provisions by blue penciling them after the fact.[27] In these contexts, employers have little reason not to overreach, knowing that at worst a court will merely redraft its non-compete to comply with the court's own reasonableness analysis.

While legal ambiguity creates incentives for corporate overreach, it also means that most people have no choice but to abide by a non-compete, even when it violates the law. Most Texans do not have the resources to hire a lawyer to review their employment contracts. They are left to assume that whatever their employer includes within that contract is legal and has the force of law. According to recent research, "70% of employees with unenforceable noncompetes mistakenly believe their noncompetes are enforceable."[28] That means that potentially thousands of Texans feel bound by non-competes that violate state law. They are not seeking out work that may pay them more or allow them to escape abuse; they are not seeking out new companies that will provide better paths to professional growth; and they are not starting new businesses that will grow the Texas economy. Even if no court would ever enforce these non-compete provisions, they have constrained individual economic freedom. For these reasons, it is essential the FTC's rule set a bright-line and categorical proscription against non-compete provisions.

---

https://www.epi.org/publication/noncompete-agreements/, *citing* Ronald J. Gilson, *The Legal Infrastructure of High Technology Industrial Districts: Silicon Valley, Route 128, and Covenants Not to Compete*, Stanford Law School, John M. Olin Program in Law and Economics, Working Paper No. 163 (1998).

[27] Epstein Becker & Green, P.C., *supra* note 22.

[28] J.J. Prescott and Evan Starr, *Subjective Beliefs about Contract Enforceability,* Law & Economics Working Papers at 231 (2022), https://repository.law.umich.edu/law_econ_current/231.

14

### b. *People Who Do Challenge Non-Compete Provisions Face Legal Threats and Protracted and Costly Litigation.*

After the fact enforcement based on a convoluted patchwork of various state reasonableness tests does not fulfill the interests of economic freedom. In most cases, non-compete clauses never end up in court, even for folks who doubt the clause's enforceability. That is because most non-compete enforcement is done informally through reminders at exit interviews, post-employment letters, or other informal communications.[29] (Courts review a tiny percentage of non-competes, particularly given FTC estimates that one in five American workers—roughly 30 million Americans – are subject to a non-compete[30]). One commenter to the FTC shared that, after working for an employer that treated her "like trash," she "finally couldn't take it anymore after being threatened, belittled, stole [sic] from and now I am getting constant emails [threatening] being sued if I continue in my line of work."[31] We see in the experiences of Texans what competition law scholar Harlan Blake explained more than half a century ago:

> For every covenant [not to compete] that finds its way to court, there are thousands which exercise an *in terrorem* effect on employees who respect their contractual obligations. …Thus, the mobility of untold numbers of employees is restricted by the intimidation of restrictions whose severity no court would sanction.

---

[29] *See generally*, Evan Starr, J.J. Prescott and Norman D. Bishara, *The Behavioral Effects of (Unenforceable) Contracts*, Journal of Law, Economics, and Organization (2020), https://ssrn.com/abstract=2858637 or http://dx.doi.org/10.2139/ssrn.2858637.

[30] Non-Compete Clause Rule, 89 Fed. Reg. 38342, 38343 (May 7, 2024) (to be codified at 16 C.F.R. pts. 910, 12).

[31] Jessica McCright, *Comment on Proposed Non-Compete Clause Rule* (Mar. 2, 2023), https://www.regulations.gov/document/FTC-2023-0007-7184.

Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 682-83 (1960). In this way, the threats of non-compete enforcement undermine individual economic freedom even when founded upon unenforceable non-compete provisions.

Employer threats coerce compliance not only because they frighten working people, most of whom do not have counsel, but because protracted and costly litigation will mean substantial hardship for a worker even if they are ultimately vindicated in court. One commenter to the FTC simply said, "I don't know how I could possibly afford to fight them in the courts."[32] Another commenter explained that his "company is a large public company with on staff legal that is too big to fight. I've already spent $17,000 of my retirement money to try to fight for some limits on their alleged limitations and will likely have to spend another $30,000 with no sure outcome, especially in my state of Texas."[33] Another person explained: "LLC's and Inc's [sic] have more money to fight legally, so it almost always is the 'David vs. Goliath' scenario without the biblical help of God."[34] "Basically, the whole thing," according to another commenter, "is just a scare tactic to maintaining [sic] good employees from getting ahead and earning a better living at another Company."[35]

---

[32] Marvin Gasper, *Comment on Proposed Non-Compete Clause Rule* (Apr. 18, 2023), https://www.regulations.gov/document/FTC-2023-0007-15725.

