IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

RYAN, LLC,

        Plaintiff,

v.

FEDERAL TRADE COMMISSION,

        Defendant.

Civil Action No. 3:24-cv-986-E

## RYAN, LLC'S REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION

Allyson N. Ho
Texas Bar No. 24033667
Elizabeth A. Kiernan
Texas Bar No. 24105666
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900
aho@gibsondunn.com
ekiernan@gibsondunn.com

Charles W. Fillmore
Texas Bar No. 00785861
H. Dustin Fillmore III
Texas Bar No. 06996010
THE FILLMORE LAW FIRM LLP
201 Main Street, Suite 700
Fort Worth, TX 76102
Telephone: 817.332.2351
chad@fillmorefirm.com
dusty@fillmorefirm.com

Eugene Scalia (*pro hac vice*)
Amir C. Tayrani (*pro hac vice*)
Andrew G. I. Kilberg (*pro hac vice*)
Aaron Hauptman (*pro hac vice*)
Joshua R. Zuckerman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
escalia@gibsondunn.com
atayrani@gibsondunn.com
akilberg@gibsondunn.com
ahauptman@gibsondunn.com
jzuckerman@gibsondunn.com

*Attorneys for Ryan, LLC*

## TABLE OF CONTENTS

Page(s)

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

PROCEDURAL STATEMENT ................................................................................. 2

ARGUMENT ............................................................................................................... 3

    I.      Ryan Is Likely To Succeed On The Merits. .................................................. 3

        A.      The Commission Lacks Authority To Issue The Rule .............................. 3

        B.      The Commission's Claimed Authority Would Violate The
                Non-Delegation Doctrine. ...................................................................... 10

    II.     Ryan Will Be Irreparably Harmed. ............................................................. 11

    III.    The Equities And Public Interest Favor Preliminary Relief. ..................... 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
   295 U.S. 495 (1935)..................................................................................................3, 10

*Atl. Richfield Co. v. Christian*,
   140 S. Ct. 1335 (2020)......................................................................................................7

*Biden v. Nebraska*,
   143 S. Ct. 2355 (2023)......................................................................................................9

*CFTC v. Schor*,
   478 U.S. 833 (1986).................................................................................................4, 5, 6

*Chamber of Commerce v. OSHA*,
   636 F.2d 464 (D.C. Cir. 1980)..........................................................................................5

*Collins v. Mnuchin*,
   938 F.3d 553 (5th Cir. 2019) ............................................................................................5

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)........................................................................................................10

*FTC v. Bunte Bros.*,
   312 U.S. 349 (1941)..........................................................................................................7

*FTC v. R.F. Keppel & Bro., Inc.*,
   291 U.S. 304 (1934)........................................................................................................10

*ICC v. Cincinnati, N. O. & T. P. Ry. Co.*
   167 U.S. 479 (1897)..........................................................................................................9

*McDonald v. Longley*,
   4 F.4th 229 (5th Cir. 2021) ...............................................................................................3

*NFIB v. OSHA*,
   595 U.S. 109 (2022)..........................................................................................................8

*Rest. Law Ctr. v. DOL*,
   66 F.4th 593 (5th Cir. 2023) ...........................................................................................10

|   | Page(s) |
|---|---|

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
    531 U.S. 159 (2001) ............................................................................................2, 5

*Texas v. Becerra*,
    577 F. Supp. 3d 527 (N.D. Tex. 2021) ......................................................................12

*Texas v. Biden*,
    10 F. 4th 538 (5th Cir. 2021) ....................................................................................11

*Util. Air Reg. Grp. v. EPA*,
    573 U.S. 302 (2014) ...............................................................................................8, 9

*West Virginia v. EPA*,
    597 U.S. 697 (2022) .................................................................................1, 8, 9, 10

### Statutes

15 U.S.C. § 45(a)(2) ...........................................................................................................3

15 U.S.C. § 45a ..................................................................................................................4

15 U.S.C. § 46(g) ...............................................................................................................3

15 U.S.C. § 57a(a)(1) .........................................................................................................4

15 U.S.C. § 57a(a)(2) .........................................................................................................6

15 U.S.C. § 57b-3(a)(1) .....................................................................................................7

15 U.S.C. § 1194(c) ...........................................................................................................4

### Regulatory Materials

Federal Trade Commission, *Misbranding and Deception as to Leather Content of Waist Belts*, 29 Fed. Reg. 8,166 (June 27, 1964) ................................5

Federal Trade Commission, *Non-Compete Clause Rule* (rel. Apr. 23, 2024), available at https://tinyurl.com/2s4kcf84 ..............................................6, 8

