# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RYAN, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>*Defendant.* | **Case No. 3:24-cv-986-E** |

## PLAINTIFF-INTERVENORS' REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

*Page*

PROCEDURAL STATEMENT ...................................................................................................1

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.     PLAINTIFF-INTERVENORS ARE LIKELY TO PREVAIL ON THE MERITS. ...............................................................................................3

     A.     Section 6(g) Does Not Authorize Binding Competition Regulations. ...............................................................................3

     B.     Section 5 Does Not Authorize The Commission To Declare All Noncompetes Unlawful. .......................................................6

     C.     The FTC Act Does Not Authorize The Commission's Retroactive Rulemaking. ..................................................................8

     D.     The Noncompete Rule Is Arbitrary And Capricious. ......................9

II.     PLAINTIFF-INTERVENORS WILL BE IRREPARABLY HARMED IF THE RULE TAKES EFFECT. ....................................................11

III.     THE PUBLIC INTEREST SUPPORTS PRELIMINARY RELIEF. .....................................................................................12

IV.     ANY RELIEF IN THIS CASE SHOULD APPLY NATIONWIDE. ..................................................................................12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

*Page(s)*

**CASES:**

*Career Colls. & Schs. of Tex.* v. *U.S. Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ...................................................................................12

*E.I. Du Pont de Nemours & Co.* v. *FTC*,
   729 F.2d 128 (2d Cir. 1984) .......................................................................................6

*FTC* v. *Texaco, Inc.*,
   393 U.S. 223 (1968) ....................................................................................................6

*Jama* v. *ICE*,
   543 U.S. 335 (2005) ....................................................................................................5

*Martin* v. *Hadix*,
   527 U.S. 343 (1999) ....................................................................................................9

*National Petroleum Refiners* v. *FTC*,
   482 F.2d 672 (D.C. Cir. 1973) ................................................................................2, 4

*National Cable & Telecomm. Ass'n* v. *FCC*,
   567 F.3d 659 (D.C. Cir. 2009) ...................................................................................9

*NFIB* v. *OSHA*,
   595 U.S. 109 (2022) ....................................................................................................8

*Pan Am. World Airways, Inc.* v. *United States*,
   371 U.S. 296 (1963) ....................................................................................................6

*Perez Pimentel* v. *Mukasey*,
   530 F.3d 321 (5th Cir. 2008) .....................................................................................9

*Texas* v. *Biden*,
   10 F.4th 538 (5th Cir. 2021) ....................................................................................12

*Texas* v. *EPA*,
   829 F.3d 405 (5th Cir. 2016) ...................................................................................11

*U.S. Chamber of Commerce et al.* v. *FTC*,
 2024 WL 1954139 (E.D. Tex. May 3, 2024) ...................................................... 13

*USFS* v. *Cowpasture River Pres. Ass'n*,
 590 U.S. 604 (2020) ............................................................................................ 8

*West Virginia* v. *EPA*,
 597 U.S. 697 (2022) ............................................................................................ 6

*Winter* v. *NRDC*,
 555 U.S. 7 (2008) .............................................................................................. 12

**STATUTES:**

15 U.S.C. § 57a ............................................................................................... 4, 10

15 U.S.C. § 57b ..................................................................................................... 4

15 U.S.C. § 57b-3(c) ........................................................................................... 10

Flammable Fabrics Act Amendment, Pub. L. 90-189 .......................................... 5

FTC Act of 1914, Pub. L. 63-203 ..................................................................... 3, 8

FTC Improvements Act of 1980, Pub. L. 96-252 ................................................ 4

Magnuson-Moss Act of 1975, Pub. L. 93-637 ............................................. 2, 4, 5

**OTHER AUTHORITIES:**

120 Cong. Rec. 12347 (1974) (statement of Rep. James Broyhill) ..................... 4

## PROCEDURAL STATEMENT

The procedural posture, issues, and standard of review have not changed and are undisputed.  *See* ECF 47 at 10.

