# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RYAN LLC,<br><br>*Plaintiff,*<br><br>CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiff-Intervenors,*<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>*Defendant.* | Civil Action No. 3:24-CV-00986-E<br><br>Hon. Ada Brown |

## BRIEF *AMICUS CURIAE* OF
## AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION
## IN SUPPORT OF PLAINTIFF'S AND INTERVENORS' MOTIONS FOR
## SUMMARY JUDGMENT

Darrell Calvin
Texas State Bar No. 24012372
MARTIN, DISIERE, JEFFERSON
  & WISDOM, LLP
9111 Cyprus Waters Blvd, Suite 250
Dallas, TX 75019
(214) 420-5536
(214) 420-5501 (*fax*)
calvin@mdjwlaw.com

Paul A. Howard, II
(*pro hac vice* pending)
D.C. Bar No. 988991
HOWARD LAW & POLICY GROUP PLLC
1701 K Street NW, Suite 225
Washington, DC 20006
(202) 939-1588
paul.howard@howardlpg.com

*Counsel for* Amicus Curiae

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTEREST OF AMICUS CURIAE AND SUMMARY OF ARGUMENT .............. 1

ARGUMENT .............................................................................................................5

I.     The text of Section 6 of FTC Act does not authorize substantive rulemaking. ....................................................................................................................6

       a.   The entirety of Section 6 reveals that Congress is particularly deliberate in its limited grants of authority to the FTC. ...............................................7

       b.   Context makes clear that the FTC's rulemaking authority under Section 6(g) is not substantive, but rather a "housekeeping statute." ......................9

II.    Allowing the Non-Compete Rule to take effect would violate the canon of a presumption against federal preemption. ...................................................11

CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ...................................................................................10

*Cipollone v. Liggett Group*,
    505 U.S. 504, 518 (1992) ............................................................................11

*Civil Aeronautics Board v. Delta Air Lines, Inc.*,
    367 U.S. 316, 322 (1961) ..............................................................................6

*Davis v. Mich. Dept. of Treasury*,
    489 U.S. 803 (1989) ...................................................................................10

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...................................................................................10

*Hightower v. Tex. Hosp. Ass'n,*
    F. 3d 443, 448 (5th Cir. 1995) .......................................................................6

*Union Labor Life Ins. Co. v. Pireno*,
    458 U.S. 119 (1982) .................................................................................3, 4

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ...................................................................................10

**Statutes and Regulations**

McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq.
    15 U.S.C. § 1012(b) .......................................................................3, 4, 7, 8, 11

Federal Trade Commission Act, 15 U.S.C. § 41 et seq.
    15 U.S.C. § 46 ........................................................................5, 6, 7, 8, 9, 10
    15 U.S.C. § 46(g) ................................................................................ 6, 9, 10, 11, 12

TEX. BUS. & COM. CODE ANN. §15.50 .........................................................................11

*Non-Compete Clause Rule*, 88 Fed. Reg. 3,482 (Jan. 19, 2023) ..............................2

*Non-Compete Clause Rule*, 89 Fed. Reg. 38,342 (May 7, 2024) .....2, 4, 5, 9, 11, 12

**Other Authorities**

Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 290 (2012) ...............................................................................................11

H.R. REP. NO. 96-917, at 29 (1980) (Conf. Rep.) ....................................................8

John McAdams, *Non-Compete Agreements: A Review of the Literature*, Bureau of Economics Research Paper, 3 (2019) ................................................................2

*Oversight to Examine the Enforcement and Administrative Authority of the FTC to Regulate Unfair and Deceptive Trade Practices: Hearing Before the Subcomm. for Consumers of the S. Comm. On Commerce Science, and Transportation*, 96th Cong. 717 (1979) (statement of the American Insurance Association). ..............8

S. REP. NO. 96-500, at 14 (1979) ................................................................7, 8, 10

Stonebridge Life Insurance Company (Aug. 19, 2003) (F.T.C. staff opinion letter) (available at https://www.ftc.gov/legal-library/browse/advisory-opinions/opinion-03-1-1) ................................................................................3

U.S. Bureau of Labor Statistics: Insurance Carriers and Related Activities: NAICS 524, Jun. 2024 (*available at* https://www.bls.gov/iag/tgs/iag524.htm)................4

