UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RYAN, LLC,<br><br>Plaintiff,<br><br>CHAMBER OF COMMERCE OF<br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>Defendant. | Case No.: 3:24-CV-986-E |

**AMICUS CURIAE NYU LANGONE HEALTH'S
BRIEF SUPPORTING FTC'S MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO THE PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT**

Amicus curiae NYU Langone Health is one of the nation's premier academic medical centers which is comprised of the NYU Langone Health System, NYU Langone Hospitals, the NYU Grossman School of Medicine, and the NYU Long Island School of Medicine. The core of NYU Langone Health's success is its

devotion to excellence in patient-centered care. Because non-compete post-employment clauses in doctor agreements are harmful for patients, NYU Langone Health supports the rule adopted by the Federal Trade Commission banning non-compete clauses in employment agreements (the "FTC Non-Compete Clause Rule"). Thus, NYU Langone Health also supports the Federal Trade Commission's Motion for Summary Judgment (Dkt. 184) and the position of the Federal Trade Commission opposing Plaintiff Ryan, LLC's Motion for Summary Judgment (Dkt. 166) and Plaintiff-Intervenors' Motion for Summary Judgment (Dkt. 168) (Plaintiff and Plaintiff-Intervenors are referred to together herein as "Plaintiffs").

On July 29, 2024, the American Hospital Association filed an amicus brief with this Court which opposes the FTC Non-Compete Clause Rule. Dkt. 183. NYU Langone Hospitals is a long-standing member of the AHA. NYU Langone Health does not agree with the position advanced by the AHA in its amicus brief, particularly AHA's argument that the AHA, its "members, and the healthcare ecosystem would be adversely impacted if the [FTC] rule prohibiting non-compete clauses . . . goes into effect." *Id.* at 2. NYU Langone Health is thus compelled to make its support of the FTC Non-Compete Clause Rule, and the reasons for its support, part of the record in this proceeding.

NYU Langone Health's support of the FTC Non-Compete Clause Rule pre-dates this lawsuit. In response to the FTC's Notice of Proposed Rulemaking Regarding the Non-Compete Clause Rule, dated January 19, 2023, NYU Langone Health commented in support of the proposed rule. Specifically, on March 30, 2023, Robert I. Grossman, M.D., Dean and Chief Executive Officer of NYU Langone Health, submitted a letter stating the reasons why post-employment clauses should be prohibited in employment agreements with doctors. A copy of Dr. Grossman's letter is attached as Exhibit A. As stated by Dr. Grossman, "[t]he overriding reason to ban non-compete post-employment clauses in doctor agreements is the harm they can deliver to patients." *See* Exhibit A at 1 [APP-002].

Specifically, Dr. Grossman explained that non-compete post-employment clauses significantly impact: (1) the patient-doctor relationship; (2) patient access; and (3) patient choice. *Id.* For example, forcing doctors to relocate significant distances may sever long-standing patient-doctor relationships, exacerbate shortages in certain specialties, and impede patient access to doctors. *See id.* at 1–2 [APP-002-003]. A patient's preferred physician also may become out-of-network if relocation forces them off the patient's health insurance or health plan network. *See id.* at 2 [APP-003]. Non-compete post-employment clauses also unfairly constrain

physicians and are anti-competitive. *See id*. NYU Langone Health's support of the FTC Non-Compete Clause Rule remains the same today.

NYU Langone Health respectfully urges the Court to grant FTC's Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.

Dated:       August 7, 2024

                                      Respectfully submitted,

                                      */s/ Meagan Martin Powers*
                                      Meagan Martin Powers
                                      State Bar No. 24050997
                                      **MARTIN POWERS & COUNSEL, PLLC**
                                      1431 Greenway Drive, Suite 950
                                      Irving, Texas 75038
                                      Telephone: (214) 612-6474
                                      Direct Line: (214) 612-6471
                                      Facsimile: (214) 247-1155
                                      meagan@martinpowers.com


                                      Jodyann Galvin (admitted *pro hac vice*)
                                      New York Registration No. 294812
                                      **HODGSON RUSS LLP**
                                      The Guaranty Building
                                      140 Pearl Street
                                      Buffalo, New York 14202
                                      Telephone: (716) 848-1520
                                      Facsimile: (716) 819-4671
                                      JGalvin@hodgsonruss.com

                                      **ATTORNEYS FOR NYU LANGONE HEALTH**

## CERTIFICATE OF COMPLIANCE

This document complies with Judge Brown's Motion Practice procedures II.A because it contains 726 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 7, 2024.

