UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RYAN LLC, | No. 3:24-v-00986-E |
| Plaintiff, | |
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, BUSINESS ROUNDTABLE, TEXAS ASSOCIATION OF BUSINESS, and LONGVIEW CHAMBER OF COMMERCE, | |
| Plaintiff-Intervenors, | |
| v. | |
| FEDERAL TRADE COMMISSION, | |
| Defendant. | |

**BRIEF OF *AMICUS CURIAE* OF THE SOCIETY FOR HUMAN RESOURCE MANAGEMENT IN SUPPORT OF PLAINTIFF-INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

_/s/ Tricia W. Macaluso_
Tricia W. Macaluso
Texas State Bar No. 24013773
Seyfarth Shaw LLP
2323 Ross Avenue, Suite 1660
Dallas, TX 75201
(469) 608-6700
tmacaluso@seyfarth.com

Jesse M. Coleman
Texas State Bar. No. 24072044
Eron F. Reid
Texas State Bar No. 24100320
Seyfarth Shaw LLP
700 Milam Street, Suite 1400
Houston, TX 77002
(713) 225-2300
jmcoleman@seyfarth.com
ereid@seyfarth.com

Michael D. Wexler
Marcus L. Mintz
(_pro hac vice previously granted_)
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 460-5000
mwexler@seyfarth.com
mmintz@seyfarth.com

Counsel for _Amicus Curiae_

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ............................................................................................9

I.   Vacatur is the Only Appropriate Remedy if the Court Finds The Non-Compete Rule Unlawful. ...............................................................10

II.  Any Lesser Relief than Vacatur is Inappropriate Because Vacating the Rule does not Create a Regulatory Gap. .......................................13

III. Vacatur is Appropriate Because the Rule is not Severable. ...........16

IV.  Equity Favors Nationwide Relief. ................................................19

CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Brock.*
  480 U.S. 678 (1987)..................................................................................18

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*,
  988 F.2d 146 (D.C. Cir. 1993)...............................................................14, 16

*ATS Tree Services, LLC v. FTC*,
  2:24-cv-01743-KBH, 2024 WL 3511630 (E.D. Pa. July 23, 2024)..................13

*Bowen v. Georgetown University Hospital*,
  488 U.S. 204 (1988)..................................................................................17

*Braidwood Mgmt., Inc. v. Becerra*,
  104 F.4th 930 (5th Cir. 2024) .....................................................................20

*Career Colls. & Schs. Of Tex. v. U.S. Dep't of Ed.*,
  98 F.4th 220 (5th Cir. 2024) ................................................................12, 20

*Central and South West Servs., Inc. v. EPA*,
  220 F.3d 683 (5th Cir. 2000) ......................................................................16

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) .......................................................................20

*Data Mktg. P'ship, LP v. United States Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022) .......................................................................12

*Davis Cnty. Solid Waste Mgmt. v. EPA*,
  108 F.3d 1454 (D.C. Cir. 1997).................................................................18

*Exec. Benefits Ins. Agency v. Arkison*,
  134 S. Ct. 2165 (2014)..............................................................................18

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) ...................................................................12, 14

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010)...................................................................................18

*Gerber v. Norton*,
294 F.3d 173 (D.C.Cir.2002) ................................................................ 16

*K-Mart Corp. v. Cartier*,
486 U.S. 281 (1988) ............................................................................... 18

*Loper Bright Enters. V. Raimondo*,
144 S. Ct 2244 (2024) ........................................................................... 18

*Marsh USA Inc. v. Cook*,
354 S.W.3d 764 (Tex. 2011) ................................................................. 17

*MD/DC/DE Broadcasters Ass'n v. FCC*,
253 F.3d 732 (D.C. Cir. 2001) .............................................................. 19

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) (Sentelle, J., dissenting) ..................... 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ..................... 20

*New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453, 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018) (Thomas, J., concurring) .................................................................................... 19

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
603 F. Supp. 2d 715 (S.D.N.Y. 2009), *aff'd* 612 F.3d 97 (2d Cir. 2010) ..................................................................................................... 19

*Perez v. Mortgage Bankers Ass'n*,
575 U.S. 92, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (2015) ................... 15

