**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RYAN LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| CHAMBER OF COMMERCE OF THE | § | |
| UNITED STATES OF AMERICA, | § | |
| BUSINESS ROUNDTABLE, TEXAS | § | |
| ASSOCIATION OF BUSINESS, and | § | |
| LONGVIEW CHAMBER OF COMMERCE, | § | Civil Action No. 3:24-CV-00986-E |
| | § | |
| Plaintiff-Intervenors, | § | |
| | § | |
| v. | § | |
| | § | |
| FEDERAL TRADE COMMISSION, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is (i) Plaintiff Ryan, LLC's ("Ryan") and Plaintiff-Intervenors' the

Chamber of Commerce of the United States of America, Business Roundtable, Texas Association

of Business, and Longview Chamber of Commerce's ("Plaintiff-Intervenors") (referred

collectively with Ryan as "Plaintiffs") Motions for Summary Judgment (ECF Nos. 166, 168); and

(ii) the Federal Trade Commission's ("FTC" or the "Commission") Cross-Motion for Summary

Judgment, (ECF No. 184). All Parties seek summary judgment on all of Plaintiffs' claims

concerning the FTC's "Non-Compete Rule" (sometimes referred to as the "Rule"), 16 C.F.R.

§ 910.1–.6, which makes most non-compete agreements unenforceable. After careful

consideration of the motions, briefing, appendix, and applicable law, the Court (i) **GRANTS**

Plaintiffs' Motions for Summary Judgment, and (ii) **DENIES** the FTC's Cross-Motion for

Summary Judgment. The Court **sets aside** the Non-Compete Rule. Consequently, the Rule shall not be enforced or otherwise take effect on its effective date of September 4, 2024 or thereafter.[1]

## I. BACKGROUND

In response to the FTC's promulgation of the Non-Compete Rule, Ryan and the Plaintiff-Intervenors filed motions to stay and preliminary enjoin the FTC from enforcing the Rule. (*See* ECF Nos. 23, 46). Because the Court concluded that there was a substantial likelihood that Plaintiffs would succeed on the merits—including the conclusions that (i) the FTC exceeded its statutory authority and (ii) the Rule is arbitrary and capricious—and that the Rule would cause irreparable harm, the Court preliminarily enjoined implementation and enforcement of the Rule as to the named Plaintiffs on July 3, 2024. (ECF Nos. 153, 154).[2] Both Plaintiffs and the FTC now seek summary judgment. (*See* ECF Nos. 166, 168, 184). The Parties largely restate previous arguments but newly brief the proper remedy on the merits.

### A. The Federal Trade Commission Act

In 1914, Congress enacted the Federal Trade Commission Act ("the FTC Act" or "the Act") to protect consumers and promote competition:

> A commission is created and established, to be known as the Federal Trade Commission (hereinafter referred to as the Commission), which shall be composed of five Commissioners, who shall be appointed by the President, by and with the advice and consent of the Senate. Not more than three of the Commissioners shall be members of the same political party. The first Commissioners appointed shall continue in office for terms of three, four, five, six, and seven years, respectively, from September 26, 1914, the term of each to be designated by the President, but their successors shall be appointed for terms of seven years, except that any person chosen to fill a vacancy shall be appointed only for the unexpired term of the

---

[1] The "effective date" is defined as 120 days after publication in the Federal Register—here, September 4, 2024. *See* 16 C.F.R. § 910.6.

[2] The named Plaintiffs remain the same throughout these proceedings: Plaintiff Ryan, LLC and Plaintiff-Intervenors Chamber of Commerce of the United States of America; Business Roundtable; Texas Association of Business; and Longview Chamber of Commerce.

---

> Commissioner whom he shall succeed: *Provided, however*, That upon the expiration of his term of office a Commissioner shall continue to serve until his successor shall have been appointed and shall have qualified. The President shall choose a chairman from the Commission's membership. No Commissioner shall engage in any other business, vocation, or employment. Any Commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office. A vacancy in the Commission shall not impair the right of the remaining Commissioners to exercise all the powers of the Commission.

15 U.S.C. § 41. Since the Commission's inception, Congress vested it with the power to prevent unfair methods of competition, under Section 5 of the Act. *See* 15 U.S.C. § 45(a)(2).[3] In 1938, Congress expanded the Commission's power under this provision to also prevent unfair deceptive acts or practices. *See* The Wheeler-Lea Act, ch. 49, § 3, 52 Stat. 111 (1938) (current version at 15 U.S.C. § 45(a)). The current Section 5, entitled "[u]nfair methods of competition unlawful; prevention by Commission," states:

> The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 406(b) of said Act, *from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.*

15 U.S.C. § 45(a)(2) (emphasis added). Section 5 describes the FTC's enforcement powers through administrative proceedings. Specifically, the Section provides the FTC will hold a hearing if it believes a party is using unfair methods of competition or unfair or deceptive acts or practices. *See* 15 U.S.C. § 45(b). If the FTC then concludes that a party has engaged in the prohibited conduct, a cease-and-desist order may be issued—subject to penalties if the order is violated. *See* 15 U.S.C. § 45(b), (g), (l). Thus, whether a practice is considered an "unfair method of competition" or an

---

[3] The Parties refer to 15 U.S.C. § 45 colloquially as "Section 5," as codified, and the Court does the same.

"unfair or deceptive act" is typically decided through case-by-case administrative adjudication. *See generally* 15 U.S.C. § 45.