[33] Anonymous, *Comment on Proposed Non-Compete Clause Rule* (Jan. 12, 2023), https://www.regulations.gov/document/FTC-2023-0007-1493.

[34] Evan Savage, *Comment on Proposed Non-Compete Clause* Rule (Jan. 10, 2023), https://www.regulations.gov/document/FTC-2023-0007-0516.

[35] Homero Ruiz, *Comment on Proposed Non-Compete Clause Rule* (Mar. 13, 2023), https://www.regulations.gov/document/FTC-2023-0007-8955.

Individuals who take their case to court may prevail, but it is often a hollow victory. One Texas worker filed suit to seek clarity on the enforceability of their noncompete provision, and said, "I eventually won the suit after being sidelined for 6 months. And ended up with a large legal bill. The cost was tremendous given lost wages and legal fees. The emotional toll on my family was also significant."[36] Another Texan explained, "I had $80,000 in legal fees. I did win, but because in Texas, I was unable to [] recover costs. I had to file for bankruptcy." Plaintiffs suggest they confront irreparable harm in the threat of enforcement actions against them based on the FTC's Final Rule, but the more serious harm at issue here is that confronting thousands of Texans, like this individual, who face financial ruin even if they are successful in challenging their non-compete provision in court.

The only winners in these stories from working people, even in the stories that involve individuals who ultimately prevailed in challenging their non-compete provisions, are the lawyers who billed to litigate these fights and the corporate employers who were able to sidestep the competitive pressures of the marketplace by intimidating their workers into not seeking employment elsewhere. Ordinary people always lose. This is why, as another commenter explained to the FTC, "reform efforts need to dwell not on what will happen in the courtroom but on preventing lawsuits from becoming a possibility."[37] By

---

[36] JC, *Comment on Proposed Non-Compete Clause Rule* (Apr. 12, 2023), https://www.regulations.gov/document/FTC-2023-0007-13975.

[37] Matt Marx, *Comment on Proposed Non-Compete Clause Rule* (Apr. 19, 2023).

setting a bright-line and categorical prohibition, the Final Rule will mean less attorneys' fees for lawyers litigating the enforceability of non-compete agreements after the fact and will make it much more challenging for employers to threaten people with non-compete provisions that likely violate the law. But the Final Rule will fulfill the core promise of economic freedom that people across Texas strive for.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' requests for a stay of the Final Rule's effective date and a preliminary injunction barring its enforcement. Given that Plaintiffs have limited likelihood of success on the merits and that a stay or injunction would be antithetical to the public interest in general and to the interest of America's workers in particular, neither of these drastic remedies is appropriate.

Dated: May 31, 2024                  Respectfully submitted,

                                     **TREMAIN ARTAZA PLLC**

                                     By:  /s/  *Ashley E. Tremain*
                                             Ashley E. Tremain
                                             Texas Bar No. 24066209

                                     4925 Greenville Ave, Ste. 200
                                     Dallas, TX 75206
                                     (469) 573-0229
                                     ashley@tremainartaza.com

                                     ~and~

                                     **TOWARDS JUSTICE**

                                     By:  /s/ David H. Seligman
                                             David H. Seligman
                                             Nina DiSalvo
                                             Rachel W. Dempsey
                                             *pro hac vice* forthcoming

                                     P.O. Box 371689, PMB 44465
                                     Denver, CO 80237-5680
                                     (720) 441-2236
                                     david@towardsjustice.org
                                     nina@towardsjustice.org
                                     rachel@towardsjustice.org

                                     *Attorneys for Amicus Curiae*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify the foregoing complies with the Procedures for Cases Assigned to District Judge Ada Brown and Standing Order, that the foregoing brief contains 4,548 words, including footnotes, and excluding the case caption, table of contents, table of authorities, signature block, and certificates, and that the foregoing is typed in 14-point font and the footnotes are typed in 11-point font.

Dated: May 31, 2024

/s/ *Ashley E. Tremain*
Ashley E. Tremain
Tremain Artaza PLLC
4925 Greenville Ave, Ste. 200
Dallas, TX 75206
(469) 573-0229
ashley@tremainartaza.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing document was electronically filed in this matter with the Clerk of Court, using the ECF system, which sent notification of such filing to all counsel of record.

Dated: May 31, 2024

/s/ *Ashley E. Tremain*
Ashley E. Tremain
Tremain Artaza PLLC
4925 Greenville Ave, Ste. 200
Dallas, TX 75206
(469) 573-0229
ashley@tremainartaza.com