Federal Trade Commission, *Power Output Claims for Amplifiers Used in Home Entertainment Products*, 39 Fed. Reg. 15,387 (May 3, 1974) ..........................................................................................................5

Page(s)

## Other Authorities

*The FTC Decrees: No More Non-Compete Agreements*, Wall St. J.
 (Apr. 24, 2024), https://on.wsj.com/4bHYtHq ....................................................... 1

*The FTC's noncompete clause rule goes too far*, Wash. Post (May 7,
 2024), https://wapo.st/4573ffh .................................................................................. 1

S. Conf. Rep. 93-1408 (1974) ........................................................................................ 6

S. Rep. 93-151 (1973) .................................................................................................... 6

S. Rep. 96-500 (1979) .................................................................................................... 8

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Federal Trade Commission has adopted one of the most consequential and controversial employment rules in history—invalidating 30 million contracts, banning a centuries-old practice legal in 46 States, and triggering over $400 billion in economic effects.  The Non-Compete Rule has been front-page news, with editorial boards across the ideological spectrum condemning the Commission's overreach, and 66 amici weighing in.  *See, e.g.*, *The FTC's noncompete clause rule goes too far*, Wash. Post (May 7, 2024), https://wapo.st/4573ffh; *The FTC Decrees: No More Non-Compete Agreements*, Wall St. J. (Apr. 24, 2024), https://on.wsj.com/4bHYtHq.  Yet the Commission denies that whether it has the authority to promulgate an unfair-method-of-competition rule banning non-competes is a major question.

Of course it is.  This is the first time the Commission has promulgated a bona fide unfair-method-of-competition rule.  The Rule is a "transformative expansion in its regulatory authority."  *West Virginia v. EPA*, 597 U.S. 697, 724 (2022).  And the Commission has used this newfound "extravagant statutory power over the national economy" to answer a question of "vast economic and political significance."  *Id.* at 724, 716.  Unless the agency's statutory authority is "clear," the Rule is unlawful.  *Id.* at 723.

1

The FTC Act does not provide authority, clear or otherwise. Congress does not bury the authority to promulgate a rule banning non-competes in ancillary provisions like Section 6(g). The Commission nevertheless argues that Congress ratified its interpretation of Section 6(g) in the Magnuson-Moss Act and FTC Improvements Act. But there was no practice of promulgating unfair-method-of-competition rules to ratify. In any event, those statutes do not supply the "overwhelming evidence of acquiescence" needed to "replace the plain text and original understanding of a statute with an amended agency interpretation." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 169 n.5 (2001) ("*SWANCC*").

The Commission barely contests Ryan's irreparable harm and equitable arguments, likely because the Rule will manifestly impose irreparable compliance costs and because equity dictates maintaining the centuries-old status quo while the Commission's novel—and unlawful—claim of authority is legally tested.

The Court should grant a stay and preliminary injunction.

## PROCEDURAL STATEMENT

The procedural posture, issues, and standard of review have not changed since Ryan filed its motion. *See* ECF 24 at 12.

# ARGUMENT

I. **Ryan Is Likely To Succeed On The Merits.**

**A. The Commission Lacks Authority To Issue The Rule.**

The text, history, and structure of the FTC Act show the Commission lacks authority to issue unfair-method-of-competition rules, and the major questions doctrine resolves any doubt.

### 1. Section 6(g) Does Not Authorize Unfair-Method-of-Competition Rules.

Congress does not hide major components of a regulatory scheme like the power to promulgate unfair-method-of-competition rules in mouseholes like the latter half of the seventh subsection of a section containing otherwise ministerial and investigative powers. The Commission notes (at 20) that the FTC Act was a major law. But Section 5's adjudication scheme is the centerpiece; Section 6(g) is an ancillary provision authorizing rules to support the adjudication framework, not to supplant it. 15 U.S.C. § 46(g).[1]

That reading of Section 6(g) matches the contemporaneous understandings of both the Commission itself, ECF 24 at 15, and the Supreme Court, *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 532-33 (1935). It also accords with the early-1900s congressional practice of pairing substantive rulemaking authority

---

[1] The Commission claims (at 16) that Section 5's directive "to prevent" entities "from using unfair methods of competition," 15 U.S.C. § 45(a)(2), "contemplates … forward-looking rulemaking," but that simply reflects the Commission's ability to issue cease-and-desist orders.

3

with penalties for violating those rules, *see* ECF 24 at 14-15—a practice the Commission does not dispute.