## INTRODUCTION

The Noncompete Rule is a novel and breathtaking assertion of regulatory power.  The Commission has not attempted to issue a substantive unfair-competition regulation in the five decades since Congress authorized it to make rules governing unfair and deceptive business practices.  Yet the Commission has now exercised that supposedly long-dormant authority to enact a nationwide ban on noncompete agreements—a common business practice that has been exclusively regulated by the States for centuries—invalidating tens of millions of private contracts and cutting off an active political debate in the process.

Remarkably, the Commission's mantra is that none of this is remarkable.  In its telling, Congress in 1914 authorized the Commission to adopt economy-altering rules prohibiting whatever business practices a majority of Commissioners believes "tend to harm competitive conditions." And the Commission has purportedly always been free to ban such practices as a class, even if some of them—*i.e.*, individual noncompete agreements—would be perfectly lawful if assessed on their own.  At bottom, the Commission

makes five different arguments for its business-as-usual approach. None is persuasive.

First, rather than attempt to defend the D.C. Circuit's outdated decision in *National Petroleum Refiners*, the Commission relies almost entirely on the Magnuson-Moss Act of 1975 as endorsing its competition rulemaking authority. But the Commission's reading contradicts the statute itself: Magnuson-Moss *declined* to recognize that the Commission had any such authority. And the Commission has no explanation for how that law could possibly provide the clear statement required by the major-questions doctrine.

Second, the Commission argues that Section 5 authorizes it to outlaw all noncompetes as a class, regardless of whether any individual noncompete harms competition. That argument is contrary to decades of case law requiring individualized analysis of each "method of competition" alleged to be "unfair." And the Commission cannot even muster a response to plaintiffs' point that whether Congress authorized it to deem all noncompetes as "unfair" is a major question.

Third, the Commission claims that its Rule has no retroactive effect because it merely renders contracts "prospectively unenforceable." Br. 32-33 (ECF 82). That is nonsense. The Rule does not merely prevent parties from

2

entering into noncompete agreements going forward. It invalidates the vast majority of existing noncompete agreements, thereby disrupting settled contract rights and depriving private parties of their bargained-for agreements.

Fourth, the Commission attempts to avoid plaintiffs' arbitrary-and-capricious arguments by claiming that agencies are not always required to provide empirical support for their rules or to adopt narrower alternatives. But the Commission has no rational defense for *this* plainly overbroad ban.

Finally, the Commission resists the other factors for preliminary relief, contending that plaintiffs have failed to show irreparable harm or that the equities favor relief. But the Rule's severe compliance costs readily qualify as irreparable harm. And under these circumstances, the equities clearly favor preserving the centuries-long status quo by continuing to prevent the Commission from regulating noncompetes.

## ARGUMENT

## I. PLAINTIFF-INTERVENORS ARE LIKELY TO PREVAIL ON THE MERITS.

### A. Section 6(g) Does Not Authorize Binding Competition Regulations.

1. The Commission has little to say about the original meaning of the FTC Act. When the Act was adopted in 1914, and for roughly five decades

afterward, no one understood Section 6(g) to convey substantive rulemaking authority—and the Commission does not even attempt to argue otherwise. The Commission instead argues (for the first time in the last half-century) that the Magnuson-Moss Act of 1975 and the FTC Improvements Act of 1980 ratified a single D.C. Circuit decision that had blessed the Commission's authority to issue "substantive rules of business conduct." Br. 16-17, 21 (citing *National Petroleum Refiners*). Notably, despite citing *National Petroleum Refiners* seven times, the Commission does not once defend its reasoning.

Nor did Congress ratify that decision in the Magnuson-Moss Act. In fact, Congress expressly *declined* to adopt the Commission's interpretation, stating only that Magnuson-Moss would "not affect *any* authority of the Commission to prescribe" unfair-competition rules. *See* 15 U.S.C. § 57a (emphasis added). As Representative Broyhill explained, the "new bill does not deal with the antitrust laws" because antitrust rulemaking would "have a far more pervasive effect." 120 Cong. Rec. 12348 (1974). Had Congress intended to ratify *National Petroleum Refiners*, it would have preserved "*the* authority of the Commission." The same is true of the 1980 Act, which likewise took no position on Section 6(g) rulemaking authority. *See* 15 U.S.C. § 57b-3. In any event, courts interpret statutes to ratify judicial interpretations only

4

when there is a "judicial consensus so broad and unquestioned that [courts] must presume Congress knew of and endorsed it." *Jama* v. *ICE*, 543 U.S. 335, 349 (2005). That standard is obviously not met by a single lower-court decision.