Workforce Mobility Act of 2023 S. 220, H.R. 731 118th Cong (2023) .....................9

## INTEREST OF *AMICUS CURIAE* AND SUMMARY OF ARGUMENT

The American Property Casualty Insurance Association ("APCIA") is the nation's premier insurance trade association, with members writing 65 percent of the U.S. property casualty insurance market. APCIA promotes and protects the viability of private competition for the benefit of consumers and insurers, with a legacy dating back 150 years, while representing the broadest cross-section of home, auto, and business insurers of any national trade association. APCIA members represent all sizes, structures, and regions, protecting families, communities, and businesses in the U.S. and across the globe.

Non-compete agreements are commonly used in the property casualty insurance industry to allow insurance agencies and brokers to protect their client bases and prevent insurance agency employees, such as producers, from illegally retaining client lists from a previous employer and using them to the benefit of a competitor. The use of non-compete agreements supports pro-competitive interests in conjunction with statutory limitations such as trade-secret laws, and allows insurers to preemptively address risk of misappropriation of proprietary information and trade-secrets used in a competitive marketplace where market position is often dependent upon individual product offerings created through internally developed methods. Non-compete agreements more effectively and efficiently help prevent

unpermitted or unconsented-to transfers of knowledge than after-the-fact litigation and arbitration.

In the insurance industry, non-competes promote investment in client cultivation and product development innovation. As noted by the Federal Trade Commission's economist John McAdams, non-competes "allow firms to reduce recruitment and training costs by lowering turnover," encourage firms to offer higher wages to compensate new employees, and "increase the returns to research and development," which in turn promotes innovation. John McAdams, *Non-Compete Agreements: A Review of the Literature*, Bureau of Economics Research Paper, 3 (2019).

In January 2023, the Federal Trade Commission ("FTC" or the "Commission") proposed an across-the-board rule that would prohibit nearly all non-compete agreements by deeming them to be unfair methods of competition. *Non-Compete Clause Rule*, 88 Fed. Reg. 3,482 (Jan. 19, 2023). Notwithstanding the numerous state laws that currently permit and regulate the content of non-compete clauses, and despite receiving numerous comments warning the agency of both its questionable interpretation of its own authority and the pro-competitive value of non-compete agreements, the FTC promulgated a final rule of similar sweeping, dramatic scope. *Non-Compete Clause Rule*, 89 Fed. Reg. 38,342 (May 7, 2024) (the "Rule" or "Non-Compete Rule").

2

Generally, FTC rules rarely apply to the insurance industry. Regulation of the insurance industry has long been the domain of the states, and Congress affirmed the primacy of state regulation under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. For present purposes, the McCarran-Ferguson Act provides that the Federal Trade Commission Act (15 U.S.C. § 41 et seq.) will only apply "to the business of insurance to the extent that such business is not regulated by State law." 15 U.S.C. § 1012 (b).

In *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982), the US Supreme Court laid out a three-part factual inquiry (known as the "*Pireno* test") to determine whether an activity constitutes the "business of insurance." Indeed, the FTC has previously confirmed in advisory opinions that it will utilize the *Pireno* test to determine whether a practice falls outside its jurisdiction by virtue of the McCarran Ferguson Act. *See, e.g.,* Stonebridge Life Insurance Company (Aug. 19, 2003) (F.T.C. staff opinion letter) (available at https://www.ftc.gov/legal-library/browse/advisory-opinions/opinion-03-1-1). The *Pireno* test is comprised as follows:

1. Whether the practice has the effect of transferring or spreading a policyholder's risk;
2. Whether the practice is an integral part of the policy relationship between the insurer and the insured; and

3

3. Whether the practice is limited to entities within the insurance industry.

Whether insurers' use of non-compete clauses would meet the criteria of the *Pireno* test is a fact-dependent inquiry, and APCIA does not concede that the Non-Compete Rule would fall outside of the McCarran-Ferguson Act's exemption. Nevertheless, APCIA recognizes that antitrust exemptions are to be construed narrowly, see *Pireno*, 458 U.S. 119, 126 ("[E]xemptions from the antitrust laws must be construed narrowly. This principle applies not only to implicit exemptions… but also to express statutory exemptions"), and there is a chance that insurers' use of non-compete clauses would be determined to fall outside of the "business of insurance" exemption, particularly given the third prong of the *Pireno* test.