*/s/ Meagan Martin Powers*
Meagan Martin Powers

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing document was electronically filed in this matter with the Clerk of the Court, using the ECF system, which sent notification of such filing to all counsel of record.

Dated August 7, 2024.

*/s/ Meagan Martin Powers*
Meagan Martin Powers

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RYAN, LLC,<br><br>　　　　　　　Plaintiff,<br><br>CHAMBER OF COMMERCE OF<br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　Plaintiff-Intervenors,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>　　　　　　　Defendant. | Case No.: 3:24-CV-986-E |

## APPENDIX TO AMICUS CURIAE NYU LANGONE HEALTH'S BRIEF IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

| EXHIBIT | DESCRIPTION | PAGE RANGE |
|---|---|---|
| A | Letter dated March 30, 2023 by Robert I. Grossman, M.D., Dean and Chief Executive Officer of NYU Langone Health | APP-002 – APP-010 |



Robert I. Grossman, MD
Dean and Chief Executive Officer

March 20, 2023

The Honorable Lina Khan
Chair
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

**SUBJECT:** COMMENTS IN SUPPORT OF NON–COMPETE POST−EMPLOYMENT CLAUSES (MATTER N⁰ P201200)

Dear Chair Khan:

On behalf of NYU Langone Health, I am submitting comments in support of the Federal Trade Commission's (FTC) Non-Compete Clause Rule, and specifically addressing why non-compete post-employment clauses should be prohibited in employment agreements with doctors.

The core of NYU Langone's success as the #1 ranked hospital system in New York[1] is our integrated culture devoted to excellence in patient-centered care. It is our belief that non-compete post-employment clauses in doctor employment agreements are anathema to excellence in patient-centered care. We fully support the efforts to ban non-compete clauses in employment agreements. We disagree with the American Hospital Association, American Medical Association, Federation of American Hospitals and the U.S. Chamber of Commerce. We applaud the states of California, Delaware, Massachusetts, New Hampshire and Rhode Island that have banned non-compete clauses in doctor contracts. We have encouraged New York State to follow their example. We're encouraged by the bi-partisan legislation introduced last month by Senators Murphy (D-CT) and Young (R-IN) that would nationally ban non-compete clauses in employment agreements.

The overriding reason to ban non-compete post-employment clauses in doctor agreements is the harm they can deliver to patients.

### NON-COMPETE POST-EMPLOYMENT CLAUSES SHOULD BE PROHIBITED IN MEDICAL PHYSICIAN EMPLOYMENT AGREEMENTS

Non-compete post-employment clauses impede patient access to doctors, limit a physicians' ability to choose their employer and intentionally restrict physician mobility. Such restrictions are a challenge for the doctor and they are harmful for the patients. Non-compete clauses have significant deleterious impacts on:

- Patient−Doctor Relationship,
- Patient Access, and
- Patient Choice

The enforcement of a non-compete post-employment clause could, for example, negatively impact a long-standing Patient−Doctor relationship, particularly in cases where the physician has been regularly and actively involved in helping the patient manage an ongoing medical condition. If a non-compete post-employment clause requires the doctor to relocate a significant required distance

---

[1] https://health.usnews.com/best-hospitals/area/new-york-ny

APP-002

NYU Langone Health | 550 First Avenue, HCC-15, New York, NY 10016 | T 212.263.3269 | F 212.263.1828 | Robert.Grossman@NYULangone.org


to continue practicing their specialty, the patient may not be able to continue to see the doctor and the relationship is severed.