*Properties of the Villages, Inc. v. FTC*,
5:24-cv-00316-TJC-PRL (M.D. Fla. 2024) ........................................ 13

*Tex. v. United States*,
945 F.3d 355 (5th Cir. 2019) ............................................................... 19

*Texas v. Biden*,
20 F.4th 928 (2021) (*rev'd on other grounds*) .................................... 12

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019) ..........................................................................15

**Statutes**

16 C.F.R. Part 910 ...........................................................................................*passim*

16 C.F.R. Part 912 ...........................................................................................*passim*

5 U.S.C. § 706 ......................................................................................11, 12, 20

5 U.S.C. § 706(2) ....................................................................................10, 20

5 U.S.C. § 706(2)(A) ..........................................................................11, 14, 20

5 U.S.C. § 706(2)(C) ................................................................................11, 14

Administrative Procedure Act ..........................................................................*passim*

FTC Act .................................................................................................10, 11, 19

FTC Act § 6 .........................................................................................................9

**Other Authorities**

Brian S. Pestes, *Remanding Without Vacating Agency Action,* 32
    Seton Hall L. Rev. 108, 110 (2001) ................................................................15

Comment Letter, FTC-2023-0007-20903 ..............................................................10

Geo. Wash. L. Rev. 1121, 1173 (2020) ...............................................................11

Kristina Daugirdas, *Evaluating Remand Without Vacatur: A New
    Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U.L.
    Rev. 278, 301-05 (2005) ...............................................................................15

Mila Sohoni, *The Power to Vacate A Rule* ...........................................................11

Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117
    Colum. L. Rev. 253, 308 (2017) ....................................................................15

*Non-Compete Clause Rule*, 89 Fed. Reg. 38,342, 38,455 (May 7,
    2024) ...........................................................................................................17

## INTEREST OF THE *AMICUS CURIAE* AND SUMMARY OF ARGUMENT

As the trusted authority on all things work, the Society for Human Resource Management ("SHRM") is the foremost expert, researcher, advocate, and thought leader on issues and innovations impacting today's evolving workplaces. With nearly 340,000 members in 180 countries, SHRM touches the lives of more than 362 million workers and families globally. SHRM's membership of HR professionals and business executives sits at the intersection of all things work, helping to set positive collaboration and workplace cultures where workers and employers thrive together. This includes ensuring that proper protections are in place to safeguard proprietary information and intellectual property. Therefore, on behalf of our members, we respectfully submit this amicus brief for the Court's consideration.

SHRM members invest considerable resources in providing training and educational assistance to their employees as well as effectuating the employee hire and exit process. Reasonable, narrowly tailored non-compete agreements allow employers to make investments in intellectual capital through job-related training, upskilling, providing access to customer relationships, and fostering an environment where knowledge and trade secrets can be shared and developed freely. Allowing parties to negotiate reasonable non-compete agreements encourages and promotes innovation and the development of a well-trained, well-educated workforce to the benefit of businesses and workers alike.

As this Court preliminarily determined, the Federal Trade Commission's blanket ban on non-compete agreements, 16 C.F.R. Parts 910 and 912 (the "Rule") overlooked the benefits of well-structured, targeted non-compete agreements, ignored possible alternatives to such a broad prohibition, and exceeded the narrow rulemaking authority granted by Congress. (Dkt. 153). The FTC's Rule, set to take effect on September 4, 2024, fails to strike an equitable balance between the interests of the employer and the employee and upends the current system and longstanding practice. As a result, employers may be forced to abandon providing employees access to confidential information, as well as valuable training and education programs to the detriment of workers and the American workforce as a whole.

Human Resource professionals like SHRM's members are routinely tasked with administering non-compete agreements through the hiring and exit process and have a unique perspective on the discord that a blanket ban on noncompete agreements will undoubtedly cause. Should the Rule take effect, there will be a significant disruption to SHRM's members and the human resource professionals that manage the recruitment, training, and exit of employees and who rely on certainty during the hiring process.

SHRM agrees with the Plaintiff and Intervenor's Motion that Section 6 of the FTC Act does not authorize substantive rulemaking in the manner undertaken by the agency and that the agency's promulgation of the Rule was arbitrary and capricious.