Next, Section 6 of the Act—which has also been in place since the Commission's inception—entitled "[a]dditional powers" grants the Commission additional powers to support the adjudicatory scheme. *See* 15 U.S.C. § 46.[4] Most of these powers are investigatory or ministerial. *See* 15 U.S.C. § 46. One provision titled "[c]lassification of corporations; regulations," gives the Commission the power to "[f]rom time to time classify corporations and (except as provided in section 57a(a)(2) of this title) to make rules and regulations for the purpose of carrying out the provisions of this subchapter." 15 U.S.C. § 46(g). Pertinent here, FTC asserts Section 6(g) empowers the FTC with the authority to make substantive rules related to unfair methods of competition. (ECF No. 189 at 30–31).

**B.    The Non-Compete Rule**

This is a dispute over the FTC's rulemaking authority concerning the enforceability of employer/employee non-compete agreements. These agreements are restrictive covenants that prohibit an employee from competing against the employer. *See, e.g., Team Envt'l. Servs., Inc. v. Addison*, 2 F.3d 124, 126 (5th Cir. 1993) (discussing enforceability of non-compete agreement under Louisiana law). Regarding the prevalence of non-compete agreements, the Parties' joint appendix provides:

> [T]he Commission finds that non-competes are in widespread use throughout the economy and pervasive across industries and demographic groups, albeit with some differences in the magnitude of the prevalence based on industries and demographics. The Commission estimates that approximately one in five American workers—or approximately 30 million workers—is subject to a non-compete.

---

[4] The Parties refer to 15 U.S.C. § 46 colloquially as "Section 6," as codified, and the Court does the same.

(*See* ECF No. 210 at 11). States have historically regulated non-competes through caselaw and statute. S*ee, e.g.*, *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011) (internal citations omitted) ("[R]easonable non[-]compete clauses in contracts pertaining to employment are not considered to be contrary to public policy as constituting an invalid restraint of trade. Texas courts have enforced reasonable covenants not to compete dating back at least to 1899."); *see also, e.g.*, TEX. BUS. & COM. CODE § 15.50 (enumerating the criteria for enforceability of covenants not to compete under Texas law); (ECF No. 210 at 130) (discussing that "46 States have statutory provisions or case law that ban or limit the enforceability of non-competes for workers in certain specified occupations."). No federal law broadly addresses the enforceability of non-competes.

In 2018, the FTC began to study non-competes through public hearings and workshops; invitations for public comment; and a review of academic studies. (*See* 89 Fed. Reg. at 38343–44). Three years later, the FTC initiated several investigations into the use of non-competes to determine whether they constitute unfair methods of competition. (*See* 89 Fed. Reg. at 38343–44).

On January 19, 2023, the FTC proposed the Non-Compete Rule—which would "prohibit employers from entering into non-compete clauses with workers starting on the rule's compliance date" and "require employers to rescind existing non-compete clauses no later than the rule's compliance date." 88 Fed. Reg. at 3483. On April 23, 2024, the FTC adopted the final Non-Compete Rule. *See* 16 C.F.R. § 910. The Rule provides, in pertinent part:

> Non-compete clause means:
> (1) A term or condition of employment that prohibits a worker from, penalizes a worker for, or functions to prevent a worker from:
>> (i) Seeking or accepting work in the United States with a different person where such work would begin after the conclusion of the employment that includes the term or condition; or
>> (ii) Operating a business in the United States after the conclusion of the employment that includes the term or condition.

16 C.F.R. § 910.1. The Rule distinguishes its application to "workers" and "senior executives."

*See* 16 C.F.R. § 910.2(a). "Workers" and "senior executives" are defined as follows:

> **Senior executive means** a worker who:
> (1) Was in a policy-making position; and
> (2) Received from a person for the employment:
>> (i) Total annual compensation of at least $151,164 in the preceding year; or
>> (ii) Total compensation of at least $151,164 when annualized if the worker was employed during only part of the preceding year; or
>> (iii) Total compensation of at least $151,164 when annualized in the preceding year prior to the worker's departure if the worker departed from employment prior to the preceding year and the worker is subject to a non-compete clause.
>
> [    ]
>
> **Worker means** a natural person who works or who previously worked, whether paid or unpaid, without regard to the worker's title or the worker's status under any other State or Federal laws, including, but not limited to, whether the worker is an employee, independent contractor, extern, intern, volunteer, apprentice, or a sole proprietor who provides a service to a person. The term worker includes a natural person who works for a franchisee or franchisor, but does not include a franchisee in the context of a franchisee-franchisor relationship.

16 C.F.R. § 910.1 (emphasis added in bold). Based on this distinction between "senior executive"

and "worker," the Non-Compete Rule enumerates "[u]nfair methods of competition" as follows:

> (1) Workers other than senior executives. **With respect to a worker other than a senior executive, it is an unfair method of competition for a person**:
>> (i) To enter into or attempt to enter into a non-compete clause;
>> (ii) To enforce or attempt to enforce a non-compete clause; or
>> (iii) To represent that the worker is subject to a non-compete clause.
> (2) Senior executives. **With respect to a senior executive, it is an unfair method of competition for a person**:
>> (i) To enter into or attempt to enter into a non-compete clause;
>> (ii) To enforce or attempt to enforce a non-compete clause entered into after the effective date; or
>> (iii) To represent that the senior executive is subject to a non-compete clause, where the non-compete clause was entered into after the effective date.