The surplusage canon likewise indicates that Section 6(g) does not authorize substantive rulemaking. Contrary to the Commission's assertion (at 19) that Congress has merely "direct[ed] the Commission" to use its existing authority, Congress has expressly granted authority to promulgate specific types of substantive rules. *See, e.g.*, 15 U.S.C. § 57a(a)(1) ("the Commission may prescribe … rules which define with specificity … unfair or deceptive acts or practices"); *id.* § 45a ("The Commission … may … issue [Made in America labeling] rules"); *id.* § 1194(c) ("The Commission is authorized and directed to prescribe" flammability rules). Those grants would be superfluous if Section 6(g) already provided substantive rulemaking power.

### 2. Congress Did Not Ratify The Commission's Interpretation.

Recognizing that Section 6(g) is an awfully slim reed, the Commission suggests Congress ratified its interpretation through the Magnuson-Moss Act and the FTC Improvements Act. Neither statute comes close to the standard for ratification.

Although the Supreme Court once observed that Congress's revisiting a statute without making "pertinent change" is evidence that a "longstanding administrative interpretation" is correct, *CFTC v. Schor*, 478 U.S. 833, 846 (1986), it has since recognized that "congressional acquiescence" should be recognized

4

"with extreme care" and only if there is "overwhelming evidence of acquiescence." *SWANCC*, 531 U.S. at 160, 169 n.5; *see also Collins v. Mnuchin*, 938 F.3d 553, 572 (5th Cir. 2019). The Commission does not—and could not—offer overwhelming evidence.

Even under *Schor*, however, there has been no ratification. First, there was no "longstanding administrative interpretation" allowing unfair-method-of-competition rulemaking for Congress to ratify. *Schor*, 478 U.S. at 486. For most of its history, the Commission interpreted Section 6(g) to grant no rulemaking authority at all. ECF 24 at 15. While the Commission promulgated substantive rules for a brief period before Magnuson-Moss, the substance of those rules defined narrow unfair or deceptive acts or practices ("UDAPs")—most commonly deceptive advertising. *See, e.g.*, 29 Fed. Reg. 8,166 (June 27, 1964) ("Misbranding and Deception as to Leather Content of Waist Belts"); 39 Fed. Reg. 15,387 (May 3, 1974) ("Power Output Claims for Amplifiers Used in Home Entertainment Products"). The Commission sometimes added as an afterthought that those UDAPs were also unfair methods of competition, but that boilerplate language does not make them unfair-method-of-competition rules "just because the agency says" they are. *Chamber of Commerce v. OSHA*, 636 F.2d 464, 468 (D.C. Cir. 1980). "Instead, it is the substance of what the agency" did "which is decisive." *Id.* (cleaned up). The

5

Commission has not cited a single rule that, like the Non-Compete Rule, was in substance a unfair-method-of-competition Rule.[2]

Second, even if there were a practice to ratify, Magnuson-Moss made "pertinent change[s]" to the FTC Act that demonstrate the absence of ratification—granting the Commission authority to promulgate UDAP, but not unfair-method-of-competition, rules. *Schor*, 478 U.S. at 846. Indeed, that authorization *rebuts* the Commission's position that Section 6(g) *already* provided power to issue substantive rules.

The Commission leans heavily on Magnuson-Moss's proviso that the Act "shall not affect any authority of the Commission" to issue unfair-method-of-competition rules. 15 U.S.C. § 57a(a)(2). But rather than ratify unfair-method-of-competition rulemaking authority, the phrase "shall not affect *any* authority" merely preserves a hypothetical potentiality, demonstrating at most a congressional decision to dodge the question.

The legislative history supports that understanding. The Senate removed the section of its bill granting the Commission rulemaking authority. *See* S. Rep. 93-151, at 32 (1973) (discussing S. 986, 92d Cong. § 206 (1971), which would have granted UDAP, but not unfair-method-of-competition, rulemaking authority). The House

---

[2] The "one" unfair-method-of-competition rule Ryan previously mentioned (at 20-21), while an antitrust rule, was not actually an unfair-method-of-competition rule. *See* Rule at 26 n.142 (citing Clayton Act rule).

bill, however, expressly granted UDAP rulemaking authority while expressly disclaiming unfair-method-of-competition rulemaking authority; to appease the Senate's preference for neutrality, the conference committee agreed on deliberately neutral language leaving the 1914 status quo in place.  *See* S. Conf. Rep. 93-1408 § 202 (1974).  Moreover, "[t]hat for a [half] century [since] the Commission has" not promulgated unfair-method-of-competition rules indicates Congress did not ratify its power to do so; the absence of an "assertion of power by those who presumably would be alert to exercise it, is … significant in determining whether such power was actually conferred."  *FTC v. Bunte Bros.*, 312 U.S. 349, 351-52 (1941).[3]