Finally, as the Commission acknowledges, Magnuson-Moss imposed constraints on the Commission's new rulemaking authority over unfair or deceptive practices.* Br. 5-6. But the Commission never explains why Congress would at the same time have implicitly authorized the Commission to issue binding unfair-competition rules with no constraints whatsoever. Ryan Reply 6-7 (ECF 146).

2. The Commission also argues (at 21-23) that the major-questions doctrine does not apply to the question of whether Section 6(g) authorizes substantive unfair-competition *rules* because the Act elsewhere authorizes individual unfair-competition *enforcement actions*. But there is a massive difference between the Commission's addressing unfair conduct on a case-by-case, fact-specific basis and issuing a nationwide ban on a common business practice that is lawful in almost all States. Ryan Reply 8. And even the cases the Commission cites refute its suggestion (at 22) that the major-questions

---

* The Commission argues (at 19) that Magnuson-Moss only "narrowed" its "pre-existing authority." But if that were right, Congress would not have enacted laws expressly authorizing Commission rulemakings on particular subjects prior to 1975. *See* Pub. L. 90-189, § 4 (1967).

5

doctrine applies only when an agency strays "beyond its core mandate." *See West Virginia* v. *EPA*, 597 U.S. 697, 716 (2022) (applying the major-questions doctrine notwithstanding the EPA's mandate to regulate pollutants).

### B. Section 5 Does Not Authorize The Commission To Declare All Noncompetes Unlawful.

1. The Commission likewise cannot show that Section 5 authorizes it to categorically deem *all* noncompetes to be "unfair methods of competition." The Commission cites no case supporting its argument (at 26) that it may condemn noncompetes "as a class," without regard to whether every "individual noncompete" harms competition—an argument that conflicts with decades of case law construing the word "unfair." *See E.I. du Pont de Nemours & Co.* v. *FTC*, 729 F.2d 128, 140-41 (2d Cir. 1984). The Commission instead relies on its own 2022 Policy Statement that supposedly "synthesiz[es] caselaw," Br. 4, but even the cases cited in that Statement directly undermine the Commission's reasoning. *See, e.g.*, *Pan Am. World Airways, Inc.* v. *United States*, 371 U.S. 296, 307-308 (1963) (explaining that Section 5 takes its "meaning from the facts of each case"). And although the Commission points (at 25) to its authority to address practices with a "tendency" to harm competition, there is a substantial difference between outlawing conduct that uniformly "exhibit[s] a strong potential for stifling competition," *FTC* v.

6

*Texaco, Inc.*, 393 U.S. 223, 225 (1968), and outlawing at least *some* noncompetes that have been uniformly deemed lawful for centuries.

At one point, the Commission suggests that it did in fact conclude that "the use of *any* non-compete is an unfair method of competition." Br. 26. But that is not what the Rule says—it declined to engage with the merits of individual noncompetes. *See* 89 Fed. Reg. at 38,379. And that argument is also inconsistent with the Commission's attempt to brush aside cases upholding "specific noncompetes" as legal on the ground that those cases held only that noncompetes are not *per se* unlawful. Br. 27-28. The Commission cannot have it both ways: either it must have determined that *every* noncompete harms competition—a conclusion the Rule does not even attempt to justify; or it is claiming the power to condemn noncompetes that do not harm competition—a conclusion at odds with decades of case law.

2.  The Commission has also failed to show that Congress *clearly* authorized the Commission to prohibit all noncompete agreements. Such clear congressional authorization is required both by the major-questions doctrine—because the noncompete ban has staggering ramifications for the national economy and cuts off active political debate; and by principles of federalism—because the Rule reflects an attempt to "significantly alter the

7

balance between federal and state power," *USFS* v. *Cowpasture River Pres. Ass'n*, 590 U.S. 604, 622 (2020).