Should this occur, imposition of the Non-Compete Rule on the insurance industry would significantly disrupt the insurance producer landscape, impacting the entire industry including carriers, their business operations, and potentially policyholders. Illustrative of the potential scope of this impact is that the Bureau of Labor Statistics currently places the number of individuals employed by the insurance industry at 3.02 million. U.S. Bureau of Labor Statistics: Insurance Carriers and Related Activities: NAICS 524, Jun. 2024 (*available at* https://www.bls.gov/iag/tgs/iag524.htm). Initial auditing and review of existing employment agreements presents a potentially significant burden on individual insurance companies and the industry collectively.

Accordingly, APCIA files this brief in support of Plaintiff's and Plaintiff-Intervenors' motions for summary judgment to highlight, and hopefully avert, the harm that would result should the Non-Compete Rule take effect. APCIA agrees with Plaintiff and Intervenors that the FTC does not possess the statutory authority to promulgate the Non-Compete Rule, and we write separately to highlight the insurance industry's unique perspective, as an industry that usually falls outside of the FTC's jurisdiction. Specifically, APCIA notes that the entirety of Section 6 of the Federal Trade Commission Act, 15 U.S.C. § 46, makes clear that Congress intends to grant authority deliberately and on a limited basis, as evidenced by the concluding proviso of Section 6, which concerns the business of insurance. It is also APCIA's contention that the existing state-level regulation of non-compete clauses argues against interpreting FTC authority this broadly, given the presumption against state law preemption canon of statutory interpretation.

## ARGUMENT

In its order granting the motion for preliminary injunction, this Court correctly determined that "the text, structure, and history of the FTC Act reveal that the FTC lacks substantive rulemaking authority with respect to unfair methods of competition[.]" (ECF No. 153 at 1). We believe the Court's reasoning in reaching this conclusion is sound, and we encourage the Court to reach the same conclusion

in the context of the Plaintiff's and Plaintiff-Intervenors' motions for summary judgment.

## I. The text of Section 6 of the FTC Act does not authorize substantive rulemaking.

The FTC maintains that its authority to promulgate rules prohibiting unfair methods of competition can be found in the largely perfunctory language of 15 U.S.C. § 46(g) ("Section 6(g)"), which states, "The Commission shall also have power…to make rules and regulations for the purpose of carrying out the provisions of this Act." The FTC claims its authority to promulgate rules and regulations concerning unfair methods of competition is "without any textual limitation." ECF No. 82 at 16. However, this court must determine "not what the [Commission] thinks it should do but what Congress has said it can do." *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961). In construing Section 6(g), "the initial inquiry is the language of the statute itself." *See Hightower v. Tex. Hosp. Ass'n,* F. 3d 443, 448 (5th Cir. 1995). A plain reading of this text reveals that there is no express grant of substantive rulemaking authority relating to unfair methods of competition. Furthermore, the statutory context and legislative history demonstrate that the authority claimed by the FTC is not something that Congress would purport to grant *implicitly*.

## a. The entirety of Section 6 reveals that Congress is particularly deliberate in its limited grants of authority to the FTC.

While the FTC wishes to interpret its grant of rulemaking authority broadly, the reality is that the text and legislative history of Section 6 tell a different story. As representatives of the insurance industry, APCIA urges this court to look no further than the concluding proviso of Section 6, which states:

> Nothing in this section (other than the provisions of clause (c) and clause (d)) shall apply to the business of insurance, except that the Commission shall have authority to conduct studies and prepare reports relating to the business of insurance. The Commission may exercise such authority only upon receiving a request which is agreed to by a majority of the members of the Committee on Commerce, Science, and Transportation of the Senate or the Committee on Energy and Commerce of the House of Representatives. The authority to conduct any such study shall expire at the end of the Congress during which the request for such study was made

15 U.S.C. § 46. Here, Congress very intentionally restricts the FTC from stepping into the business of insurance, permitting the FTC only to conduct studies on the business of insurance, and the FTC may not even do that unless it receives a specific request from Congress, with the explicit condition that the limited authority promptly expires at the end of the Congressional term.