Enforcement of a non-compete post-employment clause could also have negative consequences on patient care outside of a long-term Patient−Doctor relationship. Depending on the medical condition and the rarity of the disorder, there may only be a few medical professionals with the expertise to properly care for the patient. Even in the New York metropolitan area, with the depth and breadth of its medical community, there can exist shortages in certain specialties available to serve the needs of the patient population. Requiring a doctor to exit the area, even if it leaves several remaining physicians practicing locally, reduces the number of available specialists which will absolutely hinder patient access by increasing wait times - - that, of course, assumes the remaining doctors have the capacity to take on new patients.

Implementation of a non-compete post-employment clause may also detrimentally impact a patient's choice of physician. If a patient's preferred physician relocates to an area that remains geographically accessible to the patient, but due to network considerations, e.g., the relocation forces the doctor off of the patient's health insurance or health plan network, the financial burden may compel the patient to select another, in-network doctor.

Finally, non-compete post-employment clauses unfairly constrain physicians, creating an intolerably high barrier to leaving a situation that may have become not only disadvantageous, but possibly toxic, for the physician. The doctor, who cannot leave their employer, has no bargaining leverage to improve their own situation or the quality of care for their patients. If the physician, for example, needs the latest endoscope, interoperative MRI, or other specialty needs, and the hospital refuses to provide the equipment, the physician and the patients are put at a significant disadvantage, because the non-compete clause completely prevents curing the disadvantage. It is in the physician's and the healthcare public's interest that skilled doctors be able to effectuate change without having to leave their community, or sit out from their professional practice, for one or more years.

**NYU LANGONE FINDS NON-COMPETE POST-EMPLOYMENT CLAUSES TO BE ANTI-COMPETITIVE**

NYU Langone has more than 350 medical office practice locations in the New York metropolitan area that employ approximately 3,450 medical physicians (collectively the "Faculty Group Practice" or "FGP"). The FGP had in excess of 10 million outpatient visits and revenue in excess of $2.4 billion in 2022. The use of fair compensation, appropriate benefits, a culture of quality and safety, and *esprit de corps* are the motivating factors for group's success.

Due to NYU Langone's reputation, award-winning quality, commitment to excellence and patient-centered culture, many physicians from other health care institutions desire to work here, only to find out that they are subject to severe non-compete post-employment clauses in their employment agreements. [Examples of such clauses are included as Appendix 1]

NYU Langone finds non-compete post-employment clauses which block an employee from working for their preferred employer once their employment is terminated to be anti-competitive. In fact, such clauses represent unfair methods of competition and, as you know, Section 5 of the FTC Act states that "unfair methods of competition" are unlawful, and Section 6 of the Act instructs the Commission to make rules and regulations that prohibit such unfair methods. NYU Langone encourages the promulgation of such rules and regulations.


For the record, all of the physicians in the NYU Langone FGP have employment agreements, and during the life of the agreement, the physicians are restricted to working exclusively at NYU Langone. All of our employment agreements are for a stated and reasonable period of time. The restriction does not continue past the date of stated employment. Once an agreement reaches its stated end date, employment either (a) continues through a new or amended agreement, or (b) is concluded. Under no circumstances, does NYU Langone bind the doctor with any post-employment restrictions that prohibit the doctor from working anywhere.

**FALSE PREMISE OF EMPLOYERS' REASONS FOR NON-COMPETE POST-EMPLOYMENT CLAUSES**

Many academic medical centers and large hospital networks in the New York metropolitan area subject their physicians to onerous non-compete post-employment clauses. They maintain that the restrictive clause is necessary because they have provided the physician with proprietary information, training, and patient contacts. This argument is totally meritless. All of the concerns could be mitigated, and probably eradicated, with the inclusion of a highly enforceable non-disclosure agreement and a patient non-solicitation clause in the employment agreement. The non-compete post-employment clauses are punitive and totally unnecessary.