Consequently, SHRM fully endorses the Plaintiff's and Intervenors' Motions and opposes Defendant's Motion for Summary Judgment. SHRM files this brief to offer the unique perspective of SHRM and its members, whose industries represent a diverse cross-section of the American economy in support of Plaintiff's and Intervenors' Motions. The rulemaking record reflects the testimonies of SHRM members, representing organizations ranging from less than 25 employees to more than 25,000 employees that agree that the Rule will negatively impact their organizations and fails to protect work, workers and the workplace. *See* Society for Human Resource Management (SHRM), Comment Letter, FTC-2023-0007-20903, at 6-8 (Apr. 19, 2023).

SHRM submits this brief noting that section 706(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2), instructs courts reviewing agency actions to vacate regulations that are unlawful providing nationwide, not party-specific relief. Given the nationwide impact that the FTC's Rule will have, vacatur is the only appropriate remedy and provides certainty while this issue is fully judicially decided.

## ARGUMENT

SHRM limits the scope of its brief as the Court has been amply briefed as to why the FTC's decision to ignore credible evidence contrary to its noncompete ban was arbitrary and capricious, and that its Rule was promulgated in excess of its statutory authority under the FTC Act. SHRM's brief presumes that the Court will

9

likely follow its reasoning in its Memorandum and Order granting Plaintiff's and Intervenors' Motion for Stay of Effective Date and Preliminary Injunction (ECF No. 153) and find the FTC's blanket ban on noncompete agreements exceeded the agency's statutory and constitutional limits and rule in favor of Plaintiff and Intervenors on the merits. SHRM's goal in submitting this brief is to show why, in the view of SHRM and its members, nationwide relief from the FTC's overly broad rule is necessary and the Court should exercise the authority granted to it under the Administrative Procedure Act (APA) to vacate the Rule.

## I.     Vacatur is the Only Appropriate Remedy if the Court Finds the Non-Compete Rule Unlawful.

Should the Court again find that the FTC's Non-Compete Rule is an unlawful exercise of the authority granted to it under the FTC Act, the only appropriate remedy is to "set aside" the FTC's unlawful action and vacate the Rule. Section 706 of the APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2)(A),(C). Courts have long relied on the "set aside" authority of the APA to vacate unlawful agency actions. *See* Mila Sohoni, *The Power to Vacate A Rule*, 88 Geo. Wash. L. Rev. 1121, 1173 (2020) ("The term 'set aside' means invalidation—

and an invalid rule may not be applied to anyone.") (collecting cases of universal vacatur).

First, vacatur is the "default" remedy for unlawful agency action in the Fifth Circuit. *Data Mktg. P'ship, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy"); *Texas v. Biden*, 20 F.4th 928, 957 (2021) (*rev'd on other grounds*) ("[B]y default, remand with vacatur is the appropriate remedy."); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."). The existing precedent of the Fifth Circuit Court of Appeals finds that Section 706 "extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to 'set aside'—*i.e.*, formally nullify and revoke— an unlawful agency action." *Data Mktg.*, 45 F.4th at 859 (5th Cir. 2022) (citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018); *Texas v. Biden*, 20 F.4th at 993; *Career Colls. & Schs. Of Tex. v. U.S. Dep't of Ed.*, 98 F.4th 220, 255 (5th Cir. 2024) ("When a reviewing court determines the agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (citing *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). There is no legal or equitable justification to deviate from the standing Fifth Circuit precedent.

Vacatur of the Rule is especially appropriate given the multiple challenges currently pending in different states of adjudication. On July 23, 2024, the United States District Court for the Eastern District of Pennsylvania denied the plaintiff in that case's motion for stay of the Rule's effective date and request for preliminary injunction. *See ATS Tree Services, LLC v. FTC*, 2:24-cv-01743-KBH, 2024 WL 3511630 (E.D. Pa. July 23, 2024). As a result, according to the Eastern District of Pennsylvania, the FTC may move forward with enforcing the Rule.