16 C.F.R. § 910.2(a) (emphasis added in bold).

The FTC asserts that—(i) because non-compete clauses are "unfair methods of competition" under Section 5 of the FTC Act, and (ii) pursuant to the authority granted them in Section 6(g), the Commission has the authority to issue the Rule. *See* 15 U.S.C. §§ 45(a)(2), 46(g); *see generally* 16 C.F.R. § 910.1–6.  Subject to the limitations and distinctions above, the Rule essentially provides that it is an unfair method of competition—and therefore a violation of Section 5—for persons to enter or enforce non-compete agreements. The Rule also supersedes state laws that would "permit or authorize" non-compete agreements. *See* 16 C.F.R. § 910.4.[5]

Apart from the exceptions regarding the Rule's application to senior executives discussed above, the Rule also contains other exceptions regarding (i) bona fide sales of businesses; (ii) circumstances where a cause of action accrued prior to the effective date; and (iii) circumstances where a person has a good-faith basis to believe that the Rule is inapplicable. *See* 16 C.F.R. § 910.3(a)–(c).

## C.    Procedural Framework

On April 23, 2024, Ryan initiated this lawsuit. (ECF No. 1). On May 1, 2024, Ryan filed its Amended Complaint—the operative complaint on which it proceeds. (*See* ECF No. 22). Ryan asserts the following causes of action against the FTC based on the Administrative Procedure Act ("APA"), which empowers a reviewing court to hold unlawful and set aside certain agency action(s), findings, and conclusions. 5 U.S.C. § 706(2). Specifically, Ryan asserts the FTC's actions were unlawful because (i) the FTC acted without statutory authority; (ii) the Rule is the

---

[5] However, the Rule does not "annul, or exempt any person from complying with any State statute, regulation, order, or interpretation applicable to a non-compete clause, including, but not limited to, State antitrust and consumer protection laws and State common law." 16 C.F.R. § 910.4(a). "[N]o provision of this part shall be construed as altering, limiting, or affecting the authority of a State attorney general or any other regulatory or enforcement agency or entity or the rights of a person to bring a claim or regulatory action arising under any State statute, regulation, order, or interpretation, including, but not limited to, State antitrust and consumer protection laws and State common law." 16 C.F.R. § 910.4(b).

product of an unconstitutional exercise of power; and (iii) the FTC's acts, findings, and conclusions were arbitrary and capricious. (*See* ECF No. 22 at 21–30). Ryan further asserts a claim under the Declaratory Judgment Act, challenging the Rule as unlawful. (*See* ECF No. 22 at 30–32).

On May 1, 2024, Ryan filed its Motion for Stay of Effective Date and Preliminary Injunction, (ECF No. 23), along with its brief in support, (ECF No. 24), seeking an order staying the effective date of the Rule and preliminarily enjoining the FTC from enforcing the Rule. On May 8, 2024, Plaintiff-Intervenors filed their Motion to Intervene, (ECF No. 32), along with their brief in support, (ECF No. 33). The Court granted the Motion to Intervene on May 9, 2024. (ECF No. 34). On May 10, 2024, Plaintiff-Intervenors filed their Motion for Stay of Effective Date and Preliminary Injunction, (ECF No. 46), along with their brief in support, (ECF No. 47), which support and request relief similar to Ryan's request for injunctive relief.

On July 3, 2024, the Court issued a Memorandum Opinion and Order granting Plaintiffs' Motions for Stay of Effective Date and Preliminary Injunction, (ECF Nos. 23, 46), thereby staying the effective date of the Non-Compete Rule and enjoining the FTC from implementing or enforcing the Non-Compete Rule as to the named Plaintiff and Plaintiff Intervenors. (ECF No. 153). The Court also issued a Preliminary Injunction concurrently with its Memorandum Opinion and Order. (ECF No. 154).

On July 19, 2024, Ryan filed its Motion for Summary Judgment, (ECF No. 166), along with its brief in support, (ECF No. 167), seeking summary judgment on each of its claims under the APA and Declaratory Judgment Act. Also on July 19, 2024, Plaintiff Intervenors filed their Motion for Summary Judgment, (ECF No. 168), along with their brief in support, (ECF No. 169), seeking the same. On August 2, 2024, the FTC filed its Cross-Motion for Summary Judgment,

(ECF No. 184), along with its Response to Plaintiffs' Motions for Summary Judgment, (ECF No. 185), and its Corrected Consolidated Brief in Support of Its Motion for Summary Judgment and in Opposition to Plaintiffs' Motions for Summary Judgment, (ECF No. 189). On August 9, 2024, Ryan filed its Opposition to Defendant's Motion for Summary Judgment, (ECF No. 202), along with its Consolidated Reply Brief in Support of its Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, (ECF No. 203). Also on August 9, 2024, Plaintiff-Intervenors filed their Response to FTC's Cross-Motion for Summary Judgment, (ECF No. 204), and their Combined Reply Brief in Support of its Motion for Summary Judgment and Opposition to Commission's Cross-Motion for Summary Judgment, (ECF No. 205). The FTC filed its reply brief on August 16, 2024. (ECF No. 209). The Parties also filed a joint appendix on August 16, 2024. (ECF No. 210). These dispositive motions are fully briefed and ripe for determination.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254–55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*,

475 U.S. 574, 586 (1986). The evidence must be such that a "reasonable jury could return a veridct for the nonmoving party." *Anderson*, 477 U.S. at 248. "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

The "party seeking summary judgment always bears the initial responsibility" of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (i) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (ii) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. Celotex*, 477 U.S. at 322–25. There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see generally Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194) (discussing affirmative defenses).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual

controversy exists, that is, when both parties have submitted evidence of contradictory facts."

*Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.... "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

Additionally, in reviewing "cross-motions for summary judgment, [the court] examine[s] 'each party's motion independently' and view[s] 'the evidence and inferences in the light most favorable to the nonmoving party.'" *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016)). "Cross-motions for summary judgment will not, in and of themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary

judgment may do so on different legal theories depending on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "cross-motions for summary judgment may be probative of the non-existence of a factual dispute when [] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

### III. ANALYSIS

"Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.'" *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 644, 70 S. Ct. 357, 364, 94 L. Ed. 401 (1950)). "In addition to prescribing procedures for agency action, the APA delineates the basic contours of judicial review of such action." *Loper Bright Enters.*, 144 S. Ct. at 2261.

As relevant here, Section 706 of the APA directs that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. When conducting such determination, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C).

Plaintiffs aver the FTC's Non-Compete Rule meets all of the above—(i) it exceeds the FTC's statutory authority; (ii) it is patently unconstitutional; and (iii) it is arbitrary and capricious—thus entitling Plaintiffs to summary judgment. (*See* ECF Nos. 166, 168). Specifically, Ryan asserts that the Non-Compete Rule violates the APA because the FTC:

> [L]acked statutory authority to promulgate the Non-Compete Rule; that if Congress did grant such authority, it did so in violation of the non-delegation doctrine; that the Rule is unlawfully retroactive; that the Commission's reasons for adopting the Rule are arbitrary and capricious, and that the Commission is unconstitutionally insulated from presidential control.

(ECF No. 166 at 1–2). Similarly, Plaintiff-Intervenors argue that the Rule exceeds the Commission's statutory authority for three reasons: (i) the FTC Act does not authorize the Commission to issue substantive unfair-competition rules, (ii) categorically prohibiting all worker noncompete agreements as "unfair methods of competition" cannot be squared with the meaning of that phrase in Section 5 of the FTC Act, and (iii) the Commission lacks statutory authority to retroactively invalidate millions of existing contracts. (ECF No. 169 at 11–12). Plaintiff-Intervenors further assert that the Non-Compete Rule is arbitrary and capricious for three reasons: (i) the FTC offers no evidence to support its categorical ban on non-competes, (ii) the Commission unjustifiably dismissed alternatives that would have allowed the Commission to achieve its purported objectives at lower cost, and (iii) the Commission relied on a flawed cost-benefit analysis to prop up its Rule. (ECF No. 169 at 12–13).

In opposition, the FTC contends that it is entitled to summary judgment on all of Plaintiffs' claims and Plaintiffs should be denied summary judgment for the following reasons:

> (1) Congress authorized the Commission in clear language to prevent unfair methods of competition through both adjudication and rulemaking, and the Commission's choice of rulemaking to address the anticompetitive effects of non-competes is both logical and unremarkable; (2) the major questions doctrine is not implicated, as the Rule falls squarely within the Commission's delegated authority

and expertise; (3) the Sherman Act's framework is inapplicable, since the Federal Trade Commission Act was designed to supplement the Sherman Act and expressly confers the authority to prevent unfair methods of competition; (4) the Federal Trade Commission Act provides an intelligible principle by which the Rule can be measured; (5) the Rule is not unlawfully retroactive since it has only prospective effects; (6) Ryan's removal challenge is foreclosed by binding precedent; and (7) the Commission easily satisfies the deferential arbitrary-and-capricious standard given its exhaustive study of non-competes and thorough economic justifications for the Rule.

(ECF Nos. 184, 185).

Similar to the Court's reasoning in granting injunctive relief,[6] the Court concludes that Plaintiffs are entitled to summary judgment on all of their claims under the APA and Declaratory Judgment Act because the FTC exceeded its statutory authority in implementing the Rule, and the Rule is arbitrary and capricious.

## A.    Statutory Authority—Text, Structure, and History of the FTC

Plaintiffs assert the Commission's claimed statutory authority in promulgating the Rule—Section 6(g) of the FTC Act—does not authorize substantive rulemaking. "The extent of [the FTC's] powers can be decided only by considering the powers Congress specifically granted it in the light of the statutory language and background." *National Petroleum Refiners Ass'n v. FTC*, ("*National Petroleum*"), 482 F.2d 672, 674 (D.C. Cir. 1973). "The question to be answered is 'not what the [Commission] thinks it should do but what Congress has said it can do.'" *National Petroleum*, 482 F.2d at 674 (quoting *Civil Aeronautics Bd. v. Delta Air Lines Inc.*, 367 U.S. 316, 322, 81 S. Ct. 1611, 1617, 6 L. Ed. 869 (1961)). "The judiciary remains the final authority with respect to questions of statutory construction and must reject administrative agency actions which

---

[6] (*See* ECF No. 153: Memorandum Opinion and Order granting Plaintiffs' Motions for Stay of Effective Date and Preliminary Injunction).

exceed the agency's statutory mandate or frustrate congressional intent." *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 968 (D.C. Cir. 1985).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721, 142 S. Ct. 2587, 2607 (2022) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 1504 103 L. Ed. 2d 891 (1989)). "The appropriate starting point when interpreting any statute is its plain meaning." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d 443 (2009) (cleaned up) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276, 2286, 159 L. Ed. 2d 172 (2004)). "[A] court must look to the intent of the legislature and must construe the statute so as to give effect to that intent." *CenterPoint Energy Hous. Elec. v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 545 (5th Cir. 2006); *see generally Loper Bright Enters.*, 144 S. Ct. at 2261. ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.").