Nor did Congress ratify the Commission's purported unfair-method-of-competition rulemaking authority by subjecting rules promulgated under Section 6 to the FTC Improvements Act's enhanced procedures.  15 U.S.C. § 57b-3(a)(1).  Setting aside that there was nothing to ratify, the pertinent section applies to amendments to preexisting rules.  Referring to Section 6 ensured the enhanced procedures would apply to amendments to UDAP rules promulgated before Magnuson-Moss.  The legislative history confirms that point: "[S]ection 18 is

---

[3] Contrary to the Commission's suggestion (at 18), the reference to Section 18 in Section 6(g) supports this conclusion.  That reference and Section 18(a)(2) reflect "a belt and suspenders approach" to ensure that the Commission did not promulgate UDAP rules under Section 6(g) regardless of whether it grants authority.  *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.5 (2020).  Congress did not grant authority to issue unfair-method-of-competition rules through negative inference.

7

specifically limited to authority to issue rules to prohibit [UDAPs]. The clear intent of Congress in granting this authority was ... *not to provide new rulemaking authority over antitrust violations*." S. Rep. 96-500 at 19 n.6 (1979) (emphasis added).

### 3. The Major Questions Doctrine Resolves Any Doubt.

Whether the Commission has authority to promulgate an unfair-method-of-competition rule banning non-competes is a textbook major question. This is the first bona fide unfair-method-of-competition rule; the Commission thus "claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy.'" *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("*UARG*") (citation omitted); *see also NFIB v. OSHA*, 595 U.S. 109, 119 (2022). The Commission has never before claimed Section 6(g) authorizes it to establish categorical, nationwide rules prohibiting any business "conduct" it perceives as "unfair." ECF 82 at 4. And this particular Rule has "vast economic and political significance," nullifying more than 30 million contracts, preempting the laws of 46 States, and causing over $400 billion in economic impact. *West Virginia*, 597 U.S. at 716; *see* Rule at 7 & n.34, 441.

The Commission nevertheless claims (at 22) that no major question is presented because "the Commission could bring an enforcement action under Section 5 charging that the use of non-competes is an unfair method of

8

competition."[4]  But the scope of the Commission's rulemaking authority over non-competes is a major question regardless of its purported adjudicatory authority.  In *ICC v. Cincinnati, N. O. & T. P. Ry. Co.*—an early major questions case—the Supreme Court explained that an agency's rulemaking authority over a subject must be "open to no misconstruction, but clear and direct," even when it has clear case-by-case enforcement authority.  167 U.S. 479, 505 (1897); *see West Virginia*, 597 U.S. at 740 (Gorsuch, J., concurring) (discussing *Cincinnati*).  That's because the "legislat[ive]" power to ban virtually all non-competes is orders of magnitude broader than the "enforce[ment]" power to enjoin use of a specific non-compete.  *Cincinnati*, 167 U.S. at 501.  Thus, if the Commission's authority to legislatively ban non-competes is even "a debatable question," that is "persuasive" evidence it cannot wield that power.  *Id.* at 494.

  The Commission's supposed "expertise" is irrelevant.  ECF 82 at 22.  The major questions doctrine is not restricted to cases where an agency acts outside its expertise.  *See, e.g.*, *West Virginia*, 597 U.S. 697 (EPA emissions rule); *UARG*, 573 U.S. 302 (same); *Biden v. Nebraska*, 143 S. Ct. 2355 (2023) (Education Department cancelling federal student loans).  Regardless, the Commission is not a labor regulator and has no meaningful experience with non-competes.  *See* ECF 24 at 9, 18.

---

[4] Ryan does not concede that the Commission could properly determine that any non-compete is an unfair method of competition.  Ryan focused on the Commission's authority to issue a blanket ban because that is what the Rule does.

9

Congress needed "to speak clearly" to authorize the Commission to adopt one of the most sweeping and controversial employment regulations in living memory. *West Virginia*, 597 U.S. at 716. It did not.

### B. The Commission's Claimed Authority Would Violate The Non-Delegation Doctrine.

If the Commission's interpretation of Section 6(g) is correct, then the FTC Act unconstitutionally delegates legislative authority. The Commission maintains (at 23) its authority to legislatively ban "unfair methods of competition" is somehow less open-ended than the authority to write codes of "fair competition" *Schechter* held unconstitutional. But that cannot be if, as the Commission claims, "unfair methods of competition" is "broader and more flexible" than "unfair competition." *FTC v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 310-11 (1934). Indeed, under the Commission's incredibly loose interpretation of the phrase in its Policy Statement—reaching any "unfair" practice that is not "merely a condition of the marketplace"—it is even more boundless. ECF 82 at 4 (discussing its Policy Statement).[5]

At minimum, the Court should construe any ambiguity "to avoid serious constitutional doubts" presented by the FTC's purported unfair-method-of-competition rulemaking authority. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).