The Commission's brief addresses only the second point, having essentially no response to the major-questions doctrine's application to its interpretation of Section 5. The Commission says that the "[r]egulation of unfair methods of competition is clearly not the particular domain of state law" (at 25), and "non-competes have … long been subject to federal antitrust laws" (at 29). But the Commission had never previously attempted to regulate noncompetes before this rulemaking, *see NFIB* v. *OSHA*, 595 U.S. 109 (2022), and it *still* has never identified an instance where a noncompete was found to violate federal law.

More fundamentally, plaintiffs' argument is not that *any* application of Section 5 to an individual noncompete presents a major question; it is that the Commission needs clear congressional authorization to categorically outlaw *all* noncompete agreements. The Commission does not even try to make that showing.

### C. The FTC Act Does Not Authorize The Commission's Retroactive Rulemaking.

The Commission likewise identifies no clear statutory authorization to retroactively invalidate millions of existing contracts. *See* Association Br. 24-

25 (ECF 47). It instead contends that the Rule has no retroactive effect because it "does not impose 'past legal consequences' for any conduct predating its effective date." Br. 32. That is an incomplete understanding of retroactivity. "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment." *Martin* v. *Hadix*, 527 U.S. 343, 357-358 (1999). The Commission's acknowledgment (at 32) that the Rule applies to "existing" contracts confirms that it will "upset[] settled expectations." *Perez Pimentel* v. *Mukasey*, 530 F.3d 321, 326 (5th Cir. 2008). In other words, the Rule will do far more than "alter only the present situation," *National Cable & Telecomm. Ass'n* v. *FCC*, 567 F.3d 659, 670 (D.C. Cir. 2009): it will make past bargained-for agreements worthless. Because the Commission can show no authorization for such retroactive rulemaking, the Rule should be set aside.

### D. The Noncompete Rule Is Arbitrary And Capricious.

To support its unprecedented ban, the Commission relied extensively on research comparing different state-law regimes that *all* impose narrower restrictions than the Rule. Rather than defend that approach, the Commission backtracks, claiming that it placed "limited weight on such … comparisons." Br. 35. But the Rule cited those studies over 30 times. And even if the

9

Commission were right that it also relied on "before-and-after analysis" of changes to state law, *id.*, that research suffers from the same flaw: it measures the effects of policies that are far more targeted than the Rule.

The Commission also argues that its bright-line rule is justified because it offers "clarity" and avoids confusion. Br. 35. It is hard to see how the Commission's "functional" definition of noncompetes could possibly offer clarity, unless the Commission means to suggest that in practice its Rule will sweep in everything. In any event, the Commission makes no attempt to show those supposed benefits outweigh the Rule's substantial costs.

Finally, the Commission contends that its cost-benefit analysis was sufficiently rigorous because it mentioned (but did not measure) the Rule's costs. Br. 37. But the Commission does not justify its failure to quantify increased litigation costs. And its attempt to shield its deficient analysis from judicial review altogether conflicts with the plain text of the statute it cites, which limits review only for unfair-and-deceptive-practices rules. *See* 15 U.S.C. § 57b-3(c) (referring only to rules challenged "pursuant to [S]ection 57a(e)").

## II. PLAINTIFF-INTERVENORS WILL BE IRREPARABLY HARMED IF THE RULE TAKES EFFECT.

Plaintiffs documented the considerable costs the Rule is already imposing and will impose if it takes effect. *See* Association Br. 30-31. The Commission dismisses these injuries as "mere litigation expense" and suggests that any violations of the Rule would be "self-inflicted" injuries. Br. 38. That grossly misstates the harms identified by plaintiffs and their members, which include the inability to protect their confidential information or their investments in their employees. Courts routinely grant injunctions to prevent the burdens of complying with likely unlawful regulations. *See, e.g.*, *Texas* v. *EPA*, 829 F.3d 405, 433-434 (5th Cir. 2016).