It is instructive for our purposes to examine the circumstances that led to the enactment of this proviso. While the McCarran-Ferguson Act had already made clear that the FTC's jurisdiction does not extend to the "business of insurance," in 1979 a Senate committee found that the FTC was "[a]cting under the incorrect

7

assumption that it has jurisdiction [to investigate the insurance industry]." S. Rep. No. 96-500, at 14 (1979). The committee continued, "the FTC has devoted a considerable portion of its resources to a broad program of insurance-related investigations [in which] the Commission has in effect assumed the social and economic policymaking role which Congress has reserved exclusively for the States." *Id.* Congress determined that a clarifying amendment "is now needed because of FTC actions inconsistent with [its] jurisdictional limitations[.]" *Id.*

The result was the enactment of the proviso at the end of Section 6, 15 U.S.C. § 46, and the "strong reaffirmation of the basic policy of the McCarran-Ferguson Act: that the business of insurance is to be regulated by the States." H.R. Rep. No. 96-917, at 29 (1980) (Conf. Rep.). This legislative history demonstrates that Congress was compelled to act not because they believed the FTC's authority was unclear – indeed, Congress stressed that "the amendment does not affect existing authority" S. Rep. No. 96-500, at 14 – but rather that the clarification was needed in response to "the apparent expansionist[] tendencies of the FTC." *Oversight to Examine the Enforcement and Administrative Authority of the FTC to Regulate Unfair and Deceptive Trade Practices: Hearing Before the Subcomm. for Consumers of the S. Comm. On Commerce Science, and Transportation*, 96th Cong. 717 (1979) (statement of the American Insurance Association).

8

The parallels to the instant case are inescapable. Here, the FTC has sought to "assume[] the social and economic policymaking role" already occupied by states in a manner inconsistent with its jurisdictional limitations. Even though state law already regulates the use of non-compete agreements, and notwithstanding the fact that efforts in Congress to enact a federal ban on their use have been unsuccessful, *see, e.g.,* Workforce Mobility Act of 2023 S. 220, H.R. 731 118th Cong. (a bill prohibiting non-compete agreements in most circumstances and empowering the FTC to treat violations of the prohibition as an unfair or deceptive act or practice), the Rule nevertheless attempts to find jurisdiction where it does not exist. Indeed, the various bills that have been introduced in Congress on the topic in recent years demonstrate that Congress understands the FTC does not now have the power ban non-competes; instead, an additional statutory authorization would be needed.

In sum, inclusion of the "business of insurance" proviso in Section 6 effectively demonstrates how deliberate Congress intends to be in conferring authority to the FTC – a deliberateness that cannot be found in Section 6(g) as it relates to the ability to promulgate substantive rules concerning unfair methods of competition.

  **b.**  **Context makes clear that the FTC's rulemaking authority under Section 6(g) is not substantive, but rather a "housekeeping statute."**

Notwithstanding the FTC's wishful interpretation of its authority under Section 6(g), "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989). Furthermore, "[w]here the statute at issue is one that confers authority upon an administrative agency, that inquiry must be 'shaped, at least in some measure, by'…whether Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).

The perfunctory grant of rulemaking authority found in Section 6(g), read in context with the entirety of Section 6, which otherwise confers authority deliberately and explicitly, leads one to the inescapable conclusion that such rulemaking authority could not possibly be the sweeping and all-encompassing substantive rulemaking power the FTC claims. Rather, the authority is more properly understood as a "'housekeeping statute,' authorizing what the [Administrative Procedures Act] terms 'rules of agency organization, procedure or practice' as opposed to 'substantive rules.'" *See Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979).

Thus, holding no authority to promulgate substantive rules relating to unfair methods of competition under Section 6(g), the FTC is once again acting "under the incorrect assumption that it has jurisdiction." S. REP. NO. 96-500, at 14.

10

**II.  Allowing the Non-Compete Rule to take effect would violate the canon of a presumption against federal preemption.**

As a representative for the property casualty insurance industry, APCIA is particularly attuned to the specter of unwarranted federal intrusion into areas already well regulated by the States. As discussed *supra*, Congress has spoken repeatedly and clearly about the primacy of state regulation of the business of insurance under the McCarran-Ferguson Act and has invalidated previous efforts by the FTC to circumvent what is a clear statutory limitation on their jurisdiction.