Some New York area academic medical centers argue that hired doctors represent an *"investment"*. They purchase equipment, hire staff and maintain infrastructure to support the practice of the physician and, therefore, need to protect their investment. They argue that if the doctor leaves their network for a neighboring competitor, that they will be disadvantaged and it will lead to a loss of revenue. Yes, that is the nature of competition in a capitalistic society, and a perfect example of why non-compete post-employment clauses need to be eradicated. It's unfortunate that these competitors are misguided with their focus on doctor-based return-on-investment rather than patient-centered care.

**AMERICAN MEDICAL ASSOCIATION VS AMERICAN BAR ASSOCIATION REGARDING NON-COMPETE POST-EMPLOYMENT CLAUSES**

The American Medical Association ("AMA") has taken multiple and inconsistent positions on non-compete post-employment clauses. AMA's Council on Ethical and Judicial Affairs, Ethical Opinion 11.2.3.1. states:

> Competition among physicians is ethically justifiable when it is based on such factors as quality of services, skill, experience, conveniences offered to patients, fees, or credit terms.
>
> Covenants-not-to-compete restrict competition, can disrupt continuity of care, and may limit access to care.
>
> Physicians should not enter into covenants that:
>
> (a) Unreasonably restrict the right of a physician to practice medicine for a specified period of time or in a specified geographic area on termination of a contractual relationship; and
>
> (b) Do not make reasonable accommodation for patients' choice of physician. Physicians in training should not be asked to sign covenants not to compete as a condition of entry into any residency or fellowship program.

The AMA believes, however that non-compete post-employment clauses are allowable so long as the agreements protect a legitimate business interest of the employer, and are reasonable with respect to duration and geography.



The Honorable Lina Khan
March 20, 2023
Page 4

NYU Langone agrees with the words and spirit of Ethical Opinion 11.2.3.1, but disagrees with the AMA's business interest argument that non-compete post-employment clauses are permissible.

As a juxtaposition to the AMA, the American Bar Association ("ABA") does not equivocate one iota in its position on non-compete post-employment clauses for lawyers. Attorneys are ethically barred from signing non-compete agreements. *Rule 5.6 - ABA, Rules of Professional Conduct, Restrictions of Rights to Practice* states that an attorney shall not enter into an agreement *"that restricts the right of a lawyer to practice after the termination of a relationship."* This ABA ethics rule has been ratified by all state bars and is uniformly followed throughout the United States.

The contrast between the legal profession and the medical professional is unexpected. The legal association is protecting the rights of the lawyers' clients; the medical association **IS NOT** protecting the needs of the doctors' patients. **Conventional wisdom is upended when lawyers are more empathetic than doctors.**

---

We encourage the FTC to move forward with its Non-Compete Clause Rule. We recognize that some hold that the FTC is potentially regulating beyond its Congressionally-mandated authority, as well as not having oversight over not-for-profit hospitals. We don't find these arguments germane. Setting the principle that non-compete clauses are harmful is the correct course of action and we ask the FTC to move expeditiously. NYU Langone will continue to endeavor to seek legislative relief regarding the banning of non-compete clauses with the State Legislature in Albany, and with the Congress of the United States.

Thank you for this opportunity to submit our comments.

Sincerely,

*[signature]*

Robert I. Grossman, M.D.
Dean and Chief Executive Officer



# APPENDIX 1
# Examples of Actual Non-Compete Post-Employment Clauses

As part of our submission to the FTC, we are including excerpts from two actual employment agreements from physicians who worked at other academic medical centers who were interested in working at NYU Langone, but were unaware that their employment agreements included non-compete post-employment clause.

Example #1 below is straightforward and it prohibits the physician from practicing for one-year and cites specific institutions where the physician is prohibited from working. The mere fact that the non-compete post-employment clause cites specific health care institutions and not all health care institutions is a clear indication that the employer's intent of including the clause was *de facto* anti-competitive against the cited institutions.