There is yet a third challenge pending in the United States District Court for the Middle District of Florida that is unlikely to reach a merits determination until after the Rule is set to take effect. *See Properties of the Villages, Inc. v. FTC*, 5:24-cv-00316-TJC-PRL (M.D. Fla. 2024). Currently, the FTC's Rule seems potentially destined for a circuit split, with different rulings imposing inconsistent obligations across jurisdictions. Without nationwide relief, SHRM members will be tasked with implementing potentially disparate hiring plans geographically—including the possible suspension or invalidation of existing noncompete agreement—while the Rule awaits further judicial review. The result of disparate, party-specific relief will leave human resource professionals scrambling to implement a patchwork of potentially inconsistent programs in an effort to adhere to different court rulings. This will negatively impact employment, intellectual capital protection, and

customer relationships with damages that cannot be fully calculated. The APA

plainly provides the appropriate remedy to avoid this tumultuous outcome is vacatur.

## II.   Any Lesser Relief than Vacatur is Inappropriate Because Vacating the Rule does not Create a Regulatory Gap.

Vacatur is equally appropriate for either of the Court's preliminary findings

that the rational basis for the Rule is arbitrary and capricious under Section

706(2)(A), or that the promulgated Rule exceeds the FTC's delegated authority

under Section 706(2)(C). 5 U.S.C. § 706(2)(A), (C). Vacatur is appropriate because,

as the Fifth Circuit explained, it is the ***only*** statutorily prescribed remedy for a

successful APA challenge to a regulation. *Franciscan All., Inc. v. Becerra*, 47 F.4th

368, 374-75 (5th Cir. 2022).

In its consolidated brief, the FTC suggests that the Court should ignore the

default rule of this jurisdiction and consider a more limited remedy than vacatur,

following recent court decisions that have remanded agency rulings back to the

district courts or even back to the agencies to cure procedural defects. (ECF No. 186

at 65-67); *see Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d

146, 150-51 (D.C. Cir. 1993). However, the recent practice by these federal circuits,

beginning with the D.C. Circuit, have been roundly criticized as legally tenuous,

unclear, and run contrary to Fifth Circuit precedent. *Milk Train, Inc. v. Veneman*,

310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J., dissenting) ("[T]he APA states [that

vacatur is required] 'in the clearest possible terms. [The Act] provides that a

13

'reviewing court' faced with an arbitrary and capricious decision '*shall* … hold unlawful and set aside' the agency action.'" (quoting 5 U.S.C. § 706(2)(A) (italics in original)); (quoting *Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., concurring) ("Once a reviewing court determines that the agency has not adequately explained its decision, the [APA] requires the co—t--in the absence of any contrary stat—e--to vacate the age'cy's action."); *see also* Brian S. Prestes, *Remanding Without Vacating Agency Action,* 32 Seton Hall L. Rev. 108, 110 (2001) (concluding that remand without vacatur is unlawful). More recently, the Supreme Court has expressed its disapproval for judicially created remedies which run contrary to the "clear text" of the APA. *See Perez v. Mortgage Bankers 'ss'n*, 575 U.S. 92, 100, 135 S. Ct. 1199, 1206, 191 L. Ed. 2d 186 (2015).[1]

Even still, courts have rarely departed from the default rule of vacatur and only remanded the defective regulation to the agency to correct its defects in limited circumstances. *See United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action . . . In rare cases, however, we do not vacate the action but instead remand for the

---

[1] Commentators have also remarked that agencies have little or no incentive to respond to and order directing remand without vacatur, and agencies may take a decade or more to respond to the inadequacy identified by the reviewing court. Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 308 (2017); *see also* Kristina Daugirdas, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U.L. Rev. 278, 301-05 (2005).

agency to correct its errors."). Those circumstances are not present with the FTC's blanket ban on noncompete agreements.

For instance, remand *may* be appropriate in an arbitrary-and-capricious review if there is a "serious possibility that the agency will be able to substantiate its decision and when vacating would be 'disruptive.'" *Central and South West Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory C'mm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) ("[T]he decision whether to vacate depends on . . . the disruptive consequences of an interim change that itself may be changed."). However, this Court should consider only the rationale offered by the FTC in justification of its blanket noncompete ban. *See Gerber v. Norton,* 294 F.3d 173, 184 (D.C.Cir.2002) ("We do not generally give credent to such post hoc rationalizations, but rather 'consider only the regulatory rationale actually offered by the agency during the development of the regulation.'") (quoting *Grand Canyon Air Tour Coalition v. FAA*, 154 F.3d 455, 469 (D.C. Cir. 1998). This is especially true given the fact that, as the Court notes, the FTC disregarded the substantial body of evidence supporting noncompete agreements and dismissed any possible alternatives in its rulemaking, therefore, any basis offered by the FTC on remand would necessarily be a post hoc rationalization. (ECF No. 153 at 22-23).