In Section 5 of the FTC Act, Congress vested the Commission with the power to prevent unfair methods of competition:

> The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

15 U.S.C. § 45(a)(2). And as stated above, Section 6 gives the FTC the power "to make rules and regulations for the purpose of carrying out the provisions of this subchapter." 15 U.S.C. § 46(g). Section 5 creates a comprehensive scheme to prevent unfair methods of competition, while Section

6 enumerates additional powers that generally aid in the administration of that adjudication-focused scheme. *See generally* 15 U.S.C. §§ 45, 46. "The [FTC Act] statute gives [the FTC] express authority 'to make rules and regulations for the purpose of carrying out the provisions of the [FTC] Act.'" *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941) (quoting 15 U.S.C. § 46(g)).

Plaintiffs challenge whether the FTC's rulemaking authority under Section 6(g) encompasses substantive rulemaking, in addition to procedural rulemaking. The FTC asserts Section 6(g) and Section 18[7] empower it with substantive rulemaking authority. (ECF No. 189 at 18, 30–42). The issue presented is whether the FTC's ability to promulgate rules concerning unfair methods of competition include the authority to create *substantive* rules regarding unfair methods of competition.

The Court starts with the text of Section 6(g) and Section 18. *See Hightower v. Tex. Hosp. Ass'n,* 65 F.3d 443, 448 (5th Cir. 1995) ("When courts interpret statutes, the initial inquiry is the language of the statute itself."). Under Section 6(g) of the FTC Act, the Commission has the power to "classify corporations and (except as provided in section 57a(a)(2) of this title) to make rules and regulations for the purpose of carrying out the provisions of this subchapter." 15 U.S.C. § 46(g). By a plain reading, Section 6(g) of the Act does not expressly grant the Commission authority to promulgate substantive rules regarding unfair methods of competition. Next, Section 18 empowers the FTC to prescribe "interpretive rules and general statements of policy with respect to unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 57a. Section 18 limits the FTC's ability to make rules dealing with *unfair or deceptive practices*—not *unfair*

---

[7] The Parties refer to 15 U.S.C. § 57a of the FTC Act colloquially as "Section 18," as codified, and the Court does the same.

*methods of competition*. 15 U.S.C. § 57a(2).[8] However, Section 18 acknowledges the FTC has some rulemaking power "with respect to unfair methods of competition in or affecting commerce." 15 U.S.C. § 57a(2).[9]

Plainly read, the Court concludes the FTC has some authority to promulgate rules to preclude unfair methods of competition. Indeed, the Act alludes to this power in Section 18. *See* 15 U.S.C. § 57a. However, after reviewing the text, structure, and history of the Act, the Court concludes the FTC lacks the authority to create substantive rules through this method. Section 6(g) is "indeed a 'housekeeping statute,' authorizing what the APA terms 'rules of agency organization procedure or practice' as opposed to 'substantive rules.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 310, 99 S. Ct. 1705, 1722, 60 L. Ed. 2d 208 (1979).

Plaintiffs next contend the lack of a statutory penalty for violating rules promulgated under Section 6(g) demonstrates its lack of substantive rulemaking power. (ECF No. 167 at 28; ECF No. 169 at 23–24). The Court agrees. When authorizing legislative rulemaking, Congress also historically prescribes sanctions for violations of the agency's rules—confirming that those rules create substantive obligations for regulated parties.[10] "If the statute prescribed a sanction, then the

---

[8] The Court further discusses 15 U.S.C. § 57a hereunder as the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act. *See infra* § III.A.

[9] The complete limitation on the FTC's rulemaking authority under 57a(2) states:

> The Commission shall have no authority under this subchapter, other than its authority under this section, to prescribe any rule with respect to unfair or deceptive acts or practices in or affecting commerce (within the meaning of section 45(a)(1) of this title). **The preceding sentence shall not affect any authority of the Commission to prescribe rules (including interpretive rules), and general statements of policy, with respect to unfair methods of competition in or affecting commerce.**

15 U.S.C. § 57a(2) (emphasis added in bold).

[10] *See, e.g.,* Federal Water Power Act, ch. 285, § 25, 41 Stat. 1063, 1076 (1920) (repealed 1935) (attaching criminal penalties to violations of the Federal Power Commission's rules and regulations); Tea Importation Act, ch. 358, § 6, 29 Stat. 604, 606 (1897) (repealed 1996) (providing for the destruction of impure tea that falls below the standards set

---

authority to make 'rules and regulations' included the authority to adopt legislative rules having the force of law . . . [but] [i]f the statute did not include a sanction, the authority to make 'rules and regulations' encompassed only interpretive or procedural rules." Thomas W. Merrill & Kathryn Tongue Watts, *Agency Rules with the Force of Law: The Original Convention*, 116 HARV. L. REV. 467, 493–94 (2002) ("[I]f the statute was silent regarding the legal consequences for failure to conform to regulations, it was understood as granting the agency the power to make only housekeeping rules."). Section 6(g) contains no penalty provision—which indicates a lack of substantive force. *See generally* 15 U.S.C. § 46. In contrast, Section 5 adjudications include a penalty provision. *See* 15 U.S.C.§ 45(l)–(m). Thus, the lack of a penalty included with Section 6(g) supports that such provision encompasses only housekeeping rules—not substantive rulemaking power.