---

[5] The Commission's assertion (at 31) that *Schechter* did not rely on the agency's adjudicatory enforcement authority is simply false. *See Schechter*, 295 U.S. at 533 (criticizing Recovery Act for "dispens[ing] with [FTC Act's] administrative procedure").

10

## II. Ryan Will Be Irreparably Harmed.

The Commission does not contest that the costs of complying with the Rule are unrecoverable. *See* ECF 82 at 38. That alone establishes irreparable injury. *Rest. Law Ctr. v. DOL*, 66 F.4th 593, 597 (5th Cir. 2023). So do the other harms resulting from the Rule. ECF 24 at 25-26. The Commission's claim (at 38) that "even without the Rule in place" every non-compete in the country is illegal—and presumably has been since the FTC Act was enacted—merely illustrates the audacity of the Commission's position and the need for a pause pending a decision on the merits.

## III. The Equities And Public Interest Favor Preliminary Relief.

There is "no public interest in the perpetuation of unlawful agency action." *Texas v. Biden*, 10 F. 4th 538, 560 (5th Cir. 2021). Contrary to the Commission's assertion (at 39), that the merits are intertwined with this public interest factor does not "collapse" the equitable prongs into the merits.

Regardless, other equitable factors cut sharply in Ryan's favor. Allowing the Rule to go into effect would open Pandora's box; 30 million contracts would be immediately invalidated, with real-world consequences that could be impossible to rectify if the Rule is later held unlawful. Granting preliminary relief, on the other hand, leaves in place the centuries-old status quo while the Court takes a few months to decide the merits. Moreover, the Commission's assertion that the Rule's long-term benefits outweigh its costs is not only wrong, but irrelevant to the equities of

11

*preliminary* relief, which would protect countless businesses that have reasonably relied on the validity and enforceability of non-competes. *See Texas v. Becerra*, 577 F. Supp. 3d 527, 561 (N.D. Tex. 2021).

## CONCLUSION

The Court should stay the Non-Compete Rule's effective date and preliminarily enjoin its enforcement.

Respectfully submitted,

Dated:  June 12, 2024 /s/ *Allyson N. Ho*

| | |
|---|---|
| Allyson N. Ho | Eugene Scalia (*pro hac vice*) |
| Texas Bar No. 24033667 | Amir C. Tayrani (*pro hac vice*) |
| Elizabeth A. Kiernan | Andrew G. I. Kilberg (*pro hac vice*) |
| Texas Bar No. 24105666 | Aaron Hauptman (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | Joshua R. Zuckerman (*pro hac vice*) |
| 2001 Ross Avenue, Suite 2100 | GIBSON, DUNN & CRUTCHER LLP |
| Dallas, TX 75201 | 1050 Connecticut Avenue, N.W. |
| Telephone: 214.698.3100 | Washington, DC 20036 |
| Facsimile: 214.571.2900 | Telephone: 202.955.8500 |
| aho@gibsondunn.com | Facsimile: 202.467.0539 |
| ekiernan@gibsondunn.com | escalia@gibsondunn.com |
| | atayrani@gibsondunn.com |
| Charles W. Fillmore | akilberg@gibsondunn.com |
| Texas Bar No. 00785861 | ahauptman@gibsondunn.com |
| H. Dustin Fillmore III | jzuckerman@gibsondunn.com |
| Texas Bar No. 06996010 | |
| THE FILLMORE LAW FIRM LLP | |
| 201 Main Street, Suite 700 | |
| Fort Worth, TX 76102 | |
| Telephone: 817.332.2351 | |
| chad@fillmorefirm.com | |
| dusty@fillmorefirm.com | |

*Attorneys for Ryan, LLC*

13

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume requirements of Judge Brown's Case Management Procedure II.A because it contains 2,476 words; and

2. This document complies with the typeface requirements of Judge Brown's Case Management Procedure II.A because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated:  June 12, 2024                           Respectfully submitted,

*/s/ Allyson N. Ho*
Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
214.698.3100
aho@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that, on June 12, 2024, I caused the foregoing motion to be filed with the Clerk for the U.S. District Court for the Northern District of Texas through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

Dated:  June 12, 2024

Respectfully submitted,

*/s/ Allyson N. Ho*
Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
214.698.3100
aho@gibsondunn.com