The Commission also suggests (at 38) that the Rule itself could not cause irreparable harm because the Commission could still challenge noncompetes through individual enforcement actions. That argument is hard to take seriously. Outlawing 30 million contractual agreements, regardless of whether the agreements are actually anticompetitive, plainly imposes far more harm than putting employers on notice that some fraction of those agreements will face federal enforcement if they are actually anticompetitive. Courts are not powerless to pause unlawful rules simply because the agency could pursue individualized enforcement.

11

## III.  THE PUBLIC INTEREST SUPPORTS PRELIMINARY RELIEF.

The Commission identifies no specific harm from maintaining the centuries-old status quo while this litigation is pending.  Instead, it points (at 39) to the Rule's self-serving estimates about its benefits "over the next decade."  But the Commission does not explain how a temporary delay in enforcing the Rule would interfere with those supposed long-term benefits.

The Commission also disputes that the public interest favors enjoining likely unlawful agency action, but offers no response to the many decisions holding exactly that.  *See Texas* v. *Biden*, 10 F.4th 538, 560 (5th Cir. 2021).  The only case the Commission cites involved an injunction that hindered "the Navy's ability to conduct realistic training exercises," *Winter* v. *NRDC*, 555 U.S. 7, 24 (2008)—a harm that is obviously different in kind from a months-long stay preserving a centuries-long status quo.

## IV.  ANY RELIEF IN THIS CASE SHOULD APPLY NATIONWIDE.

Under binding precedent, this Court should stay and enjoin the Rule on a nationwide basis if it finds that relief is warranted.  *Career Colls. & Schs. of Tex.* v. *U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024).  The Commission argues that "traditional equitable principle[s]" apply to APA remedies and require limiting relief to the plaintiffs.  Br. 40.  But that is the exact argument the government litigated and lost in *Career Colleges*.  And even if the Court

12

were to consider the Commission's argument (at 41) that any relief for plaintiff-intervenors should be limited to "their identified members," the Commission cites no authority for that proposition, which is "flatly contrary to case law allowing associational standing." *U.S. Chamber of Commerce* v. *FTC*, 2024 WL 1954139, at *3 (E.D. Tex. May 3, 2024) (collecting cases).

## CONCLUSION

Plaintiff-intervenors respectfully request that the Court stay the Rule's effective date and preliminarily enjoin its enforcement.

Dated:  June 12, 2024

Jordan L. Von Bokern (D.C. Bar No. 1032962)
Tyler S. Badgley (D.C. Bar No. 1047899)
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, D.C.  20062
Tel:  (202) 463-5337
jvonbokern@uschamber.com
tbadgley@uschamber.com


Liz Dougherty* (D.C. Bar No. 457352)
BUSINESS ROUNDTABLE
1000 Maine Avenue SW
Washington, D.C. 20024
202-872-1260
ldougherty@brt.org

* *Pro hac vice* pending

Respectfully submitted,

/s/ *Robert L. Sayles*
Robert L. Sayles (Texas Bar No. 24049857)
Boyce Holleman (Texas Bar No. 24126727)
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue
Suite 3600
Dallas, TX 75202
Tel: (214) 257-9800
Fax: (214) 939-8787
rsayles@bradley.com
bholleman@bradley.com

Jeffrey B. Wall (Georgia Bar No. 750427)
Judson O. Littleton (D.C. Bar No. 1027310)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C.  20006-5215
Tel:  (202) 956-7000
wallj@sullcrom.com
littletonj@sullcrom.com

*Counsel for Plaintiff-Intervenors Chamber of Commerce of the United States of America, Business Roundtable, Texas Association of Business, and Longview Chamber of Commerce*

14

## CERTIFICATE OF WORD COUNT

This Brief In Support of Motion for Stay of Effective Date and Preliminary Injunction complies with the Procedures for Cases Assigned to District Judge Ada Brown and Standing Order, Rule II(A), because it contains 2,485 words.

*/s/ Robert L. Sayles*
Robert L. Sayles

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, I electronically transmitted the attached document to the Clerk of the Court and all counsel of record using the ECF System for filing and service in accordance with Local Rule 5.1.

*/s/ Robert L. Sayles*
Robert L. Sayles