Although there is no explicit statutory exemption for the regulation of non-compete agreements similar to the McCarran-Ferguson Act's exemption for the business of insurance, it is nevertheless a space that states have already long occupied. *See, e.g.*, TEX. BUS. & COM. CODE ANN. §15.50. Were the Non-Compete Clause Rule to take effect, it would result in the preemption of numerous state statutes – invalidating the work of elected state legislators nationwide.

Section 6(g) simply cannot be read to grant authority this broad to the FTC. Courts must "construe these provisions in light of the presumption against the pre-emption of state police power regulations." *Cipollone v. Liggett Group*, 505 U.S. 504, 518 (1992); *see also* Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 290 (2012) (discussing the canon of presumption against federal preemption, "a federal statute is presumed to supplement rather than

displace state law"). Since the states have long regulated the use of non-compete agreements while federal law has been silent, a court simply cannot interpret Section 6(g) in such a way as to preempt state law altogether.

## CONCLUSION

The FTC's promulgation of the Non-Compete Rule is an effort to expand the agency's reach rather than an exercise of properly construed existing statutory authority. The text of the FTC Act, taken as a whole and together with its legislative history, demonstrates that the Commission has no authority under Section 6(g) to promulgate substantive rules concerning unfair methods of competition. To interpret otherwise would run counter to Congress' clear intention to be deliberate when granting authority to the FTC, and it would also run counter to the well-established presumption against state law preemption canon. For these reasons we respectfully urge the Court to grant Plaintiff's and Plaintiff-Intervenors' motions for summary judgment.

Dated July 26, 2024

Darrell Calvin
Texas State Bar No. 24012372
MARTIN, DISIERE, JEFFERSON
   & WISDOM, LLP
9111 Cyprus Waters Blvd, Suite 250
Dallas, TX 75019
(214) 420-5536
(214) 420-5501 (*fax*)
calvin@mdjwlaw.com

Respectfully submitted,

*/s/ Paul A. Howard, II*
Paul A. Howard, II
(*pro hac vice* pending)
D.C. Bar No. 988991
HOWARD LAW & POLICY GROUP PLLC
1701 K Street NW, Suite 225
Washington, DC 20006
(202) 939-1588
paul.howard@howardlpg.com

*Counsel for* Amicus Curiae

13

## CERTIFICATE OF WORD COUNT

This document complies with the Court's word count requirement because it includes 2614 words.

Dated:  July 26, 2024                                    Respectfully submitted,

*/s/ Paul A. Howard, II*

Darrell Calvin                                           Paul A. Howard, II
Texas State Bar No. 24012372                             (*pro hac vice* pending)
MARTIN, DISIERE, JEFFERSON                               D.C. Bar No. 988991
    & WISDOM, LLP                                        HOWARD LAW & POLICY GROUP PLLC
9111 Cyprus Waters Blvd, Suite 250                       1701 K Street NW, Suite 225
Dallas, TX 75019                                         Washington, DC 20006
(214) 420-5536                                           (202) 939-1588
(214) 420-5501 (*fax*)                                   paul.howard@howardlpg.com
calvin@mdjwlaw.com

*Counsel for* Amicus Curiae

14

## CERTIFICATE OF SERVICE

I hereby certify that, on July 26, 2024, I electronically filed this document using the ECF system, which will send notification to the ECF counsel of record.

Dated:  July 26, 2024

Darrell Calvin
Texas State Bar No. 24012372
MARTIN, DISIERE, JEFFERSON
   & WISDOM, LLP
9111 Cyprus Waters Blvd, Suite 250
Dallas, TX 75019
(214) 420-5536
(214) 420-5501 (*fax*)
calvin@mdjwlaw.com

Respectfully submitted,

*/s/ Paul A. Howard, II*
Paul A. Howard, II
(*pro hac vice* pending)
D.C. Bar No. 988991
HOWARD LAW & POLICY GROUP PLLC
1701 K Street NW, Suite 225
Washington, DC 20006
(202) 939-1588
paul.howard@howardlpg.com

*Counsel for* Amicus Curiae

15