**EXAMPLE #1**

> By accepting this offer, you hereby covenant and agree that, during the term of this Agreement and until the date that is one (1) year following the cessation of your employment for any reason, you shall not, without the prior written approval of the Senior Vice President of Ambulatory Services, manage, operate, control or engage in the operation of, consult with or for, be employed by or otherwise provide services to or participate in any manner at NYU Langone Medical Center, Mount Sinai Health System, ProHealth Care Associates, LLP, New York Presbyterian Hospital or any of the foregoing entities' subsidiaries, successors or affiliates. The agent, principal, shareholder, partner or representative of, or the holder of an ownership interest in, any person, partnership, firm, corporation or other entity. Notwithstanding anything to the contrary, the provisions of this paragraph shall be waived and shall not be applicable to you if, after the Initial Term, Hospital does not renew this Agreement or offers to renew this Agreement on terms which are materially different than those set forth in this Agreement and such terms are unacceptable to you.

Example #2 on the following page may be the single worst form of a non-compete post-employment clause that NYU Langone has encountered. These are the facts: an ophthalmological surgeon employed by another academic medical center in New York City approached NYU Langone with an interest in joining our faculty medical staff. The surgeon said he had an employment agreement, but said he did not think he had a problem "getting out" of the agreement and working elsewhere. Upon review of his employment agreement, it was quickly determined that he had a significant non-compete post-employment clause. Section 10(b) of the clause has a two-year geographic restriction that stretches far beyond the New York metropolitan area. In addition to the entire City of New York, the restriction includes Nassau, Suffolk, Westchester and Rockland Counties in New York State and Bergen and Hudson Counties in New Jersey. Section 10(e) includes a financial penalty in the event that the restricted covenant is legally challenged and held to be invalid, illegal or unenforceable. In such case, the employee is required to pay the employer liquidated damages of $500 per day for each day the covenant was violated. Section 10(f) mandates that the employer is entitled to recover from the employee any and all attorney's fees and other costs of litigation.



The Honorable Lina Khan
March 20, 2023
Page 6

**EXAMPLE 2**

10. Restrictive Covenant:

(a)  In the course of your employment with the University, you will be introduced to the University's referring physicians and patients as well as hospital personnel, other health care providers and the like.  You will also be given the opportunity to become a participating provider in various health maintenance organizations and managed care plans with which the University's physicians have existing contractual relationships.  Termination of your employment for any reason or in any manner after at least two (2) years of employment with the University, followed by your continuing to practice ophthalmology in the same geographic area as the University, would thereby enable you to take many of those sources of the University with you to the detriment of the University.

(b)  In light of the foregoing, except with written permission from the Chair and the Dean, you covenant and agree that in the event your employment with the University terminates for any reason you shall not, for a period of two (2) years thereafter, except with the written consent of the University, either directly or indirectly, within Westchester, Rockland, Nassau, and Suffolk counties, and the five counties that make up the City of New York, and Bergen and Hudson County New Jersey; (i) engage in the practice of Ophthalmology as an employee, independent contractor, shareholder, partner or otherwise and whether as a separate specialty or in conjunction with any other practice of medicine; or (ii) operate or have any financial or other interest in any medical practice involved in the practice of Ophthalmology`.

(c)  In the event of a breach or an alleged breach by you of the provisions of this Section 10, you agree to refrain from violating the restrictive covenant set forth above during any judicial proceeding until such matter is conclusively settled on it merits pursuant to such proceeding.  In connection therewith, you agree that the University shall be entitled to an injunction restraining you from violating the terms of the restrictive covenant set forth here in (without the necessity of securing a bond) and any other legal or equitable remedies available for such a breach or threatened breach.

(d)  If you violate this restrictive covenant and the University brings legal action for injunction or other relief, the University shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of the restrictive covenant.  Accordingly, the restrictive covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted by reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by you.

(e)  If any restriction contained in this Section 10 shall be deemed to be invalid, illegal or unenforceable by reason of the extend, duration or geographical scope thereof, or other otherwise, the court making such determination may reduce such extend, duration, geographical scope, other provisions hereof, and in its reduced form, such restriction shall then be enforceable in the manner contemplated hereby.  In addition, the University shall be entitled to liquidated damages in the amount of Five Hundred ($500) Dollars for each day that you are determined to have violated the foregoing restrictive covenant.  This sum shall be considered as liquidated damages and not as a penalty and is agreed to by the parties inasmuch as there is no other precise method of determining the University's damages in the event of your violation of the restrictive covenant.