Under these circumstances, vacatur would not be disruptive as required to overcome the second *Allied-Signal* requirement, because invalidating the Rule

would not create a regulatory gap. *See, e.g. Bowen v. Georgetown University Hospital,* 488 U.S. 204 (1988). Noncompete agreements have historically been regulated by the states through statutes and the common law for more than a century, and there has never been a comprehensive federal policy governing noncompete agreements. *See, e.g., Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011) ("[R]easonable noncompete clauses in contracts pertaining to employment are not considered to be contrary to public policy as constituting an invalid restraint of trade[.] Texas courts have enforced reasonable covenants not to compete dating back at least to 1899."). Invalidating the Rule pre-enforcement would maintain the longstanding state of the law as it has previously existed and provide certainty during the Rule's judicial journey.

### III. Vacatur is Appropriate Because the Rule is not Severable.

Further, the Rule must be vacated because it is not administratively severable. If this Court finds that any part of the Rule is invalid, the entire Rule must be invalidated. This is because the Rule is not severable, and despite the FTC's assertions in its rulemaking, it is clear that the Rule must stand or fall as a whole. *See Non-Compete Clause Rule*, 89 Fed. Reg. 38,342, 38,455 (May 7, 2024) ("[A]ny smaller reduction in enforceability resulting from circumstances in which a court stays or invalidates some application of the final rule would not impair the function

16

of the remaining parts of the final rule nor would it undermine the justification or necessity for the final rule . . .").

In considering the severability of administrative rules, federal courts have typically repurposed the statutory severability test articulated in *Alaska Airlines, Inc. v. Brock*. 480 U.S. 678 (1987). *See, e.g., Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014); *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010); *K-Mart Corp. v. Cartier*, 486 U.S. 281, 286-93 (1988); *Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1460 (D.C. Cir. 1997). *Alaska Airlines*, and its progeny *K-Mart* and *Davis County*, hold that courts should consider two questions when considering the severability of an invalid agency action: (1) whether severance would "impair the function of the [rule as a whole]" (the "workability question") and (2) whether there is any "indication that the regulation would not have been passed but for [the] inclusion of the [invalid provision]" (the "intent question").[2] *Davis Cnty. Solid Waste Mgmt. v. U.S. E.P.A.*, 108 F.3d 1454, 1460 (D.C. Cir. 1997). Courts are not required to give federal agencies deference to an administrative severability clause, and following the Supreme Court's recent holding in *Loper Bright Enters. V. Raimondo*, 144 S. Ct 2244 (2024), no deference should be given to the Rule's severability clause and this

---

[2] Typically, courts have deferred to an agency's inclusion of a severability clause as indicia supporting the intent question, however, as discussed above, severability analysis should be conducted *de novo*.

Court should perform any severability analysis *de novo*. *See New York SMSA Ltd. P'ship v. Town of Clarkstown*, 603 F. Supp. 2d 715, 734 (S.D.N.Y. 2009), *aff'd* 612 F.3d 97 (2d Cir. 2010) (the presence of a severability clause is not dispositive).

First, the Fifth Circuit cautions against engaging in the "legislative guesswork" involved with severability analysis. *Tex. v. United States*, 945 F.3d 355, 400 (5th Cir. 2019), as revised (Dec. 20, 2019), *as revised* (Jan. 9, 2020), *'ev'd and remanded sub nom. California v. Tex.*, 593 U.S. 659, 141 S. Ct. 2104, 210 L. Ed. 2d 230 (2021). Severability analysis, in this instance, would require the Court to wade into the agency's hypothetical intent in promulgating the Rule (and necessarily, Congress's intent for the FTC Act), implicating the vital separation-of-powers principle. *See New Jersey Thoroughbred Horse'en's 'ss'n v. 'at'l Collegiate Athletic 'ss'n*, 584 U.S. 453, 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018) (Thomas, J., concurring). As Justice Thomas pointed out, severability analysis forces courts to "weigh in on statutory provisions that no party has standing to challenge, bringing courts dangerously close to issuing advisory opinions." *Id.*