Furthermore, viewing the statute as a whole, the location of the alleged substantive rulemaking authority is suspect. First, the initial part of Section 6(g) merely vests the FTC with the power to "[f]rom time to time classify corporations;" the alleged substantive rulemaking power is the latter portion of the statute. 15 U.S.C. § 46(g). If the FTC is correct in its interpretation, then Congress did not choose to place such substantial power in a primary, independent place. *See Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888, 893 (5th Cir. 2024) ("[A]gencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions.") (quoting *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019)). Further, Section 6(g) is the seventh

---

by the Secretary of the Treasury if the owner fails to export such tea outside of the United States within six months of the examination); Warehouse Act, ch. 313, pt. C, § 25, 39 Stat. 486, 490 (1916) (codified as amended at 7 U.S.C. § 252(a) (2000)) (providing that the Secretary of Agriculture may suspend or revoke any warehouseman's license for any violation of the rules and regulations made under the Act); Grain Standards Act, ch. 313, pt. B, § 7, 39 Stat. 482, 484 (1916) (codified as amended at 7 U.S.C. § 85) (providing for the suspension or revocation of any grain inspector's license for any violation of the rules and regulations made under the Act); Social Security Act Amendments of 1939, ch. 666, § 205(a), 53 Stat. 1360, 1368.

in a list of twelve almost entirely investigative powers. *See* 15 U.S.C. § 46. Finally, Section 6(g) fails to mention Section 5 or any other substantive authority from where such substantive rulemaking power would stem. *See* 15 U.S.C. § 46.

Agencies are creatures of Congress—"an agency literally has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374, 106 S. Ct. 1890, 1901, 90 L. Ed. 2d 369 (1986). "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated [to it] by Congress." *VanDerStok v. Garland*, 86 F.4th 179, 187 (5th Cir. 2023) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). As "[t]he question to be answered is 'not what the [Commission] thinks it should do but what Congress has said it can do,'" the Court must look to what Congress explicitly gave the FTC the authority to do. *National Petroleum*, 482 F.2d at 674 (quoting *Civil Aeronautics Bd.,* 367 U.S. at 322, 81 S. Ct. at 1617). The Court concludes that the structure and the location of Section 6(g) indicate that Congress did not explicitly give the Commission substantive rulemaking authority under Section 6(g).

The Court next addresses the history of the FTC Act, coupled with the structural amendments added since its inception. Initially, for the first forty-eight years of its existence, the Commission explicitly disclaimed substantive rulemaking authority. *See National Petroleum*, 482 F.2d at 693 ("Our conclusion as to the scope of Section 6(g) is not disturbed by the fact that the agency itself did not assert the power to promulgate substantive rules until 1962 and indeed indicated intermittently before that time that it lacked such power."). In 1962, the FTC announced for the first time that it was going to rely on Section 6(g) to issue Trade Regulation Rules—rules that would have the force of law. *See* Merrill & Watts, 116 Harv. L. Rev. at 552.

In *National Petroleum*, the plaintiffs challenged the FTC's power to issue such rules. The D.C. Circuit held that Section 6(g) authorized the Commission to promulgate substantive rules: it is "[o]ur belief that 'rules and regulations' in Section 6(g) should be construed to permit the Commission to promulgate binding substantive rules as well as rules of procedure." *National Petroleum*, 482 F.2d at 678. The FTC, thereafter, promulgated several rules based on this rulemaking power under Section 6(g). (*See* ECF No. 210 at 14–15). However, from 1978 to the announcement of the Non-Compete Rule, the Commission did not promulgate a single *substantive* rule under Section 6(g).

Next, the Court addresses subsequent amendments to the FTC Act. During the 90th Congressional session in 1967 and 1968, Congress enacted amendments expressly allowing force of law rulemaking related to specific subjects. *See, e.g.*, Pub. L. No. 90-189, 81 Stat. 568 (1967). If Section 6(g) had already given the Commission such substantive rulemaking power, these amendments would be superfluous. *See Howard Hughes Co. v. C.I.R.*, 805 F.3d 175, 183 (5th Cir. 2015) ("[T]he rule against superfluities, [] instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous.") (quoting *Hibbs,* 542 U.S. at 89, 124 S. Ct. at 2276).

The history of the FTC's empowerments requires further analysis of Section 18—the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act ("Magnuson-Moss Act") in 1975. The Magnuson-Moss Act was implemented "to codify the Commission's authority to make substantive rules for unfair or deceptive acts or practices in or affecting commerce." *Am. Fin. Servs. Ass'n*, 767 F.2d at 967. The Magnuson-Moss Act provides:

(1) . . . [T]he Commission may prescribe—
(A) interpretive rules and general statements of policy with respect to *unfair or deceptive acts or practices* in or affecting commerce (within the meaning of section 45(a)(1) of this title), and
(B) rules which define with specificity acts or practices which are *unfair or deceptive acts or practices* in or affecting commerce (within the meaning of section 45(a)(1) of this title) . . .. Rules under this subparagraph may include requirements prescribed for the purpose of preventing such acts or practices.

15 U.S.C. § 57a(a)(1) (emphasis added). The Magnuson-Moss Act further requires the FTC to comply with certain procedural requirements before issuing substantive rules on unfair or deceptive acts or practices. *See* 15 U.S.C. § 57a(b). By enacting the Magnuson-Moss Act, Congress vested the Commission with the power to promulgate substantive rules regarding *only* unfair or deceptive acts or practices, *not* unfair methods of competition.

Although Section 18 mentions that the limitations regarding rulemaking in the "unfair or deceptive acts or practices" context "shall not affect any authority of the Commission to prescribe rules (including interpretive rules), and general statements of policy, with respect to unfair methods of competition in or affecting commerce," such statutory language is not an affirmative grant of substantive rulemaking authority to the FTC in the "unfair methods of competition" context.

The FTC further argues that its substantive rulemaking authority was again confirmed by the 1980 amendments—the Federal Trade Commission Improvements Act of 1980—as they left Section 6(g) and the language in Section 18 unchanged. Such decision "again ratified the grant of competition rulemaking authority in Section 6." (ECF No. 189 at 35). Further, because the 1980 amendments defined "rule" as one promulgated under Section 6 or 18, but excluded non-legislative rules; the FTC alleges that Congress must have "understood rules issued under Section 6 to include legislative rules even after it removed [unfair or deceptive acts or practices] rulemaking authority from Section 6 in the 1975 Amendments." (ECF No. 189 at 34–35.) Again, the Court rejects such

reasoning as a piecemeal attempt to confer rulemaking authority that Congress has not affirmatively granted to the FTC. The role of an administrative agency is to do as told by Congress, not to do what the agency thinks it should do. *See National Petroleum*, 482 F.2d at 674. "Agencies do not have unlimited power to accomplish their policy preferences until Congress stops them; they have only the powers that Congress grants through a textual commitment of authority." *See Cent. Forwarding, Inc. v. ICC*, 698 F.2d 1266, 1272 (5th Cir. 1983) ("[I]f Congress has granted only limited powers to the agency, and the regulation bears little kinship to the rulemaking authority expressed by statute, the validity of the regulation is suspect.").

In sum, the Court concludes the text and the structure of the FTC Act reveal the FTC lacks substantive rulemaking authority with respect to unfair methods of competition, under Section 6(g). *See generally* 15 U.S.C. § 46(g); 15 U.S.C. § 57a. Thus, when considering the text, Section 6(g) specifically, the Court concludes the Commission has exceeded its statutory authority in promulgating the Non-Compete Rule. Having determined the FTC exceeded its statutory authority, the Court pretermits further discussion of statutory bases.

## B.    Arbitrary and Capricious

A court must "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court explains this arbitrary-and-capricious standard as follows:

> The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.

*FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, 141 S. Ct. 1150, 1158, 209 L. Ed. 2d 287

(2021); *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14, 129 S. Ct. 1800, 1810,

173 L. Ed. 2d 738 (2009)). Generally, an agency rule is arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.

Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983).

In applying this standard, the Court is limited to "the basis articulated by the agency itself."

*State Farm*, 463 U.S. at 50, 103 S. Ct. at 2867. Although "'we may not provide a reasoned basis

for the agency's action that the agency itself has not given,' we will 'uphold a decision of less than

ideal clarity if the agency's path may reasonably be discerned.'" *BNSF Ry. Co. v. Fed. R.R.

Admin.*, 62 F.4th 905, 911 (5th Cir. 2023) (quoting *State Farm*, 463 U.S. at 43, 103 S. Ct. at 2867).

"The Supreme Court has made clear that when it comes to arbitrary-and-capricious review, 'the

Government should turn square corners in dealing with the people.'" *Data Mktg. P'ship, LP v. U.S.

Dep't of Lab.*, 45 F.4th 846, 860 (5th Cir. 2022) (quoting *Dep't of Homeland Sec. v. Regents of the

Univ. of Cal.*, 591 U.S. 1, 24, 140 S. Ct. 1891, 1909, 207 L. Ed. 2d 353 (2020)). "A decision is

arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in

view or the product of agency expertise." *Wilson v. U.S. Dep't. of Agric.,* 991 F.2d 1211, 1215 (5th

Cir. 1993).

Because the FTC is an administrative agency, the Court may analyze the Commission's

actions under the APA's arbitrary-and-capricious standard. *See* 5 U.S.C. § 706(2)(A). The Court

concludes that the Rule is arbitrary and capricious because it is unreasonably overbroad without a

reasonable explanation. The Rule imposes a one-size-fits-all approach with no end date, which fails to establish a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43, 103 S. Ct. at 2867 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S. Ct. 239, 246, 9 L. Ed. 2d 207 (1962)).

The record does not support the Rule. In enacting the Rule, the Commission relied on a handful of studies that examined the economic effects of various state policies toward non-competes. (*See* ECF No. 210 at 37). The record shows no state has enacted a non-compete rule as broad as the FTC's Rule. (*See, e.g.*, ECF No. 210 at 686, 881). The FTC's evidence compares different states' approaches to enforcing non-competes based on specific factual situations—completely inapposite to the Rule's imposition of a categorical ban. (*See* ECF No. 210 at 46–47). As to this latter point, the FTC provides no evidence or reasoned basis. The Commission's lack of evidence as to why they chose to impose such a sweeping prohibition—that prohibits entering or enforcing virtually all non-competes—instead of targeting specific, harmful non-competes, renders the Rule arbitrary and capricious. *See Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 430 n.2 (5th Cir. 2000) (holding that "failing to give a reasonable explanation for how [an agency] reached its decision" may make an agency's decision arbitrary and capricious under the APA). In sum, the Rule is based on inconsistent and flawed empirical evidence,[11] fails to consider the positive benefits of non-compete agreements, and disregards the substantial body of evidence supporting these agreements.

---

[11] While the "APA imposes no general obligation on agencies to conduct or commission their own empirical or statistical studies," an agency's evidence must be accurate and supported—not perfect. *Prometheus Radio Project*, 592 U.S. at 427, 141 S. Ct. at 1160.

Second, the record shows the FTC failed to sufficiently address alternatives to issuing the Rule. "The role of this court is to determine whether the [FTC] provides a sufficient explanation of the alternatives to permit a reasoned choice among the different courses of action." *Sierra Club v. Fed. Highway Admin.*, 715 F. Supp. 2d 721, 734 (S.D. Tex. 2010), *aff'd*, 435 F. App'x 368 (5th Cir. 2011). However, the FTC provides no such explanation. (*See generally* ECF No. 210). While considering less disruptive alternatives, the FTC "was required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Wages & White Lion*, 16 F.4th at 1139 (quoting *Regents*, 591 U.S. at 33, 140 S. Ct. at 1915)). The record shows the Commission did not conduct such analysis—instead offering the conclusion that "case-by-case adjudication of the enforceability of non-competes has an *in terrorem*[12] effect that would significantly undermine the Commission's objective to address non-competes' tendency to negatively affect competitive conditions in a final rule." (ECF No. 210 at 108).

The FTC's "compelling justifications" for its decision to not consider other exceptions or alternatives does not adequately justify the Rule. The FTC dismissed any possible alternatives, concluding that either the pro-competitive justifications outweighed the harms, or that employers had other avenues to protect their interests. (*See* ECF No. 210 at 106–11) (stating the categorical ban "advances the final rule's objectives to a greater degree than differentiating among workers"). The Court cannot conclude the Non-Compete Rule "fall[s] within a zone of reasonableness" nor is it "reasonably explained." *Emily's List v. FEC*, 581 F.3d 1, 22 n.20 (D.C. Cir. 2009). The Court concludes that the Rule is arbitrary and capricious.

---

[12] Black's Law Dictionary defines "*in terrorem*" as "[b]y way of threat; as a warning." *In terrorem*, Black's Law Dictionary (11th ed. 2019).

In sum, the Court concludes that the FTC lacks statutory authority to promulgate the Non-Compete Rule, and that the Rule is arbitrary and capricious. Thus, the FTC's promulgation of the Rule is an unlawful agency action. *See* 5 U.S.C. § 706(2). The Court grants summary judgment as to Plaintiff's and Plaintiff Intervenors' corresponding claim(s) under the APA. The Court denies the FTC's motion for summary judgment. The Court pretermits further discussion of all Parties' remaining arguments as unnecessary.

## IV. PROPER REMEDY

Last, the Court must determine the appropriate remedy under the APA. The APA directs the reviewing court to:

> (2) ***hold unlawful and set aside agency action***, findings, and conclusions found to be--
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>> (B) contrary to constitutional right, power, privilege, or immunity;
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>> without observance of procedure required by law[.]

5 U.S.C. § 706(2)(A)–(C) (emphasis added in bold italics). "The text of the APA means what it says." *Loper Bright Enters.*, 144 S. Ct. at 2262. Having concluded that (i) the FTC promulgated the Non-Compete Rule in excess of its statutory authority, and (ii) the Rule is arbitrary and capricious, the Court must "hold unlawful" and "set aside" the FTC's Rule as required under § 706(2). As to the FTC's argument that relief should be limited to the named Plaintiffs—the APA does not contemplate party-specific relief. *See generally* 5 U.S.C. § 706(2). "As [the Fifth Circuit] put it in a couple of recent cases, setting aside agency action under § 706 has 'nationwide effect,' is 'not party-restricted,' and 'affects persons in all judicial districts equally.'" *Braidwood Mgmt.,*

*Inc. v. Becerra*, 104 F.4th 930, 951 (5th Cir. 2024) (internal citations omitted).[13] Thus, the Court hereby holds unlawful and sets aside the Rule. *See* 16 C.F.R. § 910.1–.6.[14] The Rule shall not be enforced or otherwise take effect on its effective date of September 4, 2024, or thereafter. *See* 16 C.F.R. § 910.1–.6.

## V.   CONCLUSION

For the reasons enumerated above, it is ORDERED that Ryan and Plaintiff-Intervenors' Motions for Summary Judgment are **GRANTED**. (ECF Nos. 166, 168). Additionally, for the reasons the Court grants Plaintiffs' Motions for Summary Judgment, the Court **DENIES** the FTC's Motion for Summary Judgment. (ECF No. 184). The Non-Compete Rule, 16 C.F.R. § 910.1–.6, is hereby **SET ASIDE** and shall not be enforced or otherwise take effect on September 4, 2024, or thereafter.

**SO ORDERED:** August 20, 2024.

Ada E. Brown
UNITED STATES DISTRICT JUDGE

---

[13] *See, e.g.*, *In re Clarke*, 94 F.4th 502, 512 (5th Cir. 2024) ("Should plaintiffs prevail on their APA challenge, this court must 'set aside' [the agency's action], with nationwide effect."); *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (holding that Section 706 "is not party-restricted and allows a court to 'set aside' an unlawful agency action").

[14] All Parties discuss vacatur when briefing the proper remedy. (*See* ECF Nos. 167, 169, 189). However, the Court declines to address vacatur as the Court must abide by the text of the APA—which instructs the Court to "set aside" the Non-Compete Rule. *See* 5 U.S.C. § 706(2).