(f)  It is hereby further agreed that, in the event of any litigation at law or in equity with respect to any breach of the restrictive covenant, the University shall be entitled to recover any and all reasonable attorney's fees and other costs of litigation, even after the termination of this agreement.

(g)  The existence of any claims or causes of action by you against the University whether predicated upon this agreement or otherwise, shall not: constitute a defense to the enforcement by the University of the foregoing restrictive covenant.

(h)  The parties acknowledge that the provisions of this Section 10 are necessary and reasonable in order to protect the University in the conduct of its business, particularly in light of the difficulty in ascertaining damages in the event of a breach.


# APPENDIX 2
# NYU Langone — Who We Are

NYU Langone Health is one of the nation's premier academic medical centers. Our trifold mission to serve, teach, and discover is achieved daily through an integrated academic culture devoted to excellence in patient care, education, and biomedical research. NYU Langone Health is the name of the combined operations of NYU Langone Hospitals and the two medical schools operated by New York University ("NYU") - the **NYU Grossman School of Medicine** ("NYUGSOM") and the **NYU Long Island School of Medicine** ("NYULISOM"), collectively the NYU "Schools of Medicine".

NYU Langone Hospitals is a quaternary care teaching hospital that operates five inpatient acute care facilities and over 40 ambulatory facilities in Manhattan, Brooklyn, and Long Island. The Manhattan 813-bed inpatient facilities are comprised of the **Kimmel Pavilion** (which also houses the **Hassenfeld Children's Hospital**) and **Tisch Hospital**. **NYU Langone Orthopedic Hospital**, also located in Manhattan, is a 225-bed facility specializing in orthopedic, neurologic, and rheumatologic services. **NYU Langone Hospital-Brooklyn** is a 444-bed facility in the Sunset Park section of Brooklyn. **NYU Langone Hospital-Long Island** is a 591-bed facility located in Mineola, New York. NYU Langone Hospitals also owns CCC550 Insurance, SCC, which provides professional liability insurance to NYU Langone Hospitals, physicians employed by NYUGSOM, and other non-employed physicians.

As noted above, NYU Langone Hospitals is integrated with two accredited Schools of Medicine, NYUGSOM, which ranked number 2 in the nation for research on the 2023 U.S. News & World Report "Best Graduate Schools" rankings, and NYULISOM, which is focused on education and training physicians and academic leaders in primary care medicine. Both of these Schools of Medicine operate as unincorporated divisions of NYU. NYUGSOM, employs approximately 3,450 faculty physicians who form the division known as the Faculty Group Practice ("FGP"). FGP physicians deliver patient care at more than 350 practice locations in the New York metropolitan area and two practice locations in Delray Beach and West Palm Beach, Florida. These physicians constitute the principal clinical service providers for NYU Langone Hospitals' facilities and are connected by NYU Langone Hospitals' enterprise-wide electronic medical record system, Epic.

On March 1, 2022, pursuant to the terms of an Affiliation Agreement, NYULH System became the sole corporate member of each of Long Island Community Hospital at NYU Langone Health, an acute care hospital licensed to operate 306 beds located in Suffolk County.

**Recognition for Quality and Excellence**
Management believes that patient-centered, quality care differentiates NYU Langone Health in the marketplace with patients, payors, and employers. NYU Langone Health has



made substantial investments to ensure full clinical integration across all sites of service and to provide one standard for quality in clinical care with one integrated medical record, made possible by the enterprise-wide Epic system.

Awards and recognition NYU Langone Hospitals has received for the quality of its patient care are as follows:

- NYU Langone Hospitals ranked No. 3 nationally on the 2022-23 U.S. News and World Report Honor Roll, moving up several spots from its No. 8 ranking in 2021. In addition, it now ranks No. 1 in New York.

- NYU Langone Hospitals has 14 specialties nationally ranked in the top 20 rankings by U.S. News and World Report in 2022-23, 11 of them being in the top 10. Of note, NYU Langone Hospitals ranked No. 1 for Neurology and Neurosurgery in the U.S.

- Hassenfeld Children's Hospital tied overall for No. 3 in New York City and No. 9 in the Mid-Atlantic Region on the 2022-23 U.S. News and World Report "Best Children's Hospitals" survey.

- NYU Langone Hospitals achieved a five-star rating on the Centers for Medicare and Medicaid Services (CMS) Hospital Compare for 2022, a rating received by only 13.9% of evaluated hospitals. NYU Langone Hospitals is one of only eight five-star hospitals in New York State.

- NYU Langone, for the past nine years, has received top rankings for overall patient safety and quality of care from Vizient, Inc. In 2022, NYU Langone was recognized as the top performer in the Bernard A. Birnbaum, MD, Quality Leadership Annual Ranking for demonstrating high quality and safety performance.

- NYU Langone's faculty group practice network has been ranked the highest performer for the last eight years among participating medical centers nationwide by Vizient. In 2022, NYU Langone ambulatory care practices ranked No. 1 in Vizient's Ambulatory Care Quality and Accountability Ranking for demonstrating excellence in delivering high-quality outpatient care.

- NYU Langone Hospitals' nurses are recognized for excellence in the care they provide, with every inpatient location in the system receiving Magnet status by the American Nurses Credentialing Center. Most recently, NYU Langone Hospital—Brooklyn became the only hospital in Brooklyn with Magnet recognition. Magnet designation is an honor achieved by only 9.4% of hospitals in the country. This achievement comes after NYU Langone Hospital—Long Island and NYU Langone Orthopedic Hospital were re-designated as Magnet sites in June 2021 and June 2022, respectively.



- NYU Langone Hospitals, which includes its Manhattan Tisch/Kimmel Hospital, NYU Brooklyn and NYU Long Island hospitals, were each awarded an 'A' in the fall 2022 Leapfrog Hospital Safety Grade, a national distinction recognizing NYU Langone Hospitals' achievement in providing the highest level of patient care across the health system and an honor attained by only 29% of hospitals across the country. NYU Langone Hospitals was recognized as the #1 hospital in New York State in Critical Care, Pulmonary Care, and Stroke Care, and #5 in Coronary Intervention in the Healthgrades 2022 State Ranking Awards.

- NYU Langone Hospitals was re-accredited with the Gold Seal of Approval® by the Joint Commission in 2021, the first re-accreditation since NYU Long Island joined the institution.

- NYU Langone Hospitals' Transplant Institute was rated the top lung and heart transplant center in New York State, according to data published by the Scientific Registry of Transplant Recipients (SRTR) in 2022. NYU Langone Hospitals has the highest one-year kidney survival rate in the nation and transplants more kidneys than any other center in New York State.

- NYU Langone Hospitals' Pediatric Congenital Heart Program was recognized by the New York State Department of Health in May 2021 for having the best risk-adjusted survival rate of any hospital in New York State.

- For 10 years in a row, NYU Langone Health has been designated an LGBTQ+ Healthcare Equality Leader by earning a perfect score on the Human Rights Campaign Foundation's Healthcare Equality Index, in recognition of its commitment to providing high-quality, individualized care for all patients.

- NYU Long Island's Medical Intensive Care Unit has received a gold-level Beacon Award for Excellence by the American Association for Critical-Care Nurses— one of just 15 critical care units in New York State to receive a gold-level designation.

- NYU Langone Health is certified as an integrated Comprehensive Stroke Center by The Joint Commission, including NYU Langone's Tisch Hospital, NYU Langone Hospital—Brooklyn, and NYU Langone Hospital—Long Island. The certification acknowledges the highest level of commitment at every level of the institution to deliver timely, lifesaving care to people experiencing a stroke.