Second, the Rule is not severable because the Rule cannot be limited in a way that would serve the FTC's stated purpose for promulgating the Rule. Courts addressing administrative severability have articulated a guiding principle that a court may not leave in place a severed regulation that is inadequately supported by the original rule's statement of basis and purpose. *MD/DC/DE Broadcasters Ass'n*

18

*v. FCC*, 253 F.3d 732, 736 (D.C. Cir. 2001). A rule left in force through severance that the agency did not consider and does not accomplish the agency's own stated goals is arbitrary and capricious. *Id;* 5 U.S.C. § 706(2)(A). Here, if any portion of the Rule is invalidated or held inapplicable to a particular category of workers or circumstances—for example, only workers who are not senior executives or for workers with pre-existing non-competes—then any rational connection between the factual findings and the FTC's actions, which this Court has already found was unsoundly premised on inconsistent and flawed empirical evidence, disappears. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983) ("The reviewing court should not attempt itself to make up for such deficiencies [in the agency's findings].").

## IV.    Equity Favors Nationwide Relief.

Fifth Circuit precedent holds that a reviewing court is not required to consider the "various equities at stake" before determining whether a party is entitled to vacatur. *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 952 (5th Cir. 2024). Nor is relief under Section 706 party specific. *Career Colls.*, 98 4th at 255. When "plaintiffs prevail on [an] APA challenge, [a] court must 'set aside'" the agency action "with nationwide effect." *In re Clarke*, 94 F.4th 502, 512 (5th Cir. 2024); *see also Braidwood*, 104 F.4th at 951 ("vacatur under § 706(2) [is] a remedy that affects individuals beyond those who are parties to the immediate dispute").

Consideration of the equities favors nationwide relief because party-specific relief would be cumbersome and unworkable. SHRM's members, who are human resources professionals responsible for managing and implementing an organization's human capital policies, will face significant disruption if the FTC's Rule takes effect on September 4, 2024, or if it applies only to those not covered by this Court's ruling. If nationwide relief is not granted, or not given comity, the confusion and disruption among workers and employers associated with the existing conflicting Texas and Pennsylvania rulings as to the FTC's authority will be exacerbated. In short, employers and workers have no idea what is to be done on or before September 4, 2024, without clear direction and comity, while this issue likely heads to appellate courts.

Therefore, only vacatur will suffice to provide the relief that is not only appropriate but necessary, to prevent the harm soon to be imposed by the FTC's Rule.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff and Intervenors' Motions for Summary Judgment, deny Defendant's Motion for Summary Judgment, and vacate the FTC's Non-Compete Rule nationally.

Respectfully submitted,

*/s/ Tricia W. Macaluso*
Tricia W. Macaluso
Texas State Bar No. 24013773
Seyfarth Shaw LLP
2323 Ross Avenue, Suite 1660
Dallas, TX 75201
(469) 608-6700
tmacaluso@seyfarth.com

Jesse M. Coleman
Texas State Bar No. 24072044
Eron F. Reid
Texas State Bar No. 24100320
Seyfarth Shaw LLP
700 Milam Street, Suite 1400
Houston, TX 77002
(713) 225-2300
jmcoleman@seyfarth.com
ereid@seyfarth.com

Michael D. Wexler
Marcus L. Mintz
(*pro hac vice previously granted*)
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 460-5000
mwexler@seyfarth.com
mmintz@seyfarth.com

Dated:  August 9, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the type-volume requirements of Judge Brown's Motion Practice procedures II.A because it contains 3,350 words; and

2.      This document complies with the typeface requirements of Judge Brown's Motion Practice procedures II.A because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font in the body and 11-point Times New Roman font in the footnotes.


Dated: August 9, 2024                              _/s/ Tricia W. Macaluso_
                                                   Tricia W. Macaluso

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 9, 2024, I caused the foregoing document to be filed with the Clerk for the U.S. District Court for the Northern District of Texas through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

Dated: August 9, 2024                    Respectfully submitted,

*/s/ Tricia W. Macaluso*
Tricia W